

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 0 1 2018

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| ZEST LABS, INC. f/k/a INTELLEFLEX CORPORATION; and ECOARK HOLDINGS, INC. | § § § § | **FILED UNDER SEAL** **(PUBLIC VERSION)** |
| Plaintiffs, | § § | Civil Action No. 4:18-cv- 500 - JM |
| v. | § § | |
| WALMART INC. f/k/a WAL-MART STORES, INC. | § § § | JURY TRIAL DEMANDED |
| Defendant. | § | |

## COMPLAINT

Plaintiffs Zest Labs, Inc. ("Plaintiff Zest Labs") and Ecoark Holdings, Inc. ("Plaintiff Ecoark"; collectively "Zest Labs" or "Plaintiffs") file this Original Complaint against Defendant Walmart Incorporated ("Walmart"), formerly known as Wal-Mart Stores, Inc., based on their knowledge and actions and based on information and belief as to all other matters, as follows:

## SUMMARY OF CLAIMS

1.     Over $85 Billion dollars of fresh food (nearly 33% of all fresh food) in the United States is wasted each year. This waste, known in the industry as "Fresh Food Shrink," has profound implications for sustainability and the environment. This Fresh Food Shrink also has a large impact on retailers because it reduces their profit margins. Zest Labs is dedicated to helping reduce that waste.

2.     Zest Labs began developing its "Zest Fresh" solution, the industry's first proactive solution for managing the delivered freshness of produce and proteins, in 2010. Zest Fresh is proven to significantly reduce fresh food waste. In today's highly competitive and dynamic retail

grocery industry, Zest Fresh represents a significant value that retailers and growers alike increasingly recognize.

3.      Walmart, the world's largest retailer, likely loses more than $3 billion annually to Fresh Food Shrink. As retailers like Walmart try to protect their market positions from new competitors like Amazon, Inc., who deploy advanced technology and modern retail methods and features, it is easy to see why a technology-based solution for reducing billions of dollars in annual losses was very attractive to Walmart.

4.      Over the course of a multi-year relationship, and ending in late 2017, Zest Labs engaged in significant discussions, presentations, demonstrations, and product trials with Walmart. Zest Labs worked extensively with Walmart and with a number of produce growers, demonstrating how the Zest Fresh solution would improve the consistency of delivered shelf life at Walmart, and help reduce Walmart's Fresh Food Shrink. During this time, Zest Labs' proprietary information was shared with Walmart .

5.      A large number of Walmart employees gained direct access to Zest Labs' trade secrets and confidential information, including members of Walmart's executive leadership team. After accessing Zest Labs' trade secrets for years, Walmart abruptly terminated the trials in November 2017, and told Zest Labs it was no longer interested in Zest Fresh.

6.      Zest Labs was stunned when, just four months later, Walmart announced a system that looks, sounds, and functions very similarly to Zest Fresh, which Walmart publicly claimed had been"[d]eveloped in just six months by [Walmart's] own associates" and created via a "hackathon" involving Walmart engineers.

2

**PUBLIC (REDACTED) VERSION**

7.      That statement is false and, in reality, Walmart used its years of unfettered access to Plaintiffs' trade secrets, proprietary information, and know-how to steal the Zest Fresh technology and misappropriate it for Walmart's own benefit.

8.      Walmart has conceded that it will save $2 billion over five years as a result of deploying "its" system (which Walmart refers to as "Eden"), but if the system reduces Walmart's Fresh Food Shrink by 50%, Walmart's actual savings from misappropriation will exceed $15 billion in the next 10 years.

9.      Instead of licensing the Zest Fresh technology given Walmart's manifest need for it—and the mounting pressure it faces from Amazon and other competitors—Walmart misappropriated it without paying for it.  Plaintiffs file this lawsuit to protect their trade secrets and recover the billions of dollars that Walmart will save as a result of its unlawful conduct.

## PARTIES

10.      Plaintiff Zest Labs was previously known as Intelleflex Corporation ("Intelleflex") until October 28, 2016, when the corporation was renamed Zest Labs, Inc. to align the corporate name with its mission and the brand name of its products and services.  Plaintiff Zest Labs is an indirect, wholly owned subsidiary of Plaintiff Ecoark.

11.      Zest Labs offers shelf-life and freshness management solutions for food retailers and restaurants, farmers, growers, processors, manufacturers, and suppliers. Its "Zest Fresh" solution is a freshness management solution for proteins and post-harvest produce that improves delivered freshness. Zest Fresh increases users' product margins by significantly reducing post-harvest losses for retailers.

12.      Defendant Walmart is the largest retailer in the world.

**PUBLIC (REDACTED) VERSION**

13.     Defendant Walmart was formerly known as Wal-Mart Stores, Inc., and effective February 1, 2018, Wal-Mart Stores, Inc. changed its name to Walmart Inc.

## JURISDICTION AND VENUE

14.     This is an action arising under, *inter alia*, the Defend Trade Secrets Act, 18 U.S.C. § 1836.

15.     This Court has subject matter jurisdiction of the action under 28 U.S.C. §1331.

16.     Plaintiff Ecoark is a citizen of Nevada, incorporated in the State of Nevada, with its principal place of business in Rogers, Arkansas.

17.     Plaintiff Zest Labs is a citizen of Nevada, incorporated in the State of Nevada, with its principal place of business in San Jose, California.

18.     Defendant Walmart is a citizen of Delaware, incorporated in the State of Delaware, with its principal place of business at 702 S.W. 8th St., Bentonville, AR 72716.  Walmart may be served with process through its registered agent, The Corporation Company, at 124 West Capitol Avenue Suite 1900, Little Rock, AR 72201.

19.     This Court has personal jurisdiction over the parties.

20.     This Court is a proper venue for this case under 28 U.S.C. § 1391.  A substantial part of the acts or omissions giving rise to this action have occurred in this district. Walmart resides in this district by virtue of its operation of stores, offices, and distribution centers in this district. As such, venue is proper in this court pursuant to 28 U.S.C. § 1391.

21.     Moreover, pursuant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮.

## BACKGROUND

22.     Plaintiffs are agricultural-technology companies focused on solutions that reduce food waste and improve delivered freshness and product margins for fresh and perishable foods for a wide range of organizations, including farmers and growers, processors, distributors, and retailers.

23.     Each year in the United States, approximately 33% of post-harvest fresh food is wasted and therefore not consumed.  Some estimates place the total annual value of the loss at more than $85 billion dollars annually.  Both fresh food producers and retailers bear significant expense when harvested or processed food is either rejected due to early spoilage or reduced in value due to early ripening.

24.     Plaintiff Zest Labs offers shelf-life and freshness management solutions for food retailers and restaurants, growers, processors, manufacturers, and suppliers. Its "Zest Fresh" solution is a freshness management solution for proteins and post-harvest produce that improves delivered freshness.  Zest Fresh increases users' profit margins by significantly reducing post-harvest losses for retailers.

25.     The Zest Fresh solution is valuable.  Plaintiffs currently hold more than 60 patents relating to their solutions, and the Zest Fresh solution additionally incorporates multiple highly proprietary and confidential trade secrets relating to the Zest Fresh solution, architecture, and algorithms, software services, electronic data, and process know-how for tracking food freshness from farms to stores.

26.     Zest Fresh provides dynamic updates about actual product freshness for each pallet of fresh food, enabling intelligent pallet routing and inventory management of each pallet in a manner that ensures optimum delivered freshness.  Zest Fresh also provides workers with real-

time feedback on the current handling or processing of each pallet, empowering best-practice adherence to achieve maximum freshness. Zest Fresh further offers integrated supply-chain support to grower and shipper customers via the Zest Fresh platform.

27.     Walmart is the largest retailer in the United States and one of the largest retailers in the world. Walmart is also by far the largest grocery retailer in the United States, controlling more than 20% of U.S. groceries sold via retail in the United States.

28.     Among the products and merchandise offered in its stores, Walmart sells groceries and fresh food in many, if not all, of its more than 5,000 stores in the United States.

29.     In early 2014, Walmart and Plaintiff Zest Labs (then known as Intelleflex Corporation) began discussions to analyze Walmart's Fresh Food Shrink problem and how Plaintiff Zest Labs could assist Walmart in reducing its Fresh Food Shrink. Walmart and Zest Labs entered into a March 5, 2014, Confidentiality Agreement And Document of Understanding.

30.     Beginning in the fall of 2014, representatives of Zest Labs engaged with Walmart regarding Zest Fresh. In March 2015, Walmart Senior Vice President Shawn Baldwin visited a Zest Labs active site, and Mr. Baldwin stated to Zest Labs that ███████████████████████.

31.     ████████████████████████████████████████████████████████

████████████████████████████████████.

32.     In 2016, Walmart committed to a pilot and deployment of Zest Fresh. During this time, Walmart required that Zest Labs engage████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████A██████ official subsequently reported that Walmart ███████████████████████████████████████████Walmart then

**PUBLIC (REDACTED) VERSION**

told Zest Labs to prepare ██████████████████████████████████████████

███████████████████████████████████ at a cost of ██████████

33.     In July 2016, Zest Labs CEO Peter Mehring had a conversation with current
Walmart Vice President Parvez Musani during which ***Mr. Musani stated to Zest Labs*** ████████

████████████████████████████████████████ Walmart Vice President Parvez

Musani is the senior executive in charge of Walmart's Eden system, which misappropriated
Plaintiffs' technology.  As discussed more fully below, Mr. Musani also issued Walmart's March
2018 public announcement about the Eden system.

34.     Walmart's Executive Vice President, President and Chief Executive Officer,
Walmart U.S., Greg Foran, was also involved during the multi-year period in which Zest Labs and
Walmart worked to integrate Zest Fresh technology into Walmart's systems.  Mr. Foran was
involved in multiple meetings and conversations with Zest Fresh and, based on his background,

he ████████████████████████████████████████████████████████████████████

██████████.

35.     On August 23, 2016, a team of Walmart employees made a site visit to some of Zest
Labs' growers and met with Zest management.  During the meetings, Zest Labs and Walmart
discussed the ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

36.     To further integrate Zest Labs' technology into Walmart's Eden system, Walmart
Vice President Parvez Musani and his team continued to work and correspond with Zest Labs
through the end of 2016 to obtain the ████████████████████████████████████

██████████████████████████.

7

**PUBLIC (REDACTED) VERSION**

37.    Through April 2017, Zest Labs ran a continued pilot with Walmart that resulted in improved delivered freshness of Walmart's produce from ███████████████████ Over the course of multiple pilots with Walmart, Zest Labs spent millions of dollars in out-of-pocket costs.

38.    In mid-2017, Zest Labs representatives confirmed with Walmart that the parties were ███████████████████████████████████ From June through August 2017, the parties engaged in ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ Walmart indicated it was not interested in Zest Labs' technology and instead said that it planned to build its own system for reducing Fresh Food Shrink.

39.    Then, just four months later, on March 1, 2018, Walmart Vice President Parvez Musani published an article on Walmart's blog.walmart.com website entitled "Eden: The Tech That's Bringing Fresher Groceries to You" (hereafter the "March 1, 2018 Publication"). That publication revealed the "Eden system" as Walmart's "new" technology. The March 1, 2018 Publication is attached hereto as Exhibit B.

40.    According to the March 1, 2018 Publication, Walmart's new Eden system inspects fruits and vegetables for defects and can accurately predict the exact date when the food will spoil. To monitor temperature, Walmart attaches tracking devices to cases of produce as they travel on trucks between farms, distribution centers, and stores. If temperatures rise above optimal ranges during travel, the Eden system will reroute the trucks to a closer destination, because rising temperatures contribute to faster spoilage.

**PUBLIC (REDACTED) VERSION**

41.    Walmart's March 1, 2018 Publication asserts that the Eden system was "[d]eveloped in just six months by our own associates" and was created via a "hackathon, among the engineers" of Walmart. Ex. A at 1. Over the course of its relationship with Zest, a large number of Walmart employees had direct access to Zest Labs' trade secret technology. That technology is described in numerous confidential Zest documents provided to Walmart and in Walmart's emails and conversations with Zest employees, all under the parties' ███. Walmart had access to detailed descriptions of the Zest multi-layer solution, architecture, and algorithms for tracking food freshness and managing inventory from farms to stores, including the Zest Fresh platform, applications, software services, and Zest Labs' related process know-how.

42.    Based on the statements made by Walmart executives at the November 2017 meeting, Walmart may have known all along that it never planned to pay Zest Labs to use Zest Fresh, but rather planned to learn all it could about Zest Fresh and then take that knowledge for Walmart's use on Eden.

43.    Based on Walmart's public statements about Eden's capabilities, the technology of Zest Labs that Walmart gained access to during its relationship with Zest Labs has been integrated into Eden. Walmart integrated the Zest Labs technology into Eden without authorization and without compensating Zest Labs.

44.    The Zest Labs technology is extremely valuable. Walmart has publicly stated that, as of March 2018, it had already saved $86 million since initial deployment to 43 food distribution centers, and that Walmart expects to use the technology to save $2 billion over the next five years.

45.    On July 20, 2018, ████████████████████████████ ███████████████████████.

9

**PUBLIC (REDACTED) VERSION**

## COUNT I

### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, et seq.)

46.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 45 as though fully set forth herein.

47.     Plaintiffs possessed valuable trade secrets relating to tracking food freshness from farms to stores and reducing Fresh Food Shrink.  In particular, Zest Labs possessed its multi-layer solution, architecture, and algorithms for tracking food freshness from farms to stores, including the Zest Fresh platform, applications, software services, and related process know-how.

48.     Plaintiffs took reasonable precautions to maintain the secrecy of that information, including internal controls at Plaintiffs' offices, restricting third-party access to Plaintiffs' offices and facilities, non-disclosure agreements executed by Plaintiff's employees, and non-disclosure agreements in Plaintiffs' agreements with third parties.  Plaintiffs disclosed the information to Walmart under circumstances that gave Plaintiffs an expectation that Walmart would maintain the confidentiality of the information and would not use that information for Walmart's benefit, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮.

49.     Plaintiffs' trade secrets relate to products and services intended for use in interstate and/or foreign commerce including the sale, transport, distribution, and delivery of produce from farms to stores.

50.     Plaintiffs' trade secrets and confidential information described herein give Plaintiffs a competitive advantage and have independent commercial value from not being generally known or readily ascertainable to the public through independent development.

**PUBLIC (REDACTED) VERSION**

51.     Walmart knowingly and intentionally misappropriated Plaintiffs' trade secrets for Walmart's own use.  Moreover, Walmart's misappropriation of Plaintiffs' trade secrets was willful and malicious.

52.     Walmart acquired and misappropriated the trade secrets through misrepresentation, including breach of contractual agreements with Plaintiffs, and by fraudulently inducing Plaintiffs to engage in pilot programs and to provide other services and information to Walmart.

53.     Walmart has used and continues to use Plaintiffs' trade secrets in conjunction with Walmart's new Eden platform in breach of contractual agreements with Plaintiffs.

54.     On information and belief, Walmart has also disclosed, and will continue to disclose, the trade secrets to third parties, including vendors and suppliers, involved in the Eden program.

55.     On information and belief, Walmart used the information for its own benefit and disclosed the information to third parties.  Walmart thereby misappropriated Plaintiff's trade secrets.

56.     Plaintiffs have suffered actual damages in an amount to be determined by the trier of fact.

## COUNT II

### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE ARKANSAS TRADE SECRETS ACT

57.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 56 as though fully set forth herein. The same allegations that support Count I, also support Count II.

PUBLIC (REDACTED) VERSION

## COUNT III

## BREACH OF CONTRACT

58.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 57 as though fully set forth herein.

59.     Plaintiff Zest Labs, then known as Intelleflex, entered into the ██████████ ███████████████████████████████████████ Walmart was therefore obligated ██████████████████████████████████████████ ████████████████████████████████████████.

60.     ████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████.

61.     Plaintiff and Defendant are sophisticated business entities competent to enter into the ████.

62.     The ████ was certain as to its subject matter and contained the mutual agreements and mutual obligations of the parties.

63.     The ████ was also supported by legal consideration.

64.     Walmart breached the agreement with Plaintiffs not to use the information for its own benefit and to maintain the confidentiality of this information.

65.     Plaintiffs performed all conditions precedent to enforcement of the ████.

66.     Plaintiffs have requested that Walmart return all of their Confidential Information as Plaintiffs are permitted to do under the ████.

67.     Plaintiffs have suffered actual damages in an amount to be determined by the trier of fact.

## COUNT IV

## CONVERSION

68.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 67 as though fully set forth herein.

69.    Walmart has exercised dominion over property in violation of the rights of Plaintiffs, including Plaintiffs' intellectual property, confidential information, and electronic data.

70.    Walmart's actions denied Plaintiffs the right to their property and are otherwise inconsistent with the rights of Plaintiffs in their intellectual property, confidential information, and electronic data.

## COUNT V

## UNFAIR COMPETITION BY MISAPPROPRIATION

71.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 70 as though fully set forth herein.

72.    Plaintiffs created the Zest Fresh technology through extensive time, labor, skill, money, and investment.

73.    Walmart has used the Zest Fresh technology without authorization of Plaintiffs, affording Walmart competitive advantage by not having to incur the expense, time, labor, or resources incurred by Plaintiffs in creating the Zest Fresh technology.

74.    Walmart's actions denied Plaintiffs the right to their property and have caused commercial damage to Plaintiffs.

**PUBLIC (REDACTED) VERSION**

## COUNT VI

## FRAUD

75.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 74 as though fully set forth herein.

76.     By its conduct described above, Walmart falsely represented that it would maintain Plaintiffs' confidential information and trade secrets in confidence, and that Walmart intended to purchase Plaintiffs' services and solutions in order to integrate the Zest Fresh technology into Walmart's quality control and inventory management platforms.

77.     On information and belief, Walmart knew that that representation was false because Walmart intended to develop its own system even while relying on Plaintiffs and the pilot programs to learn the Zest Fresh approach, terminology, requirements, algorithms, and technology. At a minimum, Walmart knew that there was insufficient information upon which to make the representation.

78.     On information and belief, Walmart intended to induce Plaintiffs to provide valuable information, including trade secrets, and other confidential and proprietary items and information, to Walmart. Walmart further intended to induce Plaintiffs to provide services to Walmart to reduce Walmart's Fresh Food Shrink and otherwise teach Walmart how to control and minimize loss associated with Fresh Food Shrink.

79.     Plaintiffs' reliance on Walmart's false representations was justified under the circumstances because Walmart committed to the pilot programs, the deployment of Zest Fresh at Walmart, and other services. Walmart knew that it created incentives for Zest Labs to rely on those false representations because, for example, in the November 2017 meeting with Zest Labs,

**PUBLIC (REDACTED) VERSION**

Walmart opened the meeting by stating █████████████████████████████

████████

80.     As a result, Plaintiffs have suffered and will continue to suffer damages as a result
of their reliance on Walmart's false representations.

## COUNT VII

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

81.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1
through 80 as though fully set forth herein.

82.     Plaintiff Zest Labs, then known as Intelleflex, entered into the ████ with Walmart
on or about July 21, 2015.  As a result, Walmart was under an obligation to act in good faith and
deal fairly with the other parties to the agreement.

83.     Walmart breached its obligation to act in good faith when it sought and used
Plaintiffs' information for its own benefit and without authorization.

84.     Plaintiffs have performed their obligations under the ████.

85.     As a result of Walmart's breach, Plaintiffs have suffered actual damages in an
amount to be determined by the trier of fact.

## COUNT VIII

### UNJUST ENRICHMENT

86.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1
through 85 as though fully set forth herein.

87.     By its conduct described above, Walmart has been unjustly enriched to Plaintiffs'
detriment.

**PUBLIC (REDACTED) VERSION**

88.　　Plaintiffs developed and provided to Walmart valuable confidential and proprietary items and information that were beyond the scope of any contract.

89.　　Walmart received the benefit of such confidential and proprietary items and information.

90.　　The circumstances were such that Plaintiffs reasonably expected to be paid and compensated for the value of all such confidential and proprietary items and information delivered to Walmart that were outside the scope of any contract.

91.　　Walmart was aware that Plaintiffs were developing and providing to Walmart such confidential and proprietary items and information with the expectation of being paid or receiving compensation.

92.　　Walmart accepted all of the things that Plaintiffs developed for and provided to Walmart.

93.　　Walmart refused to pay Plaintiffs the reasonable value of such confidential and proprietary items and information that Walmart demanded from Plaintiffs.

94.　　Walmart received these benefits under circumstances that, in equity and good conscience, it should not retain.

95.　　Plaintiffs have thereby been damaged in an amount equal to the reasonable value of the things provided to Walmart by Plaintiffs that were outside the scope of any contract, which is an amount to be proven at trial.

## COUNT IX

### EXEMPLARY DAMAGES AND ATTORNEYS' FEES

96.　　Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 95 as though fully set forth herein.

16

**PUBLIC (REDACTED) VERSION**

97.     The misappropriation of trade secrets and other conduct referenced herein was done willfully and with malice.  Walmart is therefore liable for exemplary damages as a result of its conduct pursuant to at least 18 U.S.C. § 1836(b)(3)(C), and attorneys' fees pursuant to at least 18 U.S.C. § 1836(b)(3)(D) and Ark. Code Ann. § 4-75-607 (2018).

## COUNT X

### INJUNCTIVE RELIEF

98.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 97 as though fully set forth herein.

99.     By its conduct described above, Walmart has wrongfully obtained, used, benefited from, been unjustly enriched by, and given to others the intellectual property, trade secrets, and confidential information of Plaintiffs, and it has done so to Plaintiffs' detriment.

100.     Walmart has used and continues to use the intellectual property, trade secrets, and confidential information that it misappropriated and/or wrongfully obtained from Plaintiffs to achieve its goals of reducing Fresh Food Shrink and food waste and to develop the Eden system, and Walmart continues to use that information through its operations.

101.     Walmart's actions have resulted in the wrongful disclosure of Plaintiffs' ideas, technology, and trade secrets.

102.     On information and belief, Walmart's actions and implementation of the Eden system will result in the continued disclosure of Plaintiffs' ideas, technology, and trade secrets. There exists a threat that the third parties to whom Walmart is providing, has provided, or will provide such information will continue to use it to the detriment of Plaintiffs.

103.     Walmart's actions have interfered with Plaintiffs' business and ability to provide services to Walmart's competitors, partners, and/or suppliers.

**PUBLIC (REDACTED) VERSION**

104.    Plaintiffs have therefore suffered irreparable harm for which there is no adequate remedy at law.  Plaintiffs will continue to suffer injury by virtue of Walmart's misappropriation and disclosure of Plaintiffs' intellectual property, trade secrets, and confidential information to third parties.

105.    Plaintiffs are entitled to injunctive relief under at least the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.; the Arkansas Trade Secrets Act, Ark. Code Ann. § 4-75-604 (2018); and under general principles of equity.

106.    The public interest also supports injunctive relief in this case.

## JURY DEMAND

107.    Plaintiffs hereby requests a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

108.    WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully pray that the Defendant be cited to appear and answer and that, upon final hearing, Plaintiffs be awarded the following:

a.    actual damages, both past and future;

b.    special damages;

c.    exemplary damages;

d.    a reasonable royalty;

e.    disgorgement damages of any profit or benefit to Walmart obtained as a result of Walmart's misappropriation and/or use of Plaintiffs' trade secrets and confidential information;

f.    any other amounts to which Plaintiffs are entitled under the Defend Trade Secrets Act, the Arkansas Trade Secrets Act, and/or Arkansas law;

**PUBLIC (REDACTED) VERSION**

g.      an order and judgment temporarily, preliminarily, and permanently enjoining the defendant and all others acting in concert with it from harming Plaintiffs by continued misappropriation of Plaintiffs' confidential information and trade secrets;

h.      an order directing Walmart to take affirmative acts to protect Plaintiffs' trade secrets and confidential information from disclosure;

i.      an order requiring Walmart to immediately identify to Plaintiffs the identity of each person to whom Walmart has provided or disclosed any of Plaintiffs' intellectual property, trade secrets, or confidential information;

j.      attorneys' fees;

k.      costs of court;

l.      any other remedy to which Plaintiffs may show themselves to be entitled.

**PUBLIC (REDACTED) VERSION**

Dated: August 1, 2018

Respectfully submitted,

By: _____

Fred I. Williams (*pro hac vice pending*)
Texas State Bar No. 00794855
Michael Simons (*pro hac vice pending*)
Texas State Bar No. 24008042
Jonathan L. Hardt *(pro hac vice pending)*
Texas State Bar No. 24039906
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568
512.542.8400 telephone
512.542.8610 facsimile
fwilliams@velaw.com
msimons@velaw.com
jhardt@velaw.com

Todd E. Landis *(pro hac vice pending)*
Texas State Bar No. 24030226
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
214.220.7700 telephone
214.220.7716 facsimile
tlandis@velaw.com

Clifford Thau (*pro hac vice pending*)
New York State Bar No. 1786102
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, NY 10103
212.237.0000 telephone
212.237.0100 facsimile
cthau@velaw.com

Dustin B. McDaniel, Bar # 99011
Scott Richardson, Bar # 2001208
Bart Calhoun, Bar # 2011221
McDaniel, Richardson, & Calhoun PLLC
1020 West 4th St., Suite 410
Little Rock, AR 72201
501.235.8336
501.588.2104 fax
dmcdaniel@mrcfirm.com
scott@mrcfirm.com

**PUBLIC (REDACTED) VERSION**

bcalhoun@mrcfirm.com

Ross David Carmel, Esq. *(pro hac vice pending)*
New York State Bar No. 4686580
CARMEL, MILAZZO & DiCHIARA LLP
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458 telephone
(646) 838-1314 facsimile
rcarmel@cmdllp.com

*Attorneys for Plaintiffs Zest Labs, Inc. f/k/a
Intelleflex Corporation, and Ecoark Holdings,
Inc.*

# EXHIBIT A

# FILED UNDER SEAL

**EXHIBIT B**





**INNOVATION**

# Eden: The Tech That's Bringing Fresher Groceries to You

By Parvez Musani
Vice President – Supply Chain Technology, Walmart
March 1, 2018



## *What's for dinner tonight?*

No matter the answer, there are some givens: It has to taste good, be good for you, and be affordable. But when you're shopping with limited time, how can you be sure you're buying the freshest apples, milk that will last, or perfectly ripe bananas?

We think our new intelligent food system called Eden can help. Developed in just six months by our own associates, it is improving the quality and flow of fresh groceries from farm to shelf.

Eden is the result of a friendly competition, or hackathon, among the engineers on our fresh merchandising teams. Our goal was to figure out the best way to keep track of food freshness all the way from the farms to our stores. The winning team determined that building a digital library of food standards was the answer. So they gathered the many chapters of food product specifications set by the USDA, layered on Walmart's own rigorous product standards, and combined all of this information with more than a million photos to create a freshness algorithm that prioritizes the flow of perishable goods worldwide.





As a result, Josh Bohling, senior designer of associate experience design, and I have filed two patents for Walmart, and Eden is now the cornerstone of Walmart's move to improve the quality of fresh produce for sale to our customers.

Eden leverages sophisticated technologies such as machine learning, but we've made it simple enough for all of our associates to use. Eden's suite of apps helps Walmart associates better monitor and care for fresh fruits and vegetables that are waiting to be shipped from distribution centers to stores. That could mean more efficiently ripening bananas, predicting the shelf life of tomatoes while they're still on the vine, or prioritizing the flow of green grocery items from the back of the store to the shelf.

For example, take everybody's favorite, the banana. This tasty fruit is consistently among the best-selling grocery items in Walmart's U.S. stores. Bananas travel from seven countries in Latin America to over 4,000 stores in the U.S. On such a long road, what happens to those bananas if temperatures in the container trucks exceed acceptable ranges? In the future, Eden will be able to recalculate the freshness factor and re-route the shipment immediately. The bananas end up in a closer store to optimize freshness, consumers take home a delicious bunch, and everyone is happy.



Eden also helps eliminate food waste. Our goal is to eliminate $2 billion in waste over the next five years. Already, Eden is being used in 43 distribution centers and has prevented $86 million in waste from happening.

What was once a manual inspection process is now more efficient and thorough than ever. We're proud to say that we're the very first retailer who has digitized this entire process. Thanks to the power of technology, we're able to bring you and your loved ones fresher food, even faster.

SHARE   f   𝕏   in   ✉

