IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

ZEST LABS, INC. F/K/A INTELLEFLEX
CORPORATION AND ECOARK HOLDINGS, INC.                  **PLAINTIFFS**

v.                                          CASE NO. 4:18-CV-00500-JM

WALMART INC. F/K/A WAL-MART STORES, INC.                **DEFENDANT**

**DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

# REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

ZEST LABS, INC. F/K/A INTELLEFLEX
CORPORATION AND ECOARK HOLDINGS, INC.                    **PLAINTIFFS**

v.                        **CASE NO. 4:18-CV-00500-JM**

WALMART INC. F/K/A WAL-MART STORES, INC.                 **DEFENDANT**

### DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant Walmart Inc. ("Walmart"), by its attorneys, hereby answers and responds to each of the allegations of Plaintiffs Zest Labs, Inc. ("Zest") and Ecoark Holdings Inc. ("Ecoark") (collectively, "Plaintiffs"), in their Complaint as follows:

The titles and headings in the Complaint are vague and ambiguous and not susceptible of response. To the extent that any of those headings are deemed to constitute allegations against Walmart that require a response, Walmart denies each and every allegation contained therein.

1. Walmart admits that "Fresh Food Shrink" is responsible for billions of dollars of waste annually in the United States, and that "Fresh Food Shrink" can reduce the profit margins of fresh food retailers. Walmart lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 1 of the Complaint, and on that basis denies them.

2. Walmart denies the allegations in paragraph 2 of the Complaint.

3. Walmart admits that it is the world's largest retailer. Walmart denies the remaining allegations in paragraph 3 of the Complaint.

4. Walmart admits that it had a multi-year relationship with Plaintiffs. Walmart denies the remaining allegations in paragraph 4 of the Complaint.

5. Walmart denies the allegations in paragraph 5 of the Complaint.

1

6.      Walmart denies the allegations in paragraph 6 of the Complaint, except that to the extent that paragraph 6 purports to quote from, rely on, or otherwise characterize the March 1, 2018, blog post, Walmart refers to the document itself for a true and correct statement of its contents.

7.      Walmart denies the allegations in paragraph 7 of the Complaint.

8.      Walmart denies the allegations in paragraph 8 of the Complaint.

9.      Walmart denies the allegations in paragraph 9 of the Complaint.

10.     Walmart lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 10 of the Complaint, and on that basis denies them.

11.     Walmart admits that Zest Labs purports to offer shelf-life and freshness management solutions for food retailers and restaurants, farmers, growers, processors, manufacturers, and suppliers. Walmart lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 11 of the Complaint, and on that basis denies them.

12.     Walmart admits the allegations in paragraph 12 of the Complaint.

13.     Walmart admits the allegations in paragraph 13 of the Complaint.

14.     Walmart admits that Plaintiffs have asserted a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, but otherwise denies the allegations in paragraph 14 of the Complaint.

15.     Walmart admits that this case presents a federal question under 28 U.S.C. § 1331, but otherwise denies the allegations in paragraph 15 of the Complaint.

16.     Walmart lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 16 of the Complaint, and on that basis denies them.

17.     Walmart lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 17 of the Complaint, and on that basis denies them.

18.     Walmart admits the allegations in paragraph 18 of the Complaint.

19.     Walmart admits the allegations in paragraph 19 of the Complaint.

20.     Walmart admits that venue is appropriate in this district pursuant to 28 U.S.C. § 1391. However, the more appropriate forum for this litigation is the Western District of Arkansas, given that both Walmart and Zest Labs are located in that district, and given that a Master Services Agreement governing the events described in the Complaint designates the Western District of Arkansas as the exclusive forum for any disputes. Walmart denies the remaining allegations in paragraph 20 of the Complaint.

21.     Walmart admits that Section 9 of the NDA provides that "[t]he Parties agree to consent to the exclusive jurisdiction of the state and federal courts of Arkansas to resolve any dispute arising from [the NDA] and waive any defense of inconvenient or improper forum." Walmart otherwise denies the allegations in paragraph 21 of the Complaint.

22.     Walmart lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 22 of the Complaint, and on that basis denies them.

23.     Walmart lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 23 of the Complaint, and on that basis denies them.

24.     Walmart admits that Plaintiff Zest Labs purports to offer shelf-life and freshness management solutions for food retailers and restaurants, farmers, growers, processors, manufacturers, and suppliers. Walmart lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 24 of the Complaint, and on that basis denies them.

3

25.     Walmart lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 25 of the Complaint, and on that basis denies them.

26.     Walmart denies the allegations in paragraph 26 of the Complaint.

27.     Walmart admits that it is the largest retailer in the United States, that it is one of the largest retailers in the world, and that it is the largest grocery retailer in the United States. Walmart denies the remaining allegations in paragraph 27 of the Complaint.

28.     Walmart admits that it sells groceries and fresh food in many of its stores in the United States. Walmart denies the remaining allegations in paragraph 28 of the Complaint.

29.     Walmart admits that it entered into Confidentiality Agreement and Document of Understanding with Intelleflex Corporation dated March 5, 2014. Walmart denies the remaining allegations in paragraph 29 of the Complaint.

30.     Walmart denies the allegations in paragraph 30 of the Complaint.

31.     Walmart admits that it entered into a Mutual Confidentiality and Non-Disclosure Agreement with Intelleflex Corporation that was effective July 21, 2015. Walmart also admits that a true and correct copy of the NDA was attached to the Complaint as Exhibit A. Walmart otherwise denies the allegations in paragraph 31 of the Complaint.

32.     Walmart denies the allegations in paragraph 32 of the Complaint.

33.     Walmart admits that Mr. Musani is a senior executive at Walmart, that he was part of a team that had responsibility for Walmart's Eden system, and that he is listed as the author of the public blog post entitled "Eden: The Tech That's Bringing Fresher Groceries To You," which is dated March 1, 2018. Walmart otherwise denies the allegations in paragraph 33 of the Complaint.

4

34.     Walmart admits that Mr. Greg Foran communicated with Plaintiffs during the course of Walmart's multi-year relationship with them. Walmart otherwise denies the allegations in paragraph 34 of the Complaint.

35.     Walmart admits that certain of its employees met with Zest management in 2016. Walmart otherwise denies the allegations in paragraph 35 of the Complaint.

36.     Walmart admits that Mr. Parvez Musani and those on his team corresponded with Plaintiffs through the end of 2016. Walmart otherwise denies the allegations in paragraph 36 of the Complaint.

37.     Walmart denies the allegations in paragraph 37 of the Complaint.

38.     Walmart admits that Zest Labs participated in a "bake-off" competition in 2017, and that Walmart executives met with Zest Labs thereafter. Walmart otherwise denies the allegations in paragraph 38 of the Complaint.

39.     Walmart admits that a true and correct copy of the March 1, 2018 blog post was attached to the Complaint as Exhibit B. Walmart otherwise denies the allegations in paragraph 39 of the Complaint, except that to the extent that paragraph 39 purports to quote from, rely on, or otherwise characterize Exhibit B, Walmart refers to the document itself for a true and correct statement of its contents.

40.     Walmart denies the allegations in paragraph 40 of the Complaint, except that to the extent that paragraph 40 purports to quote from, rely on, or otherwise characterize Exhibit B, Walmart refers to the document itself for a true and correct statement of its contents.

41.     Walmart denies the allegations in paragraph 41 of the Complaint, except that to the extent that paragraph 41 purports to quote from, rely on, or otherwise characterize Exhibit B, Walmart refers to the document itself for a true and correct statement of its contents.

5

42.   Walmart denies the allegations in paragraph 42 of the Complaint.

43.   Walmart denies the allegations in paragraph 43 of the Complaint.

44.   Walmart denies the allegations in paragraph 44 of the Complaint, except that to the extent that paragraph 44 purports to quote from, rely on, or otherwise characterize Exhibit B, Walmart refers to the document itself for a true and correct statement of its contents.

45.   Walmart admits that it received a letter from Zest dated July 20, 2018. Walmart otherwise denies the allegations in paragraph 45 of the Complaint, except that to the extent that paragraph 45 purports to quote from, rely on, or otherwise characterize the aforementioned letter, Walmart refers to the document itself for a true and correct statement of its contents.

## COUNT I

## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. 4 1836, et seq.)

46.   Walmart incorporates by reference its responses to paragraphs 1 through 45 as though fully set forth herein.

47.   Walmart denies the allegations in paragraph 47 of the Complaint.

48.   Walmart lacks information sufficient to form a belief as to the allegations in the first sentence of paragraph 48 of the Complaint, and on that basis denies them. Walmart denies the remaining allegations in paragraph 48 of the Complaint.

49.   Walmart denies the allegations in paragraph 49 of the Complaint.

50.   Walmart denies the allegations in paragraph 50 of the Complaint.

51.   Walmart denies the allegations in paragraph 51 of the Complaint.

52.   Walmart denies the allegations in paragraph 52 of the Complaint.

53.   Walmart denies the allegations in paragraph 53 of the Complaint.

54.   Walmart denies the allegations in paragraph 54 of the Complaint.

6

55.     Walmart denies the allegations in paragraph 55 of the Complaint.

56.     Walmart denies the allegations in paragraph 56 of the Complaint.

## COUNT II

### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE ARKANSAS TRADE SECRETS ACT

57.     Walmart incorporates by reference its responses to the allegations contained in paragraph 1 through 56 as though fully set forth herein.  Walmart denies the remaining allegations in paragraph 57.

## COUNT III

### BREACH OF CONTRACT

58.     Walmart incorporates by reference its responses to the allegations contained in paragraph 1 through 57 as though fully set forth herein.

59.     Walmart denies the allegations in paragraph 59 of the Complaint, except to that the extent that paragraph 59 purports to quote from, rely on, or otherwise characterize the NDA, Walmart refers to the document itself for a true and correct statement of its contents.

60.     Walmart denies the allegations in paragraph 60 of the Complaint, except that to the extent that paragraph 60 purports to quote from, rely on, or otherwise characterize the NDA, Walmart refers to the document itself for a true and correct statement of its contents.

61.     Walmart admits the allegations in paragraph 61 of the Complaint.

62.     Walmart denies the allegations in paragraph 62 of the Complaint, except that to the extent that paragraph 62 purports to quote from, rely on, or otherwise characterize the NDA, Walmart refers to the document itself for a true and correct statement of its contents.

63. Walmart denies the allegations in paragraph 63 of the Complaint, except that to the extent that paragraph 63 purports to quote from, rely on, or otherwise characterize the NDA, Walmart refers to the document itself for a true and correct statement of its contents.

64. Walmart denies the allegations in paragraph 64 of the Complaint.

65. Walmart denies the allegations in paragraph 65 of the Complaint.

66. Walmart denies the allegations in paragraph 66 of the Complaint.

67. Walmart denies the allegations in paragraph 67 of the Complaint.

## COUNT IV

## CONVERSION

68. Walmart incorporates by reference its responses to the allegations contained in paragraph 1 through 67 as though fully set forth herein.

69. Walmart denies the allegations in paragraph 69 of the Complaint.

70. Walmart denies the allegations in paragraph 70 of the Complaint.

## COUNT V

## UNFAIR COMPETITION BY MISAPPROPRIATION

71. Walmart incorporates by reference its responses to the allegations contained in paragraph 1 through 70 as though fully set forth herein.

72. Walmart lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 72 of the Complaint, and on that basis denies them.

73. Walmart denies the allegations in paragraph 73 of the Complaint.

74. Walmart denies the allegations in paragraph 74 of the Complaint.

## COUNT VI

## FRAUD

75.  Walmart incorporates by reference its responses to the allegations contained in paragraph 1 through 74 as though fully set forth herein.

76.  Walmart denies the allegations in paragraph 76 of the Complaint.

77.  Walmart denies the allegations in paragraph 77 of the Complaint.

78.  Walmart denies the allegations in paragraph 78 of the Complaint.

79.  Walmart denies the allegations in paragraph 79 of the Complaint.

80.  Walmart denies the allegations in paragraph 80 of the Complaint.

## COUNT VII

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

81.  Walmart incorporates by reference its responses to the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

82.  Walmart denies the allegations in paragraph 82 of the Complaint.

83.  Walmart denies the allegations in paragraph 83 of the Complaint.

84.  Walmart denies the allegations in paragraph 84 of the Complaint.

85.  Walmart denies the allegations in paragraph 85 of the Complaint.

## COUNT VIII

## UNJUST ENRICHMENT

86.  Walmart incorporates by reference its responses to the allegations contained in paragraphs 1 through 85 as though fully set forth herein.

87.  Walmart denies the allegations in paragraph 87 of the Complaint.

88.  Walmart denies the allegations in paragraph 88 of the Complaint.

9

89.   Walmart denies the allegations in paragraph 89 of the Complaint.

90.   Walmart denies the allegations in paragraph 90 of the Complaint.

91.   Walmart denies the allegations in paragraph 91 of the Complaint.

92.   Walmart denies the allegations in paragraph 92 of the Complaint.

93.   Walmart denies the allegations in paragraph 93 of the Complaint.

94.   Walmart denies the allegations in paragraph 94 of the Complaint.

95.   Walmart denies the allegations in paragraph 95 of the Complaint.

## COUNT IX

## EXEMPLARY DAMAGES AND ATTORNEYS' FEES

96.   Walmart incorporates by reference its responses to the allegations contained in paragraphs 1 through 95 as though fully set forth herein.

97.   Walmart denies the allegations in paragraph 97 of the Complaint.

## COUNT X

## INJUNCTIVE RELIEF

98.   Walmart incorporates by reference its responses to the allegations contained in paragraphs 1 through 97 as though fully set forth herein.

99.   Walmart denies the allegations in paragraph 99 of the Complaint.

100.   Walmart denies the allegations in paragraph 100 of the Complaint.

101.   Walmart denies the allegations in paragraph 101 of the Complaint.

102.   Walmart denies the allegations in paragraph 102 of the Complaint.

103.   Walmart denies the allegations in paragraph 103 of the Complaint.

104.   Walmart denies the allegations in paragraph 104 of the Complaint.

105.   Walmart denies the allegations in paragraph 105 of the Complaint.

106.   Walmart denies the allegations in paragraph 106 of the Complaint.

## JURY DEMAND

107.   Paragraph 107 of the Complaint does not contain any factual allegations.

## PRAYER FOR RELIEF

108.   Paragraph 108 of the Complaint does not contain any factual allegations, but to the extent that it is construed as containing any such allegations, Walmart denies them.

## AFFIRMATIVE DEFENSES

Having answered Plaintiffs' Complaint, Walmart sets forth its affirmative defenses as follows:

### First Affirmative Defense

1.   This case has been brought in an inconvenient forum, and the Western District of Arkansas would be better suited to hear this action for several reasons, including but not limited to the fact that the Master Services Agreement dated January 18, 2016, selects the Western District of Arkansas as the exclusive forum for disputes relating to that agreement.

### Second Affirmative Defense

2.   Plaintiffs fail to state a claim upon which relief may be granted.

### Third Affirmative Defense

3.   Plaintiffs fail to state their allegations with the requisite specificity.

### Fourth Affirmative Defense

4.   Plaintiffs lack standing because Zest Labs Inc. and/or Ecoark Holdings Inc., do not own the information alleged to have been misused or misappropriated in this action.

11

### Fifth Affirmative Defense

5.     Ecoark Holdings Inc. lacks standing to assert a claim for breach of the NDA or breach of the implied covenant of good faith and fair dealing because it is not a party to the NDA.

### Sixth Affirmative Defense

6.     Plaintiffs' claims are barred in whole or in part by the doctrines of laches, estoppel, waiver, and/or acquiescence.

### Seventh Affirmative Defense

7.     Plaintiffs' claims are barred in whole or in part by their unclean hands.

8.     For instance, Plaintiffs acted with bad faith by secretly using their access to Walmart's systems, supply chain process, steps, and operational processes to develop, refine, and/or enhance their own software, without compensating Walmart.

9.     Upon information and belief, Plaintiffs acted with bad faith by using data gathered at Walmart relating to, *inter alia*, quality control and shipment routing, to develop, refine, and/or enhance the algorithm(s) that relate to the Zest Fresh technology without compensating Walmart.

### Eighth Affirmative Defense

10.     Plaintiffs' claims for misappropriation of trade secrets are barred, in whole or in part, by the economic loss doctrine.

### Ninth Affirmative Defense

11.     Plaintiffs' claim for fraud is barred, in whole or in part, by the economic loss doctrine.

### Tenth Affirmative Defense

12.     Plaintiffs' claims are barred, in whole or in part, because they are preempted.

### Eleventh Affirmative Defense

13.     Plaintiffs' claims are barred to the extent the alleged misuse of information was licensed, permitted, or otherwise authorized by persons or entities with the right to permit, license or authorize such use.

### Twelfth Affirmative Defense

14.     Plaintiffs' claims for breach of the NDA are barred, in whole or in part, because the NDA has been superseded by a Master Services Agreement, effective as of January 18, 2016.

### Thirteenth Affirmative Defense

15.     Plaintiffs have suffered no damages.

### Fourteenth Affirmative Defense

16.     If Plaintiffs suffered any injury or damages as alleged in the Complaint, which is expressly denied, then that injury or those damages resulted from Plaintiffs' own acts and/or omissions.

### Fifteenth Affirmative Defense

17.     Plaintiffs failed to act reasonably to mitigate, minimize or avoid the damages allegedly incurred, if any, and therefore any recovery must be reduced in whole or in part.

### Sixteenth Affirmative Defense

18.     Plaintiffs are not entitled to equitable relief because the injury allegedly suffered by Plaintiffs, if any, would be adequately covered by an action at law for damages.

### Seventeenth Affirmative Defense

19.     Walmart hereby gives notice that it intends to rely upon such other and further defenses as they are discovered or otherwise become available and reserves its rights to amend its Answer and assert such defenses.

WHEREFORE, Walmart demands judgment dismissing the Complaint, awarding legal fees and costs of suit, and granting such other and further relief as the Court may deem just and equitable.

### COUNTERCLAIM

Counterclaim-Plaintiff Walmart Inc. ("Walmart"), by way of its counterclaim against Counterclaim-Defendant Zest Labs Inc. ("Zest"), by and through its undersigned attorneys, alleges, upon knowledge as to itself and its own acts and upon information and belief as to all other matters, as follows:

### THE PARTIES

1.     Walmart is a Delaware corporation with its principal place of business at 702 S.W. 8th St., Bentonville, AR 72716.

2.     Upon information and belief, Zest is a Nevada corporation with its principal place of business at 2349 Bering Drive, San Jose, CA 95131.

### JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

4.     This Court has personal jurisdiction over Zest because it has purposefully availed itself of the benefits of this judicial district by filing its Complaint here.

14

5.     Based solely on Zest's filing of this action, venue is proper, though not necessarily convenient, in this District pursuant to at least 28 U.S.C. §§ 1391 and 1400.

## BACKGROUND

6.     Many of Walmart's stores sell fresh produce that is harvested and shipped from distant locations. During the journey from farms, to distribution centers, to Walmart stores (which Walmart calls the "fresh supply chain"), Walmart closely monitors the freshness of such produce. Walmart has developed a number of in-house solutions for managing and promoting freshness in the fresh supply chain, which has resulted in a suite of software applications known as "Muse" (previously known as "Eden").

7.     In late 2017, Walmart was interested in developing a mobile application relating to "retention sampling" as part of Walmart's suite of software application tools.

8.     "Retention sampling" provides information that can be used in fresh supply chain management. Walmart's distribution centers retain samples of the products that pass through their facilities on the way from the farms to Walmart's stores. Personnel at the distribution centers then monitor and record the degradation of those samples over time.

9.     For instance, a distribution center that receives a shipment of produce will retain reference samples, and then observe and document how the quality of that product is affected over time. This process provides reference data points that can allow Walmart to better manage the fresh supply chain, by, for example, informing shelf-life estimates and illuminating how products from different locations might degrade differently.

10.     Prior to 2018, Walmart and Zest had worked together, and Zest had received substantial information from Walmart regarding its proprietary systems for freshness management, which was subject to non-disclosure and confidentiality obligations on the part of Zest. Zest was

therefore well-positioned to assist with the development of a software tool appropriate for Walmart's existing supply chain, which Zest was well-aware of at that time.

11.     On February 28, 2018, Walmart and Zest entered into the Statement of Work ("SOW"), which was for the period starting on February 1, 2018, and ending on July 31, 2018. A true and correct copy of the SOW is attached hereto as Exhibit A.

12.     Under the SOW, Zest was obligated to work with Walmart's ████████ ███████████████████████████████████████████ In particular, Zest was to ██████ ███████████████████████████████████████████████████████████████████ ███████████████████████

13.     The retention sampling tool was required to have several features, including ███████████████████████████████████████████████████████████ ███████████████████████████

14.     In order for a retention sampling tool to be integrated into Walmart's existing suite of products and be useful for its distribution centers, it would need to be compatible with iOS and use an iOS camera. In addition, Walmart would need the computer code associated with that software to allow for modifications, upgrades, and utilization by personnel associated with Walmart.

15.     Pursuant to the terms of the SOW, Walmart provided data to Zest to allow it to develop tools for Walmart's use on iOS mobile devices. Walmart's system for post-harvest freshness management solutions was not compatible with the Android operating system.

16.     In exchange for the services that Zest was to provide under the SOW, Walmart agreed to pay a total of ███████████████████████████████████████

17.    Walmart timely paid ███████████████ Zest, for a total of

███████ .

18.    Zest was obligated to provide ████████████████ by no later than July 31, 2018. Those ████████████ included a retention sampling tool that could be incorporated into Walmart's internal, proprietary solution, i.e., the underlying computer code that would allow for such integration.

19.    In July 2018, Jay Oliphant, Principal Financial Officer and Corporate Controller at Ecoark Holdings, Inc., delivered to Walmart an Android device that included a prototype demonstration of a retention sampling tool. This tool was not compatible with Walmart's system, which utilizes iOS.

20.    In July 2018, Walmart requested that Zest deliver executable code for the developed retention sampling software to Walmart pursuant to the SOW, and Zest refused to do so. On information and belief, Tom Reese, Vice President, Business and Program Management at Zest, thereafter attempted to email Josh Bohling, Designer Lead for Walmart, an electronic version of the demonstration as .apk and .dl files, but not as executable code files. Mr. Bohling informed Zest that the files were not received. Zest never delivered an electronic version of the tool to Walmart, either as .apk and .dl files or as executable code.

21.    At no time did Zest provide Walmart with any computer code associated with the demonstration tool. That made it impossible for Walmart to use the tool to perform retention sampling at its distribution centers, because it could not be integrated into Walmart's existing suite of applications. In addition, it could not be modified, updated, or upgraded, rendering it essentially useless.

22.     Walmart thus paid ███████████ for Zest to develop a retention sampling tool, and what Walmart received was not capable of performing retention sampling for Walmart.

## COUNT I – BREACH OF CONTRACT

23.     Walmart incorporates by reference the allegations contained in paragraphs 1 through 22 of its Counterclaim as though fully set forth herein.

24.     The SOW is a valid and enforceable contract that Walmart and Zest entered into on February 28, 2018. As a result, Zest was under an obligation to act in good faith and to deal fairly with Walmart.

25.     Under the SOW, Walmart agreed to pay Zest ████████ for, among other things, a retention sampling software tool that could be integrated into Walmart's existing systems.

26.     At least as of the date of Zest's material breach, Walmart had fully performed its obligations under the SOW.

27.     Zest failed to provide the retention sampling tool as required by the SOW.

28.     Zest's failure to provide the required retention sampling tool represents a material breach of the SOW, which has resulted in substantial damage to Walmart. Zest also breached its obligation to act in good faith and to deal fairly with Walmart, including by delivering only an Android-based demonstration tool to Walmart (despite knowing that Walmart's system requires iOS compatibility), by failing to provide underlying code for Walmart to modify or upgrade the retention sampling tool, and by failing to provide electronic versions of the tool.

29.     Walmart paid for a retention sampling software tool that it never received. Walmart has therefore suffered damages in excess of ██████ in connection with Zest's failure to provide that tool that could be integrated into Walmart's existing systems.

18

## JURY DEMAND

30.     Walmart requests a trial by jury on all issues so triable for its counterclaims.

WHEREFORE, Walmart respectfully requests that this Court enter judgment against Zest on its counterclaim for relief, awarding (i) damages in an amount to be determined at trial; (ii) injunctive relief by ordering Zest to deliver the executable code for the developed retention sampling tool; (iii) legal fees, costs of the suit; and (iv) such other and further relief as the Court may deem just and equitable.

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com
cpekron@qgtlaw.com

By: _____
    John R. Tull III (84150)
    Chad W. Pekron (2008144)

-and

P. Anthony Sammi (*pro hac vice*)
Douglas R. Nemec  (*pro hac vice*)
Rachel R. Blitzer (*pro hac vice*)
Edward L. Tulin (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (fax)
anthony.sammi@skadden.com
douglas.nemec@skadden.com
rachel.blitzer@skadden.com
edward.tulin@skadden.com

*Attorneys for Defendant Walmart Inc.
f/k/a Wal-Mart Stores, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 29th day of October 2018, I served a true and correct copy of the foregoing, *via* electronic mail and regular U.S. Mail, upon the following counsel of record:

Dustin B. McDaniel
Scott Richardson
Bart Calhoun
McDaniel, Richardson & Calhoun PLLC
1020 West 4th Street, Suite 410
Little Rock, Arkansas 72201
dmcdaniel@mrcfirm.com
scott@mrcfirm.com
bcalhoun@mrcfirm.com

Fred I. Williams
Michael Simons
Jonathan L. Hardt
Vinson & Elkins LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
fwilliams@velaw.com
msimons@velaw.com
jhardt@velaw.com
ecoark VEInternalTeam@velaw.com

Todd E. Landis
Vinson & Elkins LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
tlandis@velaw.com

Clifford Thau
Vinson & Elkins LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103
cthau@velaw.com

Ross David Carmel
Carmel, Milazzo & DiChiara LLP
55 West 39th Street, 18th Floor
New York, New York 10018
rcarmel@cmdllp.com

John E. Tull, III

21

# Exhibit A









