**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**ZEST LABS, INC. F/K/A INTELLEFLEX
CORPORATION AND ECOARK HOLDINGS, INC.**                    **PLAINTIFFS**

**v.**                    **CASE NO. 4:18-CV-00500-JM**

**WALMART INC. F/K/A WAL-MART STORES, INC.**                    **DEFENDANT**

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY
OF WALMART'S TECHNICAL EXPERT, DR. CATHERINE ADAMS HUTT, PH.D.**

# **REDACTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

ZEST LABS, INC. F/K/A INTELLEFLEX
CORPORATION AND ECOARK HOLDINGS, INC.                    **PLAINTIFFS**

v.                               **CASE NO. 4:18-CV-00500-JM**

WALMART INC. F/K/A WAL-MART STORES, INC.                 **DEFENDANT**

### DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF WALMART'S TECHNICAL EXPERT, DR. CATHERINE ADAMS HUTT, PH.D.

Plaintiffs' primary technical expert, Mark Lanning, lacks the relevant expertise and qualifications to opine on the supply chain management techniques, approaches to shelf-life prediction, and underlying food science technology at issue in this case. His lack of expertise is in direct contrast to Walmart's primary technical expert, Dr. Catherine Adams Hutt, who has decades of experience with technology relating to supply chain management, shelf-life prediction and food science. Facing this disparity in qualifications between the primary technical experts, Plaintiffs have been forced to resort to mischaracterizing Dr. Hutt's report, deposition testimony, and analysis to create the false impression that she applied the wrong law and has the wrong qualifications to opine on a certain subset of her opinions. Both of those arguments are red herrings that should be rejected.

*First*, Plaintiffs seek to exclude the entirety of Dr. Hutt's opinions based on the fact that the "Legal Standards" section of her report does not specifically reference the fact that "disclosure" of a trade secret can constitute misappropriation. Not only do Plaintiffs mischaracterize that section of Dr. Hutt's report, but they also ignore Dr. Hutt's actual analysis, which acknowledges this legal principle by specifically rebutting Mr. Lanning's opinions regarding Walmart's alleged disclosures in the Bohling Application (also referred to as the "Walmart Application" in Zest's motion). Indeed, the vast majority of Dr. Hutt's 220-page rebuttal report responds directly to Mr. Lanning's

claims that alleged Zest Confidential Information was disclosed by Walmart in that application. Plaintiffs also overlook the fact that experts are not even permitted to opine on the law of trade secret misappropriation, and thus Dr. Hutt's analysis was properly confined to the factual issue of whether information that Walmart disclosed had been previously known to the public.

*Second*, Plaintiffs argue that Dr. Hutt overlooked certain alleged "uses" of Zest Confidential Information that could constitute trade secret misappropriation. There is no basis for this argument; it rests entirely on distorting Dr. Hutt's report and testimony. In reality, she considered every type of "use" identified by Mr. Lanning. Moreover, as with the disclosure arguments to which she responds, Dr. Hutt did not consider the question of whether any alleged uses meet the legal definition of "misappropriation," and instead appropriately confined her analysis to the factual question of whether those alleged uses involved information that had been publicly known and readily accessible before those uses—something that Mr. Lanning lacks the qualifications to do.

*Third*, Plaintiffs seek to exclude Dr. Hutt's opinions regarding the high-level elements of system architecture that are disclosed in the Bohling Application for a supply chain-based system. Unlike Mr. Lanning, who has no experience implementing any system architecture elements in the field of food science or supply chain management, Dr. Hutt's opinions are based directly on her expertise in supply chain and food science, and her actual professional experience in designing system architecture for supply chain and food science applications.

*Finally*, as with Plaintiffs' other motions to exclude expert testimony, Plaintiffs seek an order limiting Dr. Hutt's opinions to those set forth in her report. While this portion of Plaintiffs' motion does not involve the *Daubert* standards, it should be denied in any event because Plaintiffs are fully on notice of all opinions that Dr. Hutt intends to offer at trial.

## I.  PLAINTIFFS HAVE NOT ESTABLISHED THAT DR. HUTT APPLIED INCORRECT LAW ON TRADE SECRET MISAPPROPRIATION

Mr. Lanning and Dr. Hutt both provided hundreds of pages of opinions on whether or not certain alleged Zest Confidential Information was used or disclosed by Walmart.  As the law dictates, neither provided an opinion on trade secret misappropriation, which is an ultimate issue in this case.  Nevertheless, Plaintiffs seek to exclude the testimony of Dr. Hutt due to the absence of the word "disclosure" in her summary paragraph on the law of trade secret misappropriation. Plaintiffs' argument should be rejected for two reasons: (1) it relies on wild fabrications about the actual substance of Dr. Hutt's report and deposition testimony; and (2) it ignores Dr. Hutt's extensive analysis relating to the alleged disclosures of Zest Confidential Information.

### A.  Dr. Hutt Extensively Opined on Walmart's Alleged **Disclosures** of Information Zest Contends Is Confidential

In an attempt to convince the Court that Dr. Hutt has not considered whether there has been "disclosure" of alleged Zest Confidential Information, Plaintiffs' brief falsely claims that there was a "failure to analyze the disclosure prong of misappropriation" and states, "Dr. Hutt's opinions apply only her 'use' threshold."  (Dkt. 200 (hereafter "Pl. Br.") at 7.) [1]  To support these misstatements, Zest provides three examples from a single section (Section XI) of Dr. Hutt's report where Dr. Hutt explicitly addresses Walmart's alleged "use" of Zest Confidential Information to create the misimpression that Dr. Hutt's entire report addresses only "use" and not the separate allegations of "disclosure."  (*Id.*)[2]

---

[1] Cites to "Pl. Ex. _" in this brief refer to Plaintiffs' Exhibits to their Motion to Exclude the Testimony of Walmart's Expert Witness, Dr. Catherine Adams Hutt (Dkt. 199).

[2] It is true that Dr. Hutt only addresses "use" and not "disclosure" in Section XI of her report. (Pl. Ex. A, at 200-209.)  There is a very good reason for this: Section XI of Dr. Hutt's Report rebuts Section XIII of the Lanning Report, which only addresses alleged "use" of Zest Confidential Information by Walmart. (Omnibus Ex. No. 26 at ¶ 532 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇') (emphasis added); ¶ 548 ('▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇) (emphasis added).)  While this section uses the word

Plaintiffs' characterizations bear no resemblance to Dr. Hutt's actual report, which addresses Walmart's alleged disclosures in painstaking detail. She uses the word "disclosure" or a variant thereof **295** times in her report. Entire sections of her report are devoted to addressing whether Walmart disclosed alleged Zest Confidential Information, including Sections IX and X, which together span 134 pages:

IX. THE DOCUMENTS SHARED WITH A.T. KEARNEY AND MU SIGMA DO NOT
    DISCLOSE ZEST CONFIDENTIAL INFORMATION.................................................66

X. THE BOHLING APPLICATION DOES NOT DISCLOSE ZEST CONFIDENTIAL
    INFORMATION.............................................................................................69

(Pl. Ex. A at ii.)

In fact, in Section X of her Report, Dr. Hutt directly addressed Mr. Lanning's ambiguity regarding "use" or "disclosure," and made clear that she was addressing both:



---

"disclose" a number of times, that word is only used with regard to Zest's sharing of information, not alleged disclosures by Walmart. (*Id.* ¶¶ 531-48.)



(*Id.*, ¶¶ 157, 161.) Moreover, in her deposition (in which Dr. Hutt and Plaintiffs' counsel used the word "disclosure" or a variant thereof 146 times),[3] Dr. Hutt specifically testified that she addressed not only the "uses" alleged by Mr. Lanning, but also the specific alleged "disclosures":

---

[3] There were many instances in Dr. Hutt's deposition where she and opposing counsel discussed her disclosure opinions. (*See,* e.g., Omnibus Ex. No. 57 at 138:8-150:11;154:18-155:18; 165:17-170:25.)



Accordingly, despite the ambiguity in Mr. Lanning's report owing to his imprecise use of the "use" and "disclosure" terminology, Dr. Hutt made sure to address both in her report.

There can be no doubt that Dr. Hutt considered and opined (at length) on disclosure of the alleged Zest Confidential Information, and it is irresponsible of Plaintiffs to represent otherwise. If Plaintiffs truly believe that Dr. Hutt has failed to rebut any of the alleged disclosures identified by Mr. Lanning, they are free to explore that issue on cross-examination. *See Tweedle v. State Farm Fire & Cas. Co.*, No. 4:04-CV-608 (RSW), 2005 WL 8167842, at *2 (E.D. Ark. Dec. 9, 2005) ("Generally, the factual basis of an expert's opinion goes to credibility, not admissibility, and it is up to the [opposing party] to examine the expert's factual basis in cross-examination."), *aff'd*, 202 F. App'x 934 (8th Cir. 2006).

### B. Mr. Lanning and Dr. Hutt Applied the Same Legal Standards

Both technical experts used the exact same standard to evaluate Plaintiffs' allegations of wrongdoing by Walmart. Mr. Lanning explained his standard as follows:



(Omnibus Ex. No. 26 at 26 n.2; *see also* Omnibus Ex. No. 63 at 199:5-9 ("████████████

████████████████████████████████████████████████████████████

████████████████).) Dr. Hutt applied the same standard:





**A. Zest Confidential Information**

163.    Mr. Lanning provides the following definition of Zest Confidential Information:[134]

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

I will apply this same definition.[135]

(Pl. Ex. A, ¶ 163.)

As is customary in expert reports, Dr. Hutt also included a summary of the legal standards relevant to her report, written in lay language. Dr. Hutt summarized the legal concept of trade secret misappropriation in one paragraph, including the generalized element "the defendant used the trade secret without authorization." (*Id.*, ¶ 23.) This is a perfectly fair summary of the law, as the lay word "use" is quite broad and is often interpreted to include disclosure. *See, e.g.*, *Merckle GmbH v. Johnson & Johnson*, 961 F. Supp. 721, 734 (D.N.J. 1997) (finding that jury could find defendant used trade secrets by disclosing the secrets in German patent infringement litigation); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40 (AM. LAW INST. 1995) ("There are no

technical limitations on the nature of the conduct that constitutes 'use' of a trade secret for purposes

of the rules stated in Subsection (b). As a general matter, any exploitation of the trade secret that

is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use' under

this Section."). Indeed, Dr. Hutt explained at her deposition: " ███████████████████

████████████████████████████████████████████ " (Omnibus Ex.

No. 57 at 123:25-124:3.) Moreover, Dr. Hutt's summary wording is consistent with the fact that

Mr. Lanning appears to have used the words "use" and "disclosure" interchangeably. (*Compare,*

e.g., Omnibus Ex. No. 26, Section Heading XII.A.x. *with id.*, ¶ 258.) Indeed, Dr. Hutt confirmed

at her deposition that she intended to mirror Mr. Lanning's summary of the law:



(Omnibus Ex. No. 57 at 118:11-119:16.) Dr. Hutt further confirmed her understanding that "███

████████████████████████████████████████████ " (*Id.* at 124:6-

8.)[4] Under such circumstances—where her report and testimony evidence her in-depth evaluation

---

[4] Plaintiffs twist Dr. Hutt's testimony to contend that she "confirmed that she has applied a standard for misappropriation that does not acknowledge the disclosure prong of the DTSA" and that "she thinks she was free to base her opinion on only one of those prongs." (Pl. Br. at 5.) As the cited testimony confirms, this is not so.

of alleged disclosure by Walmart—Dr. Hutt's testimony cannot be excluded simply for not including the word "disclosure" in a paragraph summarizing the legal background. *Blevens v. Holcomb*, 469 F.3d 692, 695 (8th Cir. 2006) ("[E]xperts need not recite the proper standard in 'ritualistic fashion', they must show in their testimony 'that the proper objective legal standard is the standard being employed.'" (citation omitted)).

### C.    Neither Mr. Lanning Nor Dr. Hutt Opines on Trade Secret Misappropriation

Plaintiffs incorrectly insinuate that the technical experts in this case rendered opinions on whether or not "trade secret misappropriation" (a four-step inquiry) had occurred. (*See, e.g.*, Pl. Br. at 4 (discussing "assessing trade secret misappropriation"); 7 (incorrectly referring to Dr. Hutt's "opinions on misappropriation").) That is incorrect.

Mr. Lanning acknowledged that he was not opining on such ultimate issues (Omnibus Ex. No. 26 at 26 n.2), which he further confirmed at his deposition. (*See* Omnibus Ex. No. 63 at 220:3-5 (" ); 68:22-23 ("  "); 292:11-13.) Indeed, following the "Principles of Law section" on page 11 of his 271-page report, Mr. Lanning never uses the word "misappropriation" (or any form of it) again in his report. (*See* Omnibus Ex. No. 26.) Instead, Mr. Lanning only provides an opinion, in relevant part, as to whether certain information meets his definition of "Zest Confidential Information," and whether that information was used or disclosed by Walmart:

(*Id.* ¶¶ 36-37.) Dr. Hutt responds to those opinions fully over the course of 220 pages, addressing each allegation that Walmart either used or disclosed alleged Zest Confidential Information, without opining on the ultimate legal conclusion or the underlying law. (Pl. Ex. A, ¶¶ 4, 147-413, 437.)

Indeed, experts are not permitted to apply legal standards to render legal conclusions. *Estes v. Moore*, 993 F.2d 161, 163-64 (8th Cir. 1993) (affirming exclusion of a proposed expert's statement of legal conclusion); *Cargill, Inc. v. Sears Petroleum & Transp. Co.*, 334 F. Supp. 2d 197, 250 (N.D.N.Y. 2004) (finding that expert testimony regarding whether trade secret misappropriation occurred is inadmissible as a legal conclusion). Plaintiffs' mischaracterizations notwithstanding, there is no basis to exclude testimony from Dr. Hutt relating to the ultimate conclusion of "trade secret misappropriation" or the law governing that conclusion, because she has not indicated that she would be offering any such testimony.

## II.     PLAINTIFFS HAVE NOT ESTABLISHED THAT DR. HUTT APPLIED THE INCORRECT DEFINITION OF "USE"

Plaintiffs contend that Dr. Hutt "fail[s] to apply the correct test for misappropriation and 'use' under trade secret law" because she allegedly applies a severely limited definition of the concept of "use" in her analysis. (Pl. Br. at 8.) As in the preceding section, Plaintiffs again distort Dr. Hutt's opinions and confuse the experts' opinions with opinions on the ultimate issue of "trade secret misappropriation."

Plaintiffs' argument depends on two sentences, seemingly selected at random, from Dr. Hutt's 3,500-line report, and characterizes them as representative of Dr. Hutt's exclusive understanding of "use." Specifically, Plaintiffs assert that the only two types of "uses" that Dr.

Hutt has considered are "verbatim copying[5] or insertion into limited parts of the defendant's deployed system." (Pl. Br. at 9.) Plaintiffs then take this argument a step further and portray Dr. Hutt's report as "Walmart's attempt to have its experts to [sic] opine that there was no misappropriation of trade secrets" (*id.*), even though, as already discussed above, the experts in this case have not offered opinions on whether trade secret misappropriation has occurred. (*See* supra I.C.) There is absolutely no support for Plaintiffs' positions in Dr. Hutt's report or deposition testimony.[6]

In reality, Dr. Hutt applied a much broader definition of "use" than what Plaintiffs claim. To start, Dr. Hutt provided a response to each of Mr. Lanning's allegations of use. (*Cf.* Omnibus Ex. No. 26 *with* Pl. Ex. A.) Such response covered all manner of "use." For example, the entirety of Section XI(C) of her report addresses "amorphous use of Zest Confidential Information" alleged by Mr. Lanning. (Pl. Ex. A ¶¶ 409-13.) Dr. Hutt's opinions in this section address potential use of alleged Zest Confidential Information in (i) Walmart's current work, (ii) Walmart's future goals, (iii) Walmart's priorities and decision-making, (iv) Walmart's development of fresh-related applications, and (v) what Walmart has achieved. (*Id.* ¶¶ 409-13.) This section alone fully refutes Plaintiffs' claim that Dr. Hutt considered only two types of uses, and further demonstrates that Dr. Hutt actually considered all the examples of "use" listed in Plaintiffs' Brief: creating a new product, using information as a starting point, and applying the lessons learned from information. (Pl. Br. at 8-9.)

---

[5] It should be noted that Plaintiffs' example of a "verbatim copying opinion" from Dr. Hutt is not even an opinion on use of alleged Zest Confidential Information by Walmart. In that paragraph, Dr. Hutt is responding to Mr. Lanning's ███████████████████████████████████████████ ████████████████████████████████████████████████████████████the cited documents on which Mr. Lanning relies. (Omnibus Ex. No. 26, ¶ 161-62; Pl. Ex. A ¶ 172.) This is a colloquial use of the word "use."

[6] In fact, counsel for Plaintiffs deposed Dr. Hutt at length regarding her consideration of whether Zest Confidential Information was "used" in creating the Bohling Application. (Omnibus Ex. No. 57 at 140:9-160:21.) Dr. Hutt explicitly confirmed, '███████████████████████████████████████████████████████████████████████████ █████████' (*Id.* at 140:24-141:3.)

Additionally, other examples of various applications of "use" abound in Dr. Hutt's report. In paragraph 161, she notes that she understands "use" might include "utiliz[ing] [Zest Confidential Information] in order to create [a] particular disclosure in the Bohling Application." (Pl. Ex. A, ¶ 161.) ████████████████████████████████████

████████████████████████████████████████████████ (*Id.* ¶ 215.) In more than two dozen other paragraphs, Dr. Hutt addresses allegations that alleged Zest Confidential Information was used to create figures or concepts included the Bohling Application. (*Id.* ¶¶ 225-26; 233-24; 238-39; 247-48; 254-55; 267-68; 275-76; 284-85; 287-88; 293-94; 298-99; 312-13; 316-17; 322-23; 326-27; 335-36; 341-42; 345-47; 350; 355-56; 358-60; 362-63; 366-69; 377-78.) In paragraph 408, Dr. Hutt responds to a suggestion "that Walmart used Zest Confidential Information to develop system architectures." (*Id.* ¶ 408.) There is simply no evidence that Dr. Hutt excluded any potential definition of "use" from her rebuttal analysis. But if Plaintiffs believe that Dr. Hutt overlooked an alleged "use" of Zest Confidential Information, cross-examination is the correct avenue to challenge her, not a motion to exclude. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## III.     THERE IS NO BASES TO EXCLUDE DR. HUTT'S LIMITED AND INFORMED OPINIONS ON SYSTEM ARCHITECTURE

Plaintiffs' arguments to exclude Dr. Hutt's opinions on system architecture indicate a misunderstanding of both the scope of Dr. Hutt's expertise, and of the opinions she has provided regarding system architecture. Despite Plaintiffs' assertions otherwise, Dr. Hutt's expertise in supply chain and food science, and her experience in developing system architecture in those fields, provide the basis for the system architecture-related opinions she provides for the Bohling

Application. And while Plaintiffs assert that Dr. Hutt should not be permitted to opine on the system architectures used by Zest and Walmart, Dr. Hutt has not offered any such opinions.

**A.**     **Dr. Hutt's Opinions of the System Architecture Elements of the Bohling Application Are Within Her Supply Chain and Food Science Expertise**

System architecture refers to the conceptual model for a computer system, as opposed to system design, which is the actual programming and implementation of that model. (*See* Dkt. 197, Ex. A, ¶ 29, n.8 ("the term systems architecture is very general") (quoting Stephen D. Burd, *Systems Architecture* 2 (7th ed. 2016)).) A system architecture can be a very general sketch of the functionality of a system. For example, Plaintiffs' Expert Mr. Lanning heavily relies on ZEST_ECOARK0060330 as disclosing a system architecture:



(*See, e.g.*, Omnibus Ex. No. 26, ¶ 369.) This is not a computer program; it is a functionality mock-up.

The Bohling Application also describes a high-level system architecture, outlining the potential functionality of a shelf-life prediction system. (Omnibus Ex. No. 29, ¶¶ 31-58.) Generally, the Bohling Application describes using a computer-based system that uses various applications to collect information about and make calculations regarding given product in order

to make shelf-life predictions. (*Id.*) In her report, Dr. Hutt opines that these system architecture-related portions of the Bohling Application do not use or disclose alleged Zest Confidential Information, because they merely address concepts that have already been publicly disclosed by others. (Pl. Ex. A, ¶¶ 303-50.)

Despite Plaintiffs' claim that Dr. Hutt "has no experience developing system architectures in any relevant technological field" (Pl. Br. at 11), her opinions are based directly on her expertise and experience. For example, Plaintiffs cite to one question in Dr. Hutt's deposition to argue, "She has no experience building a system architecture for a freshness indicator." (*Id.* at 12.) They strategically omit the very next question of that deposition, which was:

(Omnibus Ex. No. 57 at 202:8-20.) As Dr. Hutt further explained in her report and in her deposition, she herself has designed such system architectures for supply chain management applications. (Pl. Ex. A, ¶ 9; Omnibus Ex. No. 57 at 195:8-204:10; 219:10-225:7.) In particular, Dr. Hutt devised the system functionality for a product lifecycle management system called Vendor Improvement and Product Enhancement and Research (VIPER). (Pl. Ex. A, ¶ 9; Omnibus Ex. No. 57 at 200:17-204:10.) Following her contribution of system architecture functionality, others handled the computer programming necessary to transform Dr. Hutt's system architecture into a functioning computer program:



(Omnibus Ex. No. 57 at 203:9-204:10.)

Plaintiffs dismiss this work as irrelevant because Dr. Hutt did not participate in the actual

programming of the software and because she described her role as "high level":



(*Id.* at 220-14-221:21.) But Dr. Hutt is describing exactly what Mr. Lanning identified as a ████

████ in ZEST_ECOARK0060330 (Omnibus Ex. No. 26, ¶ 369): ████████████████

████████████████████████████████████████████████████

████████ And indeed, the software architecture components of the Bohling Application are

15

similarly high-level, addressed to functional concepts and not programming details, such as using a "computing device [to] communicate[] with information sources and a set of sensors to obtain data associated with [a] produce item." (Omnibus Ex. No. 29 ¶ 31; *see also id.* ¶¶ 32-58.)

Dr. Hutt's expertise in supply chain and food science, and her experience creating system architecture in those fields, enable her to provide opinions on whether the supply chain-related system architecture outlined in the Bohling Application has been publicly disclosed by Zest or others. *In re Prempro Prods. Liab. Litig.*, MDL No. 4:03-CV-1507-BRW, 2012 WL 13033298, at *2 (E.D. Ark. Apr. 11, 2012) (dismissing a challenge that an oncologist "is not a cancer biologist" as insufficient to "eliminate . . . an expert so long as her testimony is within the confines of her knowledge and experience"); *Sullivan v. Ford Motor Co.*, No. 97CIV0593(RCC), 2000 WL 343777, at *5 (S.D.N.Y. Mar. 31, 2000) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion." (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989))). Dr. Hutt may assist the jury by providing her opinions—informed by her actual professional experience—on the particular issue of the supply-chain system architecture disclosed in the Bohling Application. On the other hand, as Plaintiffs point out, Dr. Hutt has no expertise in the details of computer programming. (Pl. Br. at 11-12.) It is for this very reason that she provides no opinions on computer programming.

Accordingly, because the only opinions on "system architecture" that Dr. Hutt provides are those within the scope of her supply chain and food science expertise, Plaintiffs have provided no reason to exclude them.

16

**B.     Dr. Hutt Does Not Offer Opinions on the System Architectures of Zest Labs and Walmart**

Plaintiffs contend that "Dr. Hutt should not be allowed to provide an expert opinion on the design or functionality of either Walmart's or Zest Labs' system architecture[.]" (Pl. Br. at 16.) But Dr. Hutt did not offer "an expert opinion on the design or functionality of either Walmart's or Zest Labs' system architecture"; her opinions were instead confined exclusively to the disclosures in the Bohling Application. (Pl. Ex. A, ¶¶ 303-50.)

Though Dr. Hutt does not offer the opinions that Plaintiffs seek to exclude, this is not a basis to grant the relevant portion of Plaintiffs' motion. Plaintiffs seek a broad exclusion order that "[Dr. Hutt] should not be allowed to provide any opinions on system architecture at trial" and "Dr. Hutt's opinions on system architecture should be excluded from the trial." (Pl. Br. at 17, 18.) But as explained above, Dr. Hutt is fully qualified to opine on whether the limited aspects of the Bohling Application's supply chain-based system architecture were publicly available documents. Second, Plaintiffs are not entitled to file motions to exclude opinions that an expert has not offered, as that is not a proper basis for a *Daubert* motion. *See, e.g., More, JC, Inc. v. Nutone Inc.,* No. 05 A-05-CA-3318 LY, 2007 WL 4754173, at *14 (W.D. Tex. Mar. 21, 2007) (finding "exclusion of testimony regarding" particular subject matter was "more appropriately the subject of a motion in limine or of other evidentiary objections for the District Court's consideration at the time of trial").

**IV.     PLAINTIFFS ARE ON NOTICE OF ALL OPINIONS THAT DR. HUTT INTENDS TO OFFER AT TRIAL**

Plaintiffs ask the Court to limit Dr. Hutt's opinions to those "disclosed in her report," as opposed to certain additional opinions that Dr. Hutt allegedly expressed only during her deposition. (Pl. Br. at 20.) This portion of Plaintiffs' motion does not implicate the *Daubert* standard, and would more appropriately be styled as a motion *in limine*. However the motion is styled, "there is nothing to indicate that the . . . experts will attempt to testify to matters not disclosed in their

17

reports. About the best that can be provided the defendants is 'a prophylactic ruling that plaintiff is to comply with the established rules of civil procedure,'" which courts typically decline to do. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 659 (N.D. Ill. 2006) (citation omitted).

In any event, Plaintiffs' request should be denied because Dr. Hutt disclosed all opinions she intends to offer at trial in her rebuttal expert report. But, even if Dr. Hutt's deposition testimony did exceed the scope of that written opinion, there is no basis to exclude such testimony because Plaintiffs are indisputably on notice of such opinions, solicited such opinions themselves, and would suffer no harm or prejudice from their introduction at trial.

### A. Dr. Hutt's Opinions Were Fully Disclosed in Her Expert Report

This portion of Plaintiffs' brief again relies on demonstrably false characterizations of Dr. Hutt's testimony. As a supposed example of Dr. Hutt's intention "to ambush Plaintiffs at trial" (Pl. Br. at 20, 23), Plaintiffs aver, "in disclosing her opinion on whether the concepts in Paragraph 25 of the Walmart Application were publicly known, Dr. Hutt's report cites a limited set of Zest documents (**and cited no non-Zest publications or third-party public information**). *See* Exhibit A at 139-142." (*Id.* at 21 (emphasis added).)[7] That is incorrect. Pages 139-142 of Dr. Hutt's report address Paragraph 25 of the Bohling Application and cite multiple "non-Zest publications [and] third-party public information," including:

- *Measuring Produce Freshness: the Key to Preventing Waste*, ChainLink Research (2017) ("*Measuring Produce Freshness*") (page 140, ¶ 270)

---

[7] Plaintiffs likewise disparagingly quote Dr. Hutt's deposition testimony where she insists that the Zest publication identified in ¶ 269 of her report is not the only document relevant to Paragraph 25 of the Bohling Application that she can identify. (Pl. Br. at 21-22 (citing Dkt. 199, Ex. B at 190:19-191:15).)

- Jedermann et al., *Reducing food losses by intelligent food logistics*, Philosophical Transactions of the Royal Soc'y, (2014) ("*Reducing Food Losses*") (page 140-41, ¶ 271)

- Maarten et al., *Shelf-life modelling for first-expired-first-out warehouse management*, Philosophical Transactions of the Royal Soc'y, (2014) ("*Shelf-Life Modelling*") (page 142, ¶ 274)

(Pl. Ex. A at 139-42.) Moreover, the introductory paragraph to that section of Dr. Hutt's report directly references non-Zest/third-party publications.



(*Id.* ¶ 268.)

In any event, Plaintiffs' fixation with the references cited by Dr. Hutt misses the point. Dr. Hutt opines, in relevant part, that certain information claimed by Mr. Lanning to be Zest Confidential Information is, in reality, publicly known. These opinions are fully disclosed in Dr. Hutt's report. Dr. Hutt's citations to articles are just supporting evidence of her opinions. Multiple courts have confirmed that an expert may change or add to references cited to support opinions without unfair surprise to the opposing party. For example, in *Dormu v. D.C.*, 795 F. Supp. 2d 7 (D.D.C. 2011), plaintiff submitted a supplemental expert report *after summary judgment briefs were filed* identifying new references to support the expert's previously disclosed opinions. *Id.* at 28 & n.16. The Court explained that, "[t]he supplemental affidavit sets forth references, not new opinions, and therefore does not blindside defendants with new information." *Id* at n.16. Likewise,

19

in *In re: Boston Scientific Corp. Pelvic Repair System Products Liability Litigation*, No. MDL 2326, 2018 WL 2440273 (S.D.W. Va. May 30, 2018), plaintiffs objected to an expert's reliance on "sources not referenced in his expert report, including undisclosed BSC internal documents, deposition testimony of an unspecified BSC corporate witness, and expert reports by other experts in this litigation." *Id.* at *3. The Court denied the motion, and explained that "the omission related to support for Dr. Rice's opinions rather than the opinions themselves." *Id.* The same reasoning applies here—perhaps even more strongly, because, unlike in the cited cases, Dr. Hutt actually identified her universe of supporting evidence in her first (and only) expert report. Moreover, consistent with the reasoning of these cases, Dr. Hutt made clear in her report that the references cited in individual paragraphs were just examples from the large pool of publicly available information supporting her opinions. (Pl. Ex. A, ¶¶ 111, 159, 393.)

### B.     Plaintiffs Are on Notice of Any Opinions Expressed by Dr. Hutt at Deposition

Plaintiffs are correct that Federal Rules of Civil Procedure 26 and 37 require that an opposing party be put on notice of the opinions an expert intends to offer at trial.[8] (Pl. Br. at 19-20.) Plaintiffs are also correct that an expert report is one mechanism for providing that notice. (*Id.* at 20.) However, Plaintiffs are wrong to suggest that a report is the only mechanism.[9] It is well-established that expert opinions disclosed at deposition provide an opposing side with

---

[8] Section II.C.1. of Plaintiffs' Brief includes identical paragraphs to Section II.F. of Plaintiffs' Brief in Support of its Motion to Exclude Testimony of Walmart's Damages Expert, Dr. William Choi (Dkt. 203), and Section II.A.1. of Plaintiffs' Brief in Support of Plaintiffs' Motion to Exclude the Testimony of Walmart's Expert Witness, Dr. David P. Dobkin (Dkt. 198). So as to avoid the potential confusion associated with cross-referencing among briefs, Walmart has repeated its substantive response in its opposition briefs.

[9] Plaintiffs cite to a summary judgment motion filed by Walmart in an unrelated case to support the argument that "opposing experts should not be able to testify beyond the four corners of their report." (Pl. Br. at 20.) But that motion argued for the exclusion of new opinions after the summary judgment deadline based on existing evidence that the expert had purportedly chosen not to consider; and the Court decided to permit a supplemental declaration to provide such opinion, and found that "no harm" resulted from such supplementation. *Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-cv-05221-SI, 2016 WL 4529430, at *9-11 (N.D. Cal. Aug. 30, 2016), *aff'd sub nom. Ridgeway v. Wal-Mart Inc.*, 946 F.3d 1066 (9th Cir. 2020).

appropriate notice of such opinions, especially where such opinions are solicited in response to questions asked by opposing counsel.

The Eighth Circuit has recognized that even if an expert report does not disclose certain opinions to be offered at trial, those undisclosed opinions are generally admissible if opposing counsel had the opportunity to "fully depose[]" that expert. *See Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1204 (8th Cir. 2015). Multiple courts outside the Eighth Circuit have likewise reached similar conclusions and denied motions *in limine* to exclude expert testimony that was the subject of deposition examination. *See, e.g.*, *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644-GKF-FHM, 2019 WL 1562043, at \*2 (N.D. Okla. Mar. 8, 2019) (denying motion *in limine* to exclude new expert opinions offered during deposition because any "failure to disclose the opinion was harmless" given that those opinions were offered in response to inquiries from opposing counsel and trial was months away); *Rideout v. Nguyen*, No. 4:05CV-00001-JHM, 2008 WL 3850396, at \*6 (W.D. Ky. Aug. 15, 2008) (denying motion *in limine* to exclude expert testimony because despite any "failure to comply with Rule 26(a)," the opposing side was on notice of opinions based on deposition testimony); *Sulfuric Acid Antitrust Litig.*, 235 F.R.D. at 659-60 (denying motion to exclude expert testimony and noting that "[q]uestions elicited" during expert depositions "that go beyond the reports may well have a bearing on the permissible scope of testimony at trial," and cautioning that "you must be careful what you ask" during an expert deposition); *Lockaby v. JLG Indust., Inc.*, No. 04-60040-CIV-DIMITROULEAS, 2005 WL 8154687, at \*4 n.6 (S.D. Fla. Dec. 13, 2005) (noting that it may constitute error not to admit expert testimony that "went beyond the scope of what was disclosed in [the] expert's reports because [opposing counsel] opened the door to these issues during her cross-examination of [that] expert").

To the extent any of Dr. Hutt's opinions offered at deposition are found to add to those outlined in her report, Plaintiffs are on notice of such opinions. For example, as excerpted in Plaintiffs' brief (Pl. Br. at 23 (quoting Dkt. 199, Ex. B, at 184:11-185:4)), at deposition Plaintiffs' counsel raised a question that their expert Mr. Lanning—to whom Dr. Hutt replied—did not address. Plaintiffs' counsel asked Dr. Hutt if "███████████████████████████████████

███████████████████████████████████" (Omnibus Ex. No. 57 at 184:11-15.)

Plaintiffs opened this door—and did so multiple times. (*See id.* at 172:16-22; *see also Tulsa Zoo Mgmt.*, 2019 WL 1562043, at *2 (denying motion to exclude testimony where "[Defendant] opened the door to [the] testimony by first questioning [the expert] regarding the [subject matter]").) Dr. Hutt responded as follows to Plaintiffs' counsel's question:



(Omnibus Ex. No. 57 at 184:19-185:4; *see also id.* at 172:16-174:18.)  "This kind of responsive testimony is not the kind of ambush with an undisclosed opinion that the disclosure rules were designed to prevent." *Sulfuric Acid Antitrust Litig.*, 235 F.R.D. at 659-60. Plaintiffs cannot now argue that they are not on notice of such opinion. *Lockaby*, 2005 WL 8154687, at *4 n.6.

## V.   CONCLUSION

Dr. Hutt offered a comprehensive direct rebuttal to Mr. Lanning's expert report, using the same legal standards and definitions that he did, to specifically rebut Mr. Lanning's opinion that Zest Confidential Information was disclosed or used by Walmart. Plaintiffs' arguments for excluding these opinions depend on mischaracterizations of Dr. Hutt's analysis and qualifications, and provide no basis for excluding Dr. Hutt's actual testimony. There is likewise no basis to

exclude opinions that Dr. Hutt has not offered, under the guise of a *Daubert* challenge limiting Dr.

Hutt to the opinions "disclosed in her report." Plaintiffs' motion should be denied in its entirety.

Dated: March 20, 2020

P. Anthony Sammi (*Pro Hac Vice*)
Douglas R. Nemec (*Pro Hac Vice*)
Edward L. Tulin (*Pro Hac Vice*)
Rachel R. Blitzer (*Pro Hac Vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-2419
Facsimile: (917) 777-2419
anthony.sammi@skadden.com
douglas.nemec@skadden.com
edward.tulin@skadden.com
rachel.blitzer@skadden.com

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com
ryounger@qgtlaw.com

By: _____

John E. Tull III (84150)
R. Ryan Younger (2008209)

*Attorneys for Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March 2020, I served a true and correct copy of the foregoing, *via* electronic mail and U.S. mail, upon the following counsel of record:

Dustin B. McDaniel
Scott Richardson
Bart Calhoun
McDaniel, Wolff & Benca, PLLC
1307 West Fourth Street
Little Rock, Arkansas 72201
dmcdaniel@mwbfirm.com
scott@mwbfirm.com
bcalhoun@mwbfirm.com

Fred I. Williams
Michael Simons
Todd E. Landis
Jonathan L. Hardt
Williams Simons & Landis PLLC
327 Congress Avenue, Suite 490
Austin, Texas 78701
fwilliams@wsltrial.com
msimons@wsltrial.com
tlandis@wsltrial.com
jhardt@wsltrial.com

Ross David Carmel
Carmel, Milazzo & DiChiara LLP
55 West 39th Street, 18th Floor
New York, New York 10018
rcarmel@cmdllp.com