# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION and ECOARK
HOLDINGS, INC.,

    Plaintiffs,

v.                                      No. 4:18-cv-500-JM

WALMART INC. f/k/a
WAL-MART STORES INC.,

    Defendant.
_____/

## BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION TO PERMIT LIMITED DISCOVERY
## AND TO MODIFY FINAL SCHEDULING ORDER

Plaintiffs Zest Labs, Inc. and Ecoark Holdings, Inc. (collectively, Zest) respectfully move under Rules 16 and 26 of the Federal Rules of Civil Procedure to reopen fact and expert discovery on a limited basis and to modify the Final Scheduling Order to permit such discovery. Zest does not seek to alter the trial date.

### INTRODUCTION AND SUMMARY

There is good cause to allow Zest to engage in limited discovery before the new trial set for January 21, 2025, and denying discovery would result in a miscarriage of justice. In this case, the discovery period closed more than four and a half years ago, on October 15, 2019. By the time of the new trial, more than five years will have passed since discovery closed. The new trial will proceed on an old, incomplete, and inaccurate record unless some additional discovery is allowed.

Zest seeks discovery in the following areas:

First, since the first trial, the parties have not supplemented or corrected their responses to

interrogatories, requests for production of documents, or requests for admission, as Rule 26(e) requires; the Court should order the parties to supplement or correct their responses by August 30, 2024.

Second, discovery should be allowed regarding Walmart's post-trial prosecution of and disposition of the Bohling patent application. The application was pending during the trial, but Walmart abandoned it, and the U.S. Patent and Trademark Office (PTO) subsequently denied it. Zest should be allowed to discover what became of the Bohling patent application and why.

Third, the parties should be allowed to identify new experts and serve new expert reports. Superseding expert reports are needed to allow experts to bring their opinions up to date, to take into account orders the Court issued after the preparation of the existing reports, and to consider any additional facts that post-date those reports. Given the passage of time and expert availability, some of the parties' experts may need to be replaced, including, for example, Zest's expert on the procedures and practices of the PTO, who has passed away. It will be necessary for Zest to disclose a new PTO expert, particularly given Walmart's argument that Zest should have stopped the PTO from publishing the Bohling patent application.

Fourth, Walmart likely has changes to make in witnesses in addition to experts and changes to make in its evidentiary presentation. Zest should be allowed to discover what those changes are to prepare adequately for a retrial.

Fifth, Zest seeks discovery concerning two patents (US 11,078,020 B2 "System and Method for Ripening Produce" (Exhibit C) and US 11,388,325 B2 "Systems and Methods for Assessing Products" (Exhibit D), collectively the "New Patents") obtained by Walmart that are very similar to the Bohling application but which Walmart never disclosed to Zest in discovery, despite having made submissions prosecuting the New Patents to the PTO in February 2019; the

same month Walmart first produced the Bohling application. Zest's new trial counsel came upon the New Patents only recently. Not only are the New Patents very similar to the Bohling application, but they extensively reference filings in the *Zest* litigation. Indeed, each patent uses "Zest" more than 400 times. The New Patents are highly relevant to Walmart's argument that Zest should have stopped the PTO from publishing the Bohling application. The New Patents show that preventing the Bohling application's publication would not have protected Zest's trade secrets, which were also used in and disclosed by the New Patents. Since Walmart did not disclose the New Patents to Zest while they were confidential and discovery was open, Zest could not have done anything about the New Patents before they became public. Zest did not know about these patents until recently but could not have known about them before they were published because Walmart concealed them.

Sixth, since the first trial, published reports have suggested that Walmart continues to use Zest's food freshness technology—trade secrets that Zest contends and the first jury found Walmart unlawfully misappropriated from Zest. Zest should be allowed to discover what use Walmart has made of Zest's technology after discovery closed in 2019, as well as Walmart's savings from such use and its avoided research and development costs. Nothing allows Walmart to continue misappropriating Zest's trade secrets without accountability.

Finally, Zest should be allowed discovery concerning N2N Global, Inc.'s ("N2N") recent allegations against Walmart. *See N2N Global, Inc. v. Walmart Inc*., No. 5:24-cv-05110-TLB (W.D. Ark.) (Complaint filed May 20, 204). N2N alleges that Walmart stole N2N's trade secrets and used them in Walmart's Eden fresh food tracking system (the same system, although a separate aspect of it, at issue in the instant case). The allegations in N2N's complaint are strikingly similar to the events here: Walmart allegedly negotiated with N2N under a nondisclosure agreement with an

eye toward purchasing N2N's software but then broke off talks and simply took N2N's technology instead. Notably, one of the alleged bad actors in the N2N case was Walmart executive Chuck Tilmon, who testified extensively for Walmart at the trial of this case and was listed as a co-inventor with Bohling. N2N alleges that Tilmon had the Walmart IT department secretly copy N2N's software from an N2N computer. The timing of Walmart's alleged theft of N2N trade secrets appears to coincide with its theft of Zest's trade secrets.

In this case, the 2021 trial was conducted on a record that is more than four and a half years old and continuing to age. Allowing limited fact discovery and expert disclosures will keep the record current, avoid jury confusion, and promote a fair trial.

## BACKGROUND

Zest filed this action against Walmart for misappropriation of trade secrets on August 1, 2018. Doc. 1. Fact discovery closed on October 15, 2019, more than four and a half years ago. Agreed Scheduling Order at 3 (Doc. 75). The case was tried in March and April 2021, and the jury returned its verdict on April 13, 2021. Doc. 368. The jury awarded $60 million in compensatory damages to Zest for Walmart's misappropriation of Zest's trade secrets and another $50 million in exemplary damages. Id. This Court entered judgment on the jury verdict that same day. Doc. 376.

Post-trial motions and proceedings followed. On December 22, 2023, this Court granted a new trial for the reasons stated in its Order. Doc. 530. On January 3, 2024, this Court issued a Final Scheduling Order setting a trial date of January 21, 2025. Doc. 532. Under that Order, pretrial disclosure sheets are to be filed by December 23, 2024, and trial briefs and agreed jury instructions are to be submitted to the Court by January 13, 2025. *Id*.

On April 30, 2024, this Court held a show cause hearing on Walmart's pending motion for sanctions. At the hearing, the Court denied Walmart's request for dismissal. *See* 4/30/24 Hrg. Tr. 7 ("THE COURT: … I'm not going to dismiss the case as a sanction. … I don't think that dismissal

of the case would be an appropriate sanction based on what I know."); *id*. at 145.

The counsel who appeared at the show cause hearing will represent Zest at the new trial and are listed in this motion. The Williams Simons Landis firm will not be participating in the new trial.

**ARGUMENT**

**I.      The Court Should Permit Limited Fact and Expert Discovery Before the New Trial in 2025.**

**A.      The Court May Reopen Discovery and Modify Its Final Scheduling Order.**

Although discovery closed in October 2019, this Court has the discretion to reopen it to allow the parties to engage in limited discovery before the new trial. *See Philip v. Ford Motor Co.*, 328 F.3d 1020, 1024 (8th Cir. 2003) ("Once discovery has closed, it is within the district court's discretion whether or not to allow it to be reopened."); *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 526 (8th Cir. 2000) (noting that, "although discovery had closed, the district court had discretion to reopen it for [a] limited purpose"); *Oak Creek Inv. Props., Inc. v. Am. Elec. Power Serv. Corp.*, No. 4:18-CV-4009, 2020 WL 5089391, at *2 (W.D. Ark. Aug. 28, 2020) (ruling that "good cause exists to modify the Court's discovery deadline and to reopen discovery").

Under Rule 16(b), the Court may modify a scheduling order for good cause. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Rule 16(e), which concerns final pretrial orders, provides that "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). This Court issued its Final Scheduling Order on January 3, 2024, Doc. 532, without the benefit of a pretrial conference with new counsel with an eye to the new trial slated for January 2025. Because no final pretrial conference has been held regarding the retrial, the Court's Final Scheduling Order may be modified for good cause. A district court abuses its discretion when it denies a meritorious

motion to amend a scheduling order. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254-56 (10th Cir. 2011) (reversing district court's denial of motion to amend scheduling order); *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 (9th Cir. 2007) (district court abused its discretion by refusing to modify scheduling order).

Good cause exists to reopen discovery here, and it is necessary to avoid manifest injustice, as explained herein. For example, *United States v. Science Applications Int'l Corp.*, 301 F.R.D. 1 (D.D.C. 2013) (*SAIC*), came in a procedural posture similar to the one here and is instructive. Before a new trial, SAIC, a government contractor, moved to reopen discovery, which had closed seven years earlier. SAIC sought targeted discovery to develop "evidence of value the Nuclear Regulatory Commission has received from SAIC's work." *Id*. at 2. The court granted SAIC's motion, and it "reopen[ed] discovery to allow SAIC to discover evidence about NRC's continued use of SAIC's work product for the period after the close of discovery in 2006 until the present" and the value of such work *Id.* at 2, 3.

Explaining its decision to reopen discovery, the court reasoned that "[t]he trial is not imminent …. This is not a request to reopen discovery on the eve of trial, but one made well in advance of the retrial." *Id*. at 4. It also considered that "the discovery will also likely lead to relevant information." *Id*. "The information regarding the continued use of SAIC's work product after discovery closed in 2006 could help the jury to assess the magnitude of the damages the government suffered, and there is no reason here not to allow SAIC to discover such evidence." *Id*. The court also rejected the government's argument that it would be prejudiced by the discovery, explaining that it "can craft discovery limits that will avoid undue prejudice." *Id*. The court concluded that good cause supported the request to reopen discovery and that "the manifest injustice standard yields the same result." *Id*. "Barring SAIC from pursuing limited discovery …

would subject it to a manifest injustice." *Id*.

The court, therefore, reopened discovery for a limited, four-month period and allowed SAIC to request documents created after discovery had closed and supplementation of the government's prior responses to document requests and interrogatories. *Id*. at 4-5. It also allowed SAIC to take a 30(b)(6) deposition, depose a new fact witness, and disclose an additional expert. *Id*.

Similarly, in *Eshelman v. Puma Biotech., Inc*., No. 7:16-CV-18-D, 2022 WL 1597819 (E.D.N.C. May 19, 2022), the court granted in part a motion for discovery before new trial under a manifest injustice standard, and recognized that "[c]ategorically precluding parties from amending the final pretrial order to disclose new witnesses and evidence 'would greatly hobble the parties from meaningfully relitigating an issue which [a] court has decided required retrial.'" *Id*. at *2 (quoting *Johns Hopkins Univ. v. CellPro, Inc*., 152 F.3d 1342, 1357 (Fed. Cir. 1998)).

Courts in the Eighth Circuit and elsewhere commonly reopen discovery between a first trial and a second. *See Fidelity Nat'l Title Ins. Co. of N.Y. v. Nat'l Title Res. Corp*., 261 F.3d 758, 760 (8th Cir. 2001) (noting that the parties engaged in "further discovery in preparation for the new trial"); *Farmland Indus., Inc. v. Morrison-Quirk Grain Corp*., 54 F.3d 478, 482 (8th Cir. 1995) (the parties engaged in "limited discovery before the second trial" including "designat[ing] their expert witnesses" and disclosing "the substance of those witnesses' testimony" under Rule 26); *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co*., 216 F. Supp. 2d 1188, 1192 (D. Colo. 2002) ("[E]vidence on the question of damages and equitable remedies was reopened on remand. … As a result, substantial additional evidence on royalty rates, sales figures and licensing arrangements projecting them into the future was received at the 2001 damages retrial.").

Permitting additional discovery before a new trial is consistent with the *de novo* nature of a new trial. "Following the grant of a new trial, the second trial, absent any stipulations by the parties to the contrary, proceeds *de novo*." *Day v. Amax, Inc.*, 701 F.2d 1258, 1263 (8th Cir. 1983); *accord Nelson v. All Am. Life & Fin. Corp.*, 889 F.2d 141, 152 (8th Cir. 1989). *See also* Am. Jur. 2d *New Trial* § 396 (Feb. 2024 Update) ("Upon the grant of a new trial in a civil case, the parties are entitled to a wholly new trial, unfettered by the rulings, pro or con, made at the first trial and with the right to have new rulings on matters which arise in the course of a trial."); *id.* at § 398 ("In a new trial, the parties are entitled to introduce additional or new evidence not introduced at the earlier trial, and the parties may present evidence differently. … A new trial provides a clean slate; the issues must be retried and the trial of the case proceeds *de novo*. The new trial requires its own law and it must be conducted, as far as practicable, in the manner in which it would be conducted if there had not been a previous trial."). As Zest's new trial counsel stated at the hearing on the Order to Show Cause, a new trial is like a rematch between two sports teams. The plaintiff is not required to run the same plays it ran the first time or in the same order. The defendant needs not call the same defenses as before. *See* 4/30/24 Hrg. Tr. 141.

It is well established that parties may offer new evidence at a new trial. *See United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 243 (1957) ("[T]he Government is not limited at a new trial to the evidence presented at the first trial, but is free to strengthen its case in any way it can by the introduction of new evidence."); *Apex Min. Co. v. Chicago Copper & Chem. Co.*, 306 F.2d 725, 731 (8th Cir. 1962) ("[T]he plaintiff is entitled to a retrial of the issue of damages upon the trial record plus such additional relevant evidence as either party sees fit to introduce with respect to that issue …."); *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 891 (11th Cir. 2011) (explaining that when a "case has been remanded for new trial the parties are permitted to introduce new

evidence"); *Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 265 (1st Cir. 1993) ("Nor is there any general rule prohibiting a party from offering new evidence at a second trial ….").

Consistent with and in furtherance of this new-trial/new-evidence rule, Zest should be allowed to discover evidence of relevant actions Walmart took since discovery closed in 2019. Zest should not be forced to retry its case on a record more than five years old in 2025. As the Wright & Miller treatise states: "If a new trial is granted, …. [d]ecisions respecting the admission of additional witnesses and proof should be guided by considerations of fairness and justice to all parties." Charles A. Wright & Arthur R. Miller, 11 *Fed. Prac. & Proc.* § 2803 (3d ed.) (Apr. 2023 Update). *See also Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1450 (10th Cir. 1993) (explaining that, in managing a new trial, "common sense should control" and the trial court "should allow sufficient leeway for the parties to produce new evidence").

Allowing the limited discovery Zest seeks is also supported by the rule that "[g]enerally, discovery under the Federal Rules of Civil Procedure should be freely permitted." *SAIC*, 301 F.R.D. at 3 (quoting *Edmond v. U.S. Post. Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991)). *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …."); *Eshelman*, 2022 WL 1597819, at *2 (allowing discovery before new trial and "consider[ing] the general discovery standard in Rule 26"). Indeed, whether discovery is reopened, Rule 26 will require both Walmart and Zest to supplement or correct its discovery responses, as discussed next.

### B. The Parties Should Be Ordered to Supplement or Correct Their Discovery Responses and Update Their Expert Reports and Information.

Rule 26(e) provides that a party "who has responded to an interrogatory, request for production, or request for admission" must "supplement or correct its" response "in a timely manner if the party learns that in some material respect," the "response is incomplete or incorrect"

and "if the additional or corrective information has not otherwise been made known to the other parties during the discovery processor in writing." Fed. R. Civ. P. 26(e)(1)(A). "The obligation continues after discovery closes." *Eshelman*, 2022 WL 1597819, at *5. A party also must supplement information provided by an expert. *See* Fed. R. Civ. P. 26(e)(2). "[T]he party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." *Id*.

Walmart will have discoverable information regarding its adjustments to its witnesses and evidence leading up to the new trial. Zest should not have to wait until the eve of trial to learn these changes. Thus, Zest requests discovery regarding Walmart's evidentiary presentation for the new trial.

Since the trial, the parties have not supplemented or corrected their discovery responses or expert information. The Parties should be ordered to do so well before the new trial. *See* Fed. R. Civ. P. 26(e)(1)(B); *Petersen v. Rapid City, Pierre & E. R.R., Inc.*, 5:22-CV-5064, 2024 WL 249679, at *3 (D.S.D. Jan. 23, 2024) ("The duty to supplement continues past the discovery deadline and up to the time of trial") (quoting *Fair Isaac Corp. v. Fed. Ins. Co.*, 337 F.R.D. 413, 419 (D. Minn. 2021)); *Eshelman*, 2022 WL 1597819, at *5 ("The court orders the parties to supplement their discovery responses up to the current date and, ultimately, up to the date of the second trial.").

**C.  Zest Requests an Order Allowing Zest to Disclose New or Replacement Expert Witnesses.**

Zest's previously identified expert regarding patent issues was Todd Dickinson, the former director of the U.S. Patent and Trademark Office. Sadly, Mr. Dickinson passed away on May 3, 2020. Zest should be allowed to disclose a replacement expert on the PTO's practices and procedures—especially since Walmart intends to argue that after receiving Walmart's provisional

and non-provisional patent applications, Zest's counsel should have prevented the PTO from publishing the non-provisional application. That issue was not addressed prior to Mr. Dickinson's death and, accordingly, is not reflected in his deposition. In these circumstances, the Court should allow Zest to disclose a substitute PTO expert to replace Mr. Dickinson. *See Cleveland*, 985 F.2d at 1450 ("If a lay or expert witness is deceased or ill or for whatever reason unable to attend [a new] trial, the court should give every consideration to allowing additional witnesses to testify."); *Brooks v. Cnty. of San Joaquin*, No. 2:09-CV-03343, 2012 WL 5928416, at *1 (E.D. Cal. Nov. 26, 2012) ("Courts have approved supplemental disclosures where a critical expert witness has died after the deadlines have passed for expert discovery disclosure.") (citing cases).

Additionally, Zest seeks leave to disclose new or different experts than before. It should be allowed to do so. *See Farmland Indus.*, 54 F.3d at 482 (8th Cir. 1995) (before second trial the parties "designated their expert witnesses" and disclosed "the substance of those witnesses' testimony" under Rule 26); *Washington v. Essex*, No. 2:12-cv-03054-DAD-DB, 2022 WL 17417871, at *8 (E.D. Cal. Dec. 5, 2022) (on remand for new trial, court "grant[ed] plaintiff's motion to reopen both expert and limited fact discovery"); *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. 1:11-cv-00845-SKO, 2014 WL 1664942, at *2-*3 (E.D. Cal. Apr. 25, 2014) (granting defendant's motion to amend pretrial order before second trial to permit defendant to replace a retiring witness with another witness). Beyond making sure that Zest has the flexibility to present its case at the trial given the schedules of prior experts, if discovery is reopened Zest may uncover facts warranting the disclosure of new experts, which also supports Zest's request for leave to disclose additional or different experts.

**D.   Zest Requests That It Be Allowed to Discover Relevant Actions by Walmart Occurring After the Close of Discovery in 2019.**

Discovery closed on October 15, 2019. At the new trial in 2025, the record will be more

than five years stale. To keep the record up to date and ensure the new trial proceeds on current facts, Zest requests permission to engage in limited discovery concerning the period from October 15, 2019, to the present. Zest requests discovery regarding both liability and damages issues.

As counsel for Zest noted at the show cause hearing, Walmart "just announced some new AI program that sounds an awful lot like Zest's stuff." 4/30/24 Hrg. Tr. 143. Published reports strongly suggest that Walmart continued to misappropriate Zest's trade secrets after the trial to recent or present times. According to one report, "Walmart uses an AI-powered system called Eden to manage inventory across stores. By using machine learning algorithms, Eden can predict demand, optimise inventory levels, and reduce waste. With AI, Walmart has been able to reduce out-of-stock incidents by 30%, while also reducing overstocking and waste." Jorge Uceda, *Retail Digital Transformation: Can AI Save the Brick-and-Mortar Store* (May 26, 2023), https://www.sortlist.com/datahub/reports/retail-digital-transformation/. Zest should be allowed to discover whether Walmart's AI technology derives from trade secrets that Zest believes—and the first jury found—Walmart unlawfully misappropriated from Zest.

According to an even more recent report, Radio Frequency Identification or "RFID technology enables real-time tracking and monitoring of products throughout the supply chain, providing valuable data for optimizing logistics and reducing waste. … Walmart implemented RFID technology to monitor its fresh produce inventory, resulting in reduced spoilage and decreased food waste." https://fastercapital.com/content/Exploring-the-Environmental-Impact-of-RFID-Technology.html (Updated Apr. 17, 2024).

Walmart's use of food freshness tracking technology similar to Zest's is highly relevant to Zest's case, both on liability and damages. "It is thus likely that reopening discovery will lead to

the discovery of relevant evidence." *Johnson v. Shasta Cnty.*, No. 2:19-cv-01722 JAM, 2022 WL 178713298, at *2 (E.D. Cal. Dec. 7, 2022).

*SAIC* and *Eshelman* should provide the Court with a model to approach this case. Zest respectfully requests that the Court reopen discovery on a limited basis to permit Zest to discover what use Walmart made of Zest's technology or similar technology since discovery closed in 2019 and Walmart's savings from such use. (Any use by Walmart since 2019 of technology similar to Zest's may have developed through misappropriating Zest's trade secrets and thus is highly relevant and discoverable.) Evidence developed through such discovery will be highly relevant to both the liability and damages issues to be retried in 2025.

Zest also seeks discovery concerning the prosecution and disposition of Walmart's patent application, i.e., the Bohling application. Walmart argues that Zest's attorneys should have stopped the PTO from publishing Walmart's patent application. The application was pending at the time of the first trial, but on information and belief, the PTO denied the application after the trial, and Walmart abandoned it. Given Walmart's argument, raised for the first time in its post-trial motions, Zest should be allowed to discover what Walmart did to prosecute the application and what Walmart knows about the disposition of its application. And Zest should be allowed to take one Rule 30(b)(6) deposition of a Walmart representative based on what Zest learns in reopened discovery about Walmart's prosecution and disposition of its patent application and its use of Zest's or similar technology since discovery closed. *See SAIC*, 301 F.R.D. at 5 (allowing SAIC to "depose one Rule 30(b)(6) representative designated by the NRC, limited to evidence … from the close of discovery forward").

The Eighth Circuit has instructed that "[a] pretrial order will be modified only if there is no substantial injury or prejudice to the opponent." *Hale v. Firestone Tire & Rubber Co.*, 756

F.2d 1322, 1335 (8th Cir. 1985). Here, granting Zest's motion for limited discovery will contribute to the truth-seeking process and a fair trial for all but will not cause Walmart any injury or prejudice. Fact discovery will be limited to 90 days and highly relevant matters, and the new trial is more than six months away. *See Johnson*, 2022 WL 178713298, at *2 ("Defendants are unlikely to be prejudiced by the reopening of discovery" because "trial is not imminent"); *Secretary of Labor v. Doyle*, No. 05-2264 (JHR/JS), 2018 WL 11247764, at *2 (D.N.J. Nov. 5, 2018) (ruling that "plaintiff will not be prejudiced" by defendant's use of new evidence at an upcoming second trial; explaining that "since trial is not scheduled until March 2019 [four months away], plaintiff has more than sufficient time to prepare its case").

Some courts have applied a six-factor test to requests to amend a scheduling order and reopen discovery. These courts ask

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States v. Hughes Aircraft*, 63 F.3d 512, 1526 (9th Cir. 1995)); *see also SAIC*, 301 F.R.D. at 3 (granting motion to reopen discovery prior to new trial). This test strongly supports granting Zest's motion.

Even if Walmart opposes this motion, that is not dispositive, as the other five factors all support reopened discovery. The second trial is not imminent. Walmart cannot be prejudiced by discovery with the trial six months out. Due to the discovery cutoff, Zest could not discover facts after October 15, 2019. Because more than four years have passed since the cutoff, Walmart could foresee that Zest would ask to reopen discovery before the retrial. Based on the jury's verdict that

Walmart willfully pilfered Zest's trade secrets, the published reports of Walmart's recent use of technology substantially similar to Zest's, and the certainty that Walmart possesses discoverable information about why its patent application was denied and not resubmitted, it is extremely likely that further (although limited) discovery will uncover relevant and admissible evidence.

II. **Walmart's Alleged Theft of N2N's Trade Secrets and the Two Newly Discovered Walmart Patents Concerning Eden With Bohling as Inventor Are Proper Subjects of Discovery.**

    A. *N2N Global v. Walmart* allegations

Zest requests permission to engage in discovery concerning the new allegations made against Walmart by N2N. On May 20, 2024, N2N filed an action against Walmart in the Western District of Arkansas. *See* Compl., *N2N Global, Inc. v. Walmart Inc.*, No. 5:24-cv-05110-TLB (W.D. Ark.) (attached as Exhibit A). N2N alleges that Walmart misappropriated its trade secrets "in the field of Fresh Food Shrink." *Id*. ¶¶ 1, 12. N2N's allegations about Walmart's theft of its trade secrets are eerily similar to Walmart's theft of Zest's secrets. N2N alleges that Walmart stole a software solution developed by N2N and used it as part of Walmart's Eden system, i.e., the same fresh food monitoring system that Walmart developed by stealing Zest's technology (although, N2N's technology was the user interface of the system). N2N alleges that Walmart negotiated with N2N under an NDA and obtained access to N2N's trade secrets but broke off those discussions and misappropriated N2N's secrets. N2N also alleges that, in May 2021 (after the *Zest* trial), a former Senior Business Process Manager at Walmart, Susan Akin, revealed to N2N that, on May 25, 2016, Walmart's Quality Control Regional Manager, Gary Foster, secretly "retained" a Samsung tablet computer owned by N2N and containing N2N's proprietary software and gave the computer to Walmart's Vice President of Quality Control, Chuck Tilmon, who directed Walmart's IT department to copy N2N's software. *Id*. ¶¶ 98, 127, 147, 158. Mr. Tilmon testified at trial in the Zest case for Walmart, and was listed as a co-inventor on the Bohling patent. The new *N2N Global*

action and the *Zest* litigation are related cases. Tilmon is also a co-inventor with Bohling on one of the New Patents. Indeed, N2N's Complaint includes numerous references to the *Zest* litigation. *E.g.*, *N2N Global* Compl. ¶¶ 84-92. Zest should be allowed to engage in discovery concerning N2N's allegations, which, if accurate, would provide support for Zest's claims, including Zest's claim for punitive damages.

### B. The Newly Discovered Patents That Were Not Produced by Walmart and Are Similar to the Bohling Application

Zest should also be allowed to engage in discovery concerning Walmart's prosecution of the New Patents. The patent applications were confidentially filed during the discovery period in this case but only became public after discovery closed. Zest requested copies of all patent applications related to Eden in discovery, and while Walmart agreed to produce such documents, it never provided these patents which were confidential during the discovery period. Joshua T. Bohling is the sole inventor on the '020 patent, and is a coinventor with Mr. Tilmon and others on the '325 patent. Both make extensive reference to the instant litigation. Both patents use the word "Zest" more than 400 times.

The New Patents are relevant to Walmart's argument that Zest should have stopped the PTO from publishing the Bohling application, as well as Zest's misappropriation of trade secrets claim. The New Patents show that such action would not have protected Zest's trade secrets from disclosure by the PTO since these patents also used and disclosed Zest's trade secrets. Walmart did not disclose the existence of the New Patents to Zest during discovery; the earliest Zest could have known of them was after the applications became public on April 23, 2020 and June 30, 2022 (the New Patents were granted on August 3, 2021 and July 12, 2022). Zest did not know about them, so Zest could not intervene with the PTO regarding these patents before they became public. Both of the New Patents had documents filed in February 2019, within days of the document

production that contained the Bohling application two and a half months before its publication.

Zest has not been able to locate any information relating to the New Patents in Walmart's document productions. By letter dated June 26, 2024, Zest asked Walmart to confirm whether the New Patents were produced to Zest, and if not, why not. Walmart asked for additional time to investigate on June 28. Zest followed up on July 9, and Walmart responded that it was continuing to investigate on July 17. On July 18, 2024, counsel for Walmart told Zest's counsel in an email that "we have not located the applications for U.S. Patent Nos. 11,078,020 and 11,388,325 in the production." Walmart did not explain why. Zest's new trial counsel learned about the New Patents only recently. The New Patents, and their associated PTO filings, were responsive to Zest's document requests, including RFP No. 101, which requested "All patents or patent applications relating to any element, component, or aspect of any past, current, or future implementation of the Eden System."

While Zest was denied the ability to put on a case including the New Patents at the first trial, because of their concealment, Zest requests the ability to pursue discovery concerning the New Patents and present a more complete picture to the jury at the new trial.

**III. Zest Requests Issuance of Its Proposed Order Modifying the Final Scheduling Order.**

For the reasons explained, Zest requests that the Court reopen limited fact discovery for a limited period of three months, from August 16 to November 15, 2024, and reopen limited expert discovery for one month, from November 15 to December 13, 2024. Zest proposes deadlines in that time as shown in the proposed Order submitted as Exhibit B to this motion. The proposed Order states:

The Court's Final Scheduling Order of January 3, 2024 is hereby amended as follows;

Fact discovery shall reopen on the limited basis described herein as of August 16, 2024, and shall close again on November 15, 2024;

All parties shall supplement or correct their responses to previously served requests for documents, interrogatories, and requests for admission in compliance with Rule 26 no later than August 30, 2024;

Zest may serve up to ten requests for the production of documents and up to ten interrogatories, which may relate to (1) any use by Walmart of Zest's technology or similar technology, and any savings from such use, since the close of discovery on October 15, 2019; (2) any facts relating to or any allegations made in *N2N Global v. Walmart*; and (3) the prosecution and disposition of Walmart's patent applications, including but not limited to Patent No. US 11,388,325 B2, Patent No. US 11,078,020 B2, and Patent App. Pub. No. US 2019/0147396 A1;

Zest may depose up to five fact witnesses and may also take a Rule 30(b)(6) deposition no later than November 15, 2024;

All fact discovery shall close on November 15, 2024;

Expert discovery shall reopen as of November 15, 2024, and shall close again on December 13, 2024;

New or supplemented expert reports shall be served by November 22, 2024;

The parties shall make their experts available for deposition on or before December 13, 2024;

All expert discovery shall close on December 13, 2024; and

The parties' duty to supplement disclosures and responses under Rule 26(e) remains in effect through and after the reopened discovery periods.

*See* Exhibit B (proposed Order). Issuing the proposed Order would ensure that the case will be retried on an up-to-date record, avoid jury confusion over the missing five years, promote a fair trial, and avoid a miscarriage of justice.

## CONCLUSION

For the foregoing reasons, Zest respectfully requests that its motion be granted, that fact and expert discovery be reopened on the limited basis described above, and that the Final Scheduling Order be modified by issuance of Zest's proposed Order.

Dated: July 19, 2024

Respectfully submitted,

/s/ *Patrick Ryan*
Patrick Ryan*
Sean R. McTigue*
BARTKO LLP
One Embarcadero, Suite 800
San Francisco, CA 94111
(415) 956-1900
pryan@bartkolaw.com
smctigue@bartkolaw.com
*Admitted *pro hac vice*

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
scott@mcdanielwolff.com

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
*Admitted *pro hac vice*