**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS HOLDINGS
LLC; and RISKON INTERNATIONAL,
INC.,

                      Plaintiffs,

                                             No. 4:18-CV-500-JM

v.

WALMART INC. f/k/a WAL-MART
STORES, INC.,

                      Defendant.

_____/

**REPLY IN SUPPORT OF MOTION TO PERMIT LIMITED DISCOVERY**

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................5

        1.      The Requested Discovery Is Essential for a Fair Retrial ...........................6

        2.      Walmart's Argument that Zest Lacked Diligence Is Unfounded ...............7

                a.      Zest Promptly Addressed the Need for Supplementation...............7

                b.      New Developments Justify the Replacement and Addition
                     of New Experts ................................................................................8

                c.      Recent Actions by Walmart Necessitate Further Discovery..........10

        3.      The Requested Discovery Is Relevant and Proportional ..........................10

                a.      Supplementation Ensures Complete and Accurate
                     Information ......................................................................................10

                  b.      Discovery on the Bohling Application Clarifies Key Issues ........10

                  c.      N2N's Allegations Are Relevant to Establish a Pattern of
                     Conduct and Support the Notion that Walmart's Conduct
                     Was Willful......................................................................................11

                d.      Walmart's New Patents May Reveal Ongoing
                     Misappropriation.............................................................................12

        4.      Walmart Will Not Be Prejudiced By the Additional Discovery...............12

                  a.      The Discovery Is Narrowly Tailored and Timely.........................12

                  b.      Any Potential Prejudice Can Be Mitigated Without
                     Delaying Trial ................................................................................12

III.    CONCLUSION...................................................................................................13

        •      Any use by Walmart of Zest's technology or similar
            technology, and any savings from such use, since the close
            of discovery on October 15, 2019;.................................................13

        •      Any facts relating to or any allegations made in *N2N
            Global, Inc. v. Walmart Inc.*; ........................................................13

        •      The prosecution and disposition of Walmart's patent
            applications, including but not limited to Patent No. US
            11,388,325 B2, Patent No. US 11,078,020 B2, and Patent
            Application Publication No. US 2019/0147396 A1. ....................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brooks v. Cnty. of San Joaquin*,  No. 2:09-CV-03343, 2012 WL 5928416 (E.D. Cal. Nov. 26, 2012) ............................................................................................................. 11

*Cleveland By & Through Cleveland v. PiperAircraft Corp.*,
985 F.2d 1438 (10th Cir. 1993) ............................................................................. 11

*Day v. Amax, Inc.*,
701 F.2d 1258 (8th Cir. 1983) ............................................................................. 10

*Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2022 WL 1597819 (E.D.N.C. May 19, 2022) ............................................................................................................ 7, 9

*Iverson v. Johnson Gas Appliance Co.*,
172 F.3d 524 (8th Cir. 1999) ............................................................................. 12

*Liguria Foods, Inc. v.Griffith,
Lab'ys, Inc.*, 320 F.R.D. 168 (N.D. Iowa 2017) .................................................. 14

*Nelson v. All Am. Life & Fin. Corp.*,
889 F.2d 141 (8th Cir. 1989) ............................................................................. 10

*Rahn v. Hawkins*,
464 F.3d 813 (8th Cir. 2006) ............................................................................. 6

*Sherman v. Winco Fireworks, Inc.*,
532 F.3d 709 (8th Cir. 2008) ............................................................................. 5

*Thompson v. BMW of N. Am., LLC*,
334 F.R.D. 230 (C.D. Cal. 2020) ......................................................................... 6

*United States v. Science Applications Int'lCorp.*,
301 F.R.D. 1 (D.D.C. 2013) ............................................................................... 7

**Rules**

Fed. R. Civ. P. 16(b)(4) ............................................................................................ 5

Fed. R. Civ. P. 26(b)(1) ........................................................................................ 14

Fed. R. Civ. P. 26(e)(1)(A) .................................................................................... 9

Fed. R. Civ. P. 56(d)(2)-(3).................................................................................................. 12

Federal Rule of Evidence 404(b)(2) ................................................................................. 3, 14

Rule 26................................................................................................................................ 16

Rule 26(e)...................................................................................................................... 13, 17

**Other Authorities**

Am. Jur. 2d New Trial § 396 (Feb. 2024 Update) ........................................................... 11

## I.    INTRODUCTION

Walmart's opposition fails to address the substantive merits of Zest's request for limited additional discovery in preparation for the retrial. Instead of demonstrating any prejudice that would result from reopening discovery, Walmart resorts to hyperbole, accusing Zest of wanting to "switch from baseball to Calvinball."[1] Such rhetoric is unhelpful and ignores that Zest is merely seeking Walmart's compliance with the Federal Rules of Civil Procedure—rules that it concedes are applicable.

Contrary to Walmart's assertions, Walmart has not "played by the rules." Walmart withheld and concealed critical evidence that it expressly had agreed to produce, failed to supplement its discovery responses, and concealed its parallel misappropriation of N2N Global's trade secrets related to Eden. These actions undermined Zest's ability to put on all material evidence at the first trial, deprived this Court of the ability to consider this critical evidence when it evaluated Walmart's prior motion for a new trial and sanctions, hid this evidence from Zest and the Court while vigorously pursuing sanctions against Zest, and did not even acknowledge the evidence in its recently filed motion for summary judgment. Walmart's opposition to the present motion advocates for nothing short of a miscarriage of justice and Zest is confident that the Court will not let that happen and will allow Zest the ability to have a full and fair second trial not handicapped by the fruits of Walmart's concealment of quintessentially material evidence.

Walmart contends that Zest should have been aware of additional confidential patent

---

[1] Calvinball is a fictional game invented by the characters Calvin and Hobbes in the eponymous comic strip by Bill Watterson. The defining characteristic of Calvinball is that players make up the rules as they go along. The only permanent rule is that the game can never be played the same way twice. *See* https://calvinandhobbes.fandom.com/wiki/Calvinball.

applications based on vague references to bananas in documents. But Zest should not have had to divine Walmart secretly filing other patent applications from banana references in emails when Walmart had expressly agreed to produce all patent applications and patents related to Eden. As a matter of law, Zest was entitled to rely on Walmart's Rule-11 promise to produce. The fact that key trial witness Joshua Bohling is an inventor on all the relevant patents, including the concealed ones, shows that Walmart itself was aware of its own actions as a matter of law and suggests that Walmart's litigation counsel (at least its former litigation counsel) was or should have been aware of these applications. Similarly, Walmart's knowledge of N2N Global's allegations is evidenced by the involvement of key personnel like Chuck Tilmon in both matters. If Walmart argues that Zest should have been on notice, then by the same logic, Walmart must acknowledge its actual knowledge (and its concealment) of the same information.

Walmart's attempt to use the length of the post-trial discovery period to insulate itself from complying with its discovery obligations should not be countenanced by the Court. After Zest filed its complaint and moved for a preliminary injunction to stop Walmart's misappropriation, Walmart continued to file confidential patent applications with the PTO—applications it concealed from Zest and the Court. Walmart's concealment undermines its post-trial challenges to the jury's verdict. It highlights its willful and malicious efforts to hinder Zest's case. Walmart's present resistance to completing the discovery it initially promised and supplementing as required by the rules is not based in law and not based on a theory that the evidence is irrelevant; rather, it is a naked desire by Walmart to conceal further evidence of its wrongdoing and further evidence that will bolster Zest's damages claims.

The recent allegations made by N2N Global further necessitate limited discovery. The fact that a former Walmart employee informed N2N Global of Walmart's theft following the first

Zest trial does not permit Walmart to prevent relevant evidence from being discovered and presented to the jury in this retrial. Zest's exposure of Walmart's malfeasance in the first trial triggered revelations of additional, factually linked misconduct, which was contemporaneous to Walmart's theft of Zest's trade secrets. This evidence is admissible under Federal Rule of Evidence 404(b)(2) for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Walmart cannot unilaterally decide to conceal and refuse to produce evidence; such decisions are for the Court to make.

The new evidence of Walmart's misappropriation related to the concealed new patents and the N2N Global materials require limited additional discovery. Zest's experts should be allowed to offer opinions about the new patents analogous to the opinions they offered in the previous trial, when Zest was aware of only the '396 Bohling Application. For example, Dr. Mark Lanning, Zest's technical expert, opined that the '396 Bohling Application contained Zest's confidential information based on his detailed comparison of Zest documents to the contents of Walmart's patent application. Dr. Lanning has prepared a similar analysis comparing Zest's confidential information to the new Walmart patents, and Zest should be allowed to serve a supplemental report containing those opinions. Similarly, Dr. Diane Beckles, Zest's expert on agronomy, opined that the Zest confidential information Walmart included in the '396 Bohling Application was a novel, significant contribution to her field. Dr. Beckles has likewise analyzed the novelty of the Zest confidential information contained in the new Walmart patents, and Zest should be allowed to serve a supplemental report from her on that subject. Zest's damages expert, Dr. Stephen Becker, could also update his opinions based on newly available information. As outlined in the Becker Declaration, Becker could now use actual financial performance data from Walmart over the relevant period to calculate forward-looking damages

projections—data that was previously unavailable.

Moreover, Walmart's Motion for Summary Judgment—filed after Zest's opening brief on this motion—raises an argument not presented at the first trial that Zest had a duty to take further actions to prevent the misappropriation related to the '396 Bohling Application, despite Walmart's concealment of additional patent applications during the initial discovery period. *See* Dkt. 585. That new argument also requires additional discovery. As discussed in detail in Zest's opposition to Walmart's Motion for Summary Judgment, filed herewith, Walmart's criticism of Zest's reasonable efforts is baseless. Zest had taken significant steps to prevent Walmart's misappropriation, including filing suit and moving for a preliminary injunction. Any additional actions Zest could have taken to stop the publication of the '396 Bohling Application in particular would have made no difference because Walmart was simultaneously acquiring, using, and disclosing Zest's trade secrets in many other ways: in its internal development of its Eden system, in its preparation of patent applications, and in its filing of patent applications both domestically and internationally. Because this issue has been given additional importance, Zest seeks additional discovery to rebut Walmart's theories. Moreover, Zest should be allowed to offer new expert opinions to explain why Zest's efforts to protect its trade secrets were in fact reasonable and why the additional measures that Walmart proposes would not have been reasonably required or effective under the circumstances.

Walmart's assertion that the topics for which Zest seeks discovery are irrelevant is without merit. As detailed in the declarations supporting Zest's opposition to Walmart's motion for summary judgment, the concealed additional patents concern the technology that Zest taught Walmart and that Walmart wrongfully misappropriated. This evidence is critical for establishing liability and calculating damages. It should have been produced and analyzed for presentation at

the first trial, but Walmart's concealment prevented that.

In sum, a jury found Walmart willfully and maliciously misappropriated Zest's trade secrets. Walmart now attempts to benefit from its concealment by arguing that it destroyed Zest's trade secrets after litigation commenced and should, therefore, face no liability. This position lacks legal support, as detailed in Zest's opposition to Walmart's motion for summary judgment. Zest respectfully requests that the Court grant Zest's motion for limited discovery and permit further expert reports and opinions to be given in light of the new evidence already uncovered and that evidence that will be produced as part of the limited-discovery request, all of which is essential for an orderly presentation of the evidence and for ensuring that justice is served. The parties should be ordered to update their outdated discovery responses, supplement their discovery responses, and submit to limited additional discovery.

## II.    ARGUMENT

### A. Zest Has Demonstrated Good Cause for Additional Discovery

Under Rule 16(b)(4), a scheduling order may be modified for good cause. Fed. R. Civ. P. 16(b)(4). In the Eighth Circuit, "[t]he primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). Notably, where the defendant's conduct was the cause of material not being discovered earlier, courts have found good cause to modify a scheduling order and permit additional discovery. *Thompson v. BMW of N. Am., LLC*, 334 F.R.D. 230, 233 (C.D. Cal. 2020) (the witness had not been deposed only because of the plaintiff's "reasonable reliance on BMW's assertion that [the witness] possessed no relevant information."). Zest acted diligently upon discovering the new patents by promptly contacting Walmart and filing this motion when Walmart confirmed the

patents were not produced.

More importantly, to the extent Walmart argues that Zest should have discovered the new patents sooner, that argument fails as it seeks to shift the blame to Zest for Walmart's own failure to comply with its discovery obligations. Zest served a request for production of Walmart patents and patent applications related to the Eden system. Walmart *agreed to produce* them. *See* Zest SAMF, ¶¶ 7-8; Stoll Decl., ¶ 11; Lanning Decl., ¶¶ 227-229, 260-266. Zest was entitled to reasonably rely on Walmart's representation that it would do so. Zest is not at fault for failing to uncover the public patent filings as it had no obligation to do so.

### 1.        The Requested Discovery Is Essential for a Fair Retrial

As noted in *United States v. Science Applications Int'l Corp.* ("*SAIC*"), reopening discovery before a new trial is appropriate when it could help the jury assess the magnitude of damages or the extent of liability. 301 F.R.D. 1, 3–4 (D.D.C. 2013). Similarly, in *Eshelman v. Puma Biotechnology, Inc.*, the court allowed limited discovery before a new trial to prevent manifest injustice. No. 7:16-CV-18-D, 2022 WL 1597819, at *2 (E.D.N.C. May 19, 2022). The standards from this law are easily satisfied here.

The '020 and '325 patents are relevant to Zest's claims, reflecting Zest's trade secrets. As further explained in the Mehring, Lanning, Becker, and Beckles declarations in support of Zest's opposition to Walmart's motion for summary judgment, Walmart pursued and ultimately obtained patents concerning Zest's trade secrets. Lanning Decl., ¶¶ 4-5, 133-266; Stoll Decl., ¶¶ 17-18; Beckles Decl., ¶¶ 35-40, 42-63; Becker Decl. ¶¶ 19-23. This is a distinct line of misappropriation—the evidence of which and expert opinion related thereto should have been presented at the first trial and in opposition to Walmart's motion for a new trial and sanctions. Walmart took advantage of the Court and Zest by not producing this evidence prior to the first

trial and by hiding it during the post-trial process. Walmart knew that the publication of patents and Zest's knowledge of patent applications was at the core of its efforts to undo the prior jury verdict. Discovery should reopen these issues for the new trial to concern *all* of Walmart's misappropriation, including the previously concealed misappropriation.

2.          **Walmart's Argument that Zest Lacked Diligence Is Unfounded**

a.          **Zest Promptly Addressed the Need for Supplementation**

Once Zest discovered the '020 and '325 patents naming Joshua Bohling as the lead inventor, Zest's counsel sent a letter to Walmart's counsel inquiring whether documents related to these patents, including the applications and the patents themselves, had been produced in discovery, given that Walmart made filings in support while discovery was open. Due to the urgent nature of the situation, on Jun. 26, 2024, Zest's counsel asked for a response by Jun. 28, 2024. SAMF Ex. 16. Walmart responded on Jun. 28 that:

> We're in receipt of your letter and are looking into your question. We will not have an answer to you by today ***nor do we understand why a question about discovery, which closed years ago, needs less than a two-day turnaround***. Omnibus Declaration SAMF Ex. 21(emphasis added).

Having heard nothing for 11 days, Zest's counsel followed up on Jul. 9, 2024, to which Walmart responded on Jul. 17, 2024, over a week later: "We are still looking into your request. We will get you an answer when we have it." *Id.* The next day, Walmart's counsel emailed, stating, "we have not located the applications for U.S. Patent Nos. 11,078,020 and 11,388,325 in the production." *Id.* Zest then filed the present motion on Jul. 19, 2024.

Walmart then asked for additional time to oppose, which was granted. Ultimately, on Aug. 23, 2024, Walmart filed both its opposition and a motion for summary judgment, which was resoundingly silent as to these newly discovered patents.

Zest promptly contacted Walmart concerning incomplete productions, and Walmart

confirmed that they were incomplete. Walmart agrees that it still has an obligation to supplement its discovery responses under Rule 26(e). Dkt. 582. But Walmart asks that the Court not issue an order setting a deadline and feigns ignorance about what could need to be updated. Walmart, not Zest, currently possesses the information relevant to determining which responses need to be updated, given internal developments at Walmart in the five years since discovery closed or topics they previously concealed. The Court should order it to do so. Those updated responses, in turn, should form the basis of updated expert reports to present an accurate factual picture to the jury. Moreover, Walmart's failure to update its discovery risks a trial by surprise for Zest. Walmart would have this information, but Zest would not. Zest's case preparation would be crippled while Walmart would be able to pluck new documents out at will to support developing its defenses.

Under Rule 26(e)(1)(A), a party who has responded to an interrogatory, request for production, or request for admission must supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). This obligation continues even after the discovery period has closed. See *Eshelman*, 2022 WL 1597819, at *5 ("The obligation continues after discovery closes."). At minimum, such allegedly similar conduct should be discoverable.

### b. New Developments Justify the Replacement and Addition of New Experts

Walmart contends in part, "Zest argues that a replacement is needed because of [Mr. Dickinson's] death. But Mr. Dickinson died before the first trial, and Zest did not replace him. Nor has it sought to do so in the years since." Dkt. 582. Walmart elected not to make this an issue at the first trial, so it was not necessary to do so at the time. Walmart is clearly making this

an issue for the new trial, so justice demands that Zest be permitted to provide new opinions in response to Walmart on the topic of reasonableness. Additionally, it has been five years since the previous trial, and Zest should be afforded the flexibility to present evidence to the jury using expert witnesses able to effectively explain these complicated issues today, rather than be limited to those who were prepared to do so five years ago. "Following the grant of a new trial, the second trial, absent any stipulations by the parties to the contrary, proceeds de novo." *Day v. Amax, Inc.*, 701 F.2d 1258, 1263 (8th Cir. 1983); *accord Nelson v. All Am. Life & Fin. Corp.*, 889 F.2d 141, 152 (8th Cir. 1989). *See also* Am. Jur. 2d New Trial § 396 (Feb. 2024 Update) ("Upon the grant of a new trial in a civil case, the parties are entitled to a wholly new trial, unfettered by the rulings, pro or con, made at the first trial and with the right to have new rulings on matters which arise in the course of a trial."); *id.* at § 398 ("In a new trial, the parties are entitled to introduce additional or new evidence not introduced at the earlier trial, and the parties may present evidence differently. … A new trial provides a clean slate; the issues must be retried and the trial of the case proceeds de novo. The new trial requires its own law and it must be conducted, as far as practicable, in the manner in which it would be conducted if there had not been a previous trial.").

Courts have permitted parties to designate new expert witnesses when circumstances warrant. In *Cleveland By & Through Cleveland v. Piper Aircraft Corp.*, the court noted that if a witness is unavailable for the new trial, the court should consider allowing additional witnesses to testify. 985 F.2d 1438, 1450 (10th Cir. 1993). Similarly, in *Brooks v. Cnty. of San Joaquin*, the court allowed supplemental disclosures where a critical expert witness had died after the deadlines had passed for expert discovery disclosure. No. 2:09-CV-03343, 2012 WL 5928416, at *1 (E.D. Cal. Nov. 26, 2012).

### c.        Recent Actions by Walmart Necessitate Further Discovery

Despite actual notice of its failure to produce documents it had agreed to produce previously, Walmart opted to file a motion for summary judgment instead of supplementing its discovery responses and productions. Walmart had not done so when Zest filed this motion for limited discovery, but now that it has, it reinforces the need for this limited discovery. Under Rule 56, the limited discovery requested in this motion is necessary to fully assess whether genuine issues of material fact exist as to Zest's misappropriation of trade secrets claim. *Cf.* Fed. R. Civ. P. 56(d)(2)-(3) (permitting the Court to "allow time . . . to take discovery" or "issue any other appropriate order"); *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530-31 (8th Cir. 1999) (district court erred in failing to allow discovery before granting defendant's summary judgment motion).

### 3.        The Requested Discovery Is Relevant and Proportional

### a.        Supplementation Ensures Complete and Accurate Information

Walmart agrees that it must supplement its discovery responses under Rule 26(e). Doing so on a timeline set by the Court ensures that all the contingent aspects of this litigation can be completed in time for trial after Walmart fulfills its obligation to supplement its responses. That also is furthered by allowing limited directed discovery into topics which Walmart has already evaded its discovery obligations.

### b.        Discovery on the Bohling Application Clarifies Key Issues

Walmart likely will contend at the upcoming trial that the '396 Bohling Application was unsuccessful and ultimately abandoned (as it argues in opposition to this motion). Discovery into the patent prosecution of the '396 Bohling Application is necessary to prevent Walmart from telling a misleading story twisted around an assessment of the underlying alleged Zest trade

secrets rather than its own decisions in the patent prosecution process. Evidence and expert opinions will show that most applications are originally rejected, and that the applicant must respond to the PTO's questions in order to obtain issuance. But if no response is made, rejection is mandatory; thus, Walmart's failure to respond to the PTO is why it was rejected and deemed abandoned, not because the technology was not novel. This is yet another example of Walmart attempting to use its own post-dispute conduct to gain litigation advantage against Zest, which should not be countenanced by this Court.

c.     **N2N's Allegations Are Relevant to Establish a Pattern of Conduct and Support the Notion that Walmart's Conduct Was Willful**

N2N Global alleges that Walmart employees, including witnesses in the Zest case such as Chuck Tilmon, willfully and maliciously misappropriated N2N Global's trade secrets during the same time period Zest alleges Walmart misappropriated Zest trade secrets. The same people engaging in the same type of misconduct as to distinct plaintiffs during the same time period is admissible under Rule 404(b)(2), notwithstanding Walmart's conclusory assertion that the evidence would be inadmissible. Dkt 582. *See* Fed. R. Civ. P. 26(b)(1) ("Information within the scope of discovery need not be admissible in evidence to be discoverable"); *Liguria Foods, Inc. v.Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 183 (N.D. Iowa 2017) (discovery is permissible "even if the evidence discovered is later deemed not admissible").

This evidence is relevant for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

<strong>d.          Walmart's New Patents May Reveal Ongoing</strong>

<strong>Misappropriation</strong>

Discovery into the '020 and '325 patents would include how those technologies have been implemented at Walmart since the discovery period closed. Importantly, Walmart has no license to further misappropriate Zest's trade secrets after discovery is closed. Suppose Walmart continues using Zest trade secrets internally, developing patents or its own internal processes. In that case, Zest must obtain that information in discovery for a jury to assess the scope and extent of Walmart's misconduct. As ongoing misappropriation by Walmart remains within the same factual nexus as the original complaint, denying further discovery would deny Zest the ability to forestall Walmart's misconduct if Walmart is allowed to keep it a secret.

<strong>4.          Walmart Will Not Be Prejudiced By the Additional Discovery.</strong>

<strong>a.          The Discovery Is Narrowly Tailored and Timely</strong>

Walmart does not argue in its opposition that reopening discovery would cause it prejudice. Instead, it focuses on Zest's diligence. To do so, Walmart makes arguments that strain credulity, such as suggesting that Zest ought to have sought to reopen fact discovery while the jury verdict that Walmart had willfully, and maliciously misappropriated Zest's trade secrets remained in force. Here, there are narrow categories of information Zest seeks, and Walmart should be able to provide the necessary information promptly. Indeed, Walmart does not suggest otherwise.

<strong>b.          Any Potential Prejudice Can Be Mitigated Without Delaying</strong>

<strong>Trial</strong>

Zest has already begun to demonstrate the types of expert opinions that would be formed given new discovery in the declarations in support of the opposition to Walmart's motion for

summary judgment. Zest and Walmart will promptly complete any additional testing of the opinions of the expert witnesses based on the evidence in the case. If the Court allows new expert reports, but not new discovery, Zest is prepared to submit new expert reports within a week. However, in the event new discovery is allowed, it would be prejudicial to require Zest to supplement its expert reports without Walmart's additional discovery responses to inform those reports to complete the evidentiary record.

### III.    CONCLUSION

For the foregoing reasons, Zest respectfully requests that the Court grant its motion to permit limited discovery and modify the Final Scheduling Order. Specifically, Zest asks the Court to amend the Final Scheduling Order of January 3, 2024, as follows:

- **Reopening of Fact Discovery**: Fact discovery shall reopen on a limited basis as described herein, commencing on the date of the order, and shall close on November 15, 2024.

- **Supplementation of Discovery Responses**: All parties shall supplement or correct their responses to previously served requests for documents, interrogatories, and requests for admission in compliance with Rule 26 no later than three weeks after the date of the order.

- **Limited Additional Discovery by Zest**: Zest may serve up to ten requests for the production of documents and up to ten interrogatories, which may relate to:

  - Any use by Walmart of Zest's technology or similar technology, and any savings from such use, since the close of discovery on October 15, 2019;

  - Any facts relating to or any allegations made in *N2N*

*Global, Inc. v. Walmart Inc.*;

- The prosecution and disposition of Walmart's patent applications, including but not limited to Patent No. US 11,388,325 B2, Patent No. US 11,078,020 B2, and Patent Application Publication No. US 2019/0147396 A1.

- **Depositions**: Zest may depose up to five fact witnesses and may also take a Rule 30(b)(6) deposition of Walmart no later than November 15, 2024.

- **Close of Fact Discovery**: All fact discovery shall close on November 15, 2024.

- **Reopening of Expert Discovery**: Expert discovery shall reopen on November 15, 2024, and shall close on December 13, 2024.

- **Expert Reports**: New or supplemented expert reports shall be served by November 22, 2024.

- **Expert Depositions**: The parties shall make their experts available for deposition on or before December 13, 2024.

- **Close of Expert Discovery**: All expert discovery shall close on December 13, 2024.

- **Ongoing Duty to Supplement**: The parties' duty to supplement disclosures and responses under Rule 26(e) remains in effect through and after the reopened discovery periods.

Granting this limited discovery will ensure that the retrial proceeds on a complete and current record, prevent manifest injustice, and promote a fair and efficient resolution of this case.

Dated: September 19, 2024

Respectfully submitted,

*/s/Patrick Ryan*

Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
*pryan@bartkolaw.com*
*smctigue@bartkolaw.com*
*krichard@bartkolaw.com*
*nfelsen@bartkolaw.com*
*Admitted *pro hac vice*

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
*scott@mcdanielwolff.com*

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
*cbartolomucci@schaerr-jaffe.com*
*Admitted *pro hac vice*

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
*kate@bluepeak.law*
*Admitted *pro hac vice*

*Attorneys for Plaintiffs ZEST LABS, INC., ZEST LABS HOLDINGS LLC, and RISKON INTERNATIONAL, INC.*