IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS
HOLDINGS LLC; AND RISKON
INTERNATIONAL, INC.,

    Plaintiffs,

    v.                                    No. 4:18-cv-500-JM

WALMART INC. f/k/a
WAL-MART STORES INC.,

    Defendant.

_____/

**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST WALMART
AND ITS FORMER DISCOVERY COUNSEL**

    Plaintiffs Zest Labs, Inc., Zest Labs Holdings LLC, and RiskOn International, Inc. (together, "Zest"), state as follows for their Motion for Sanctions Against Walmart and Its Former Discovery Counsel:

    1.    Pursuant to 28 U.S.C. § 1927, Rules 26(g) and 37(c) of the Federal Rules of Civil Procedure, and this Court's inherent power to sanction a party and its counsel for intentional, bad-faith litigation misconduct and abuse of the discovery process, Zest hereby requests that the Court impose sanctions on Defendant Walmart Inc. and its former counsel, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), who represented it during the discovery phase of this case.

    2.    Zest seeks sanctions for Walmart and Skadden's concealment—from both this Court and Zest—of crucial evidence that would have greatly aided Zest during the discovery phase of the case, in the preparation of its expert opinions and damages theories, in trial preparation, and at trial. The Concealed Patents constituted further evidence of Walmart's willful misappropriation

1

of Zest's trade secrets and could have led to significantly higher damages, had the evidence been timely produced. In addition, this evidence would have been a critical rebuttal to Walmart's post-trial motion for a new trial and sanctions.

3. Instead, Walmart's concealment deprived this Court of considering this critical evidence and prevented Zest from responding to Walmart's motions with the full context of all relevant facts.

4. Last year, this Court set aside the jury verdict and ordered a new trial because Zest's former counsel had made a mistake in a declaration about when they first saw a patent application ("the Bohling '396 Application") that, in fact, Walmart had produced in discovery. Walmart convinced this Court that the sworn statement denying knowledge of the Bohling '396 Application prevented Walmart from making an argument ("the Foregone Defense") that Zest could or should have attempted to stop Walmart or the U.S. Patent and Trademark Office ("PTO") from publishing Zest's trade secrets as contained in the '396 Bohling Application. All the while, however, Walmart and Skadden's far more egregious and sanctionable conduct constituted facts and evidence that would have annihilated Walmart's argument for a new trial and sanctions, which is clearly why they suppressed this evidence.

5. Walmart produced the '396 Bohling Application to Zest on February 28, 2019, in response to Zest's Request No. 101, which required Walmart to produce "[a]ll patents or patent applications relating to any element, component, or aspect of any part, current, or future implementation of the Eden system." Dkt. 460-2 at 8. Walmart responded to Request No. 101 by agreeing that "Walmart will produce non-privileged patents and patent applications covering the elements, components, or aspects of Muse (f/k/a Eden), to the extent that such documents have not already been produced and are located after a reasonably diligent search." Dkt. 594, Ex. 24, at 4.

6. Despite its promise to produce such documents, Walmart concealed two other patent applications directly related to the Eden system (the '020 and '325 patents, referred to collectively as the "Concealed Patents"). Walmart itself has admitted that the Concealed Patents related to the Eden System—rendering them responsive to RFP 101—and has further admitted that the Concealed Patents were never produced. *See* Dkt. 582 at 9; Ex. 21 to Dkt. 594; Ex. 582 at 8 n.7.

7. The evidence demonstrates that Walmart and Skadden intentionally hid the Concealed Patents from both this Court and Zest.

8. The applications that led to the Concealed Patents were filed approximately one week before Walmart's production of patent applications during discovery in this litigation; the application for the '020 patent was filed on February 20, 2019, the application for the '325 patent was filed on February 25, 2019, and Walmart produced patent applications on February 28, 2019. Yet Walmart's February 28, 2019 production omitted the Concealed Patents, producing only the '396 Bohling Application—the only application of the three which Walmart would later abandon.

9. In other words, Walmart disclosed only the one patent application that it intended to abandon, while hiding the two *other* related patent applications that Walmart intended to continue pursuing.

10. The two Concealed Patents were indisputably relevant and responsive to Zest's RFP 101. Both Concealed Patents referenced Zest's technology extensively, using the term "Zest" more than 400 times and citing documents from this litigation. Both Concealed Patents—just like the '396 Bohling Application—list Joshua Bohling as the lead inventor. It strains credulity that Walmart and its counsel could have collected the relevant patent applications to produce and would have simply forgotten to include two of the three applications on the same subject, with the same

3

named inventor, which Walmart had been actively pursuing mere days before the production. Rather, the timeline strongly corroborates the fact that Walmart intentionally concealed this evidence from this Court and Zest.

11. Walmart continued to hide the Concealed Patents through depositions. Even as Skadden prepared Mr. Bohling to be deposed—a process that surely involved discussing his Eden-related patent applications, which must have included the Concealed Patents—Walmart and Skadden did not produce the Concealed Patents.

12. Despite Zest's explicit request, Walmart also refused to designate a witness to represent Walmart on the issue of patents related to the Eden system. And when Mr. Bohling was deposed at length about the '396 Bohling Application, he said nothing about his work related to the Concealed Patents.

13. Instead, Walmart's concealment from both the Court and Zest continued all the way through expert discovery, trial, and post-trial motions.

14. When it lost at trial, Walmart's next step—audacious in hindsight—was to seek sanctions against Zest on the basis of Walmart's Foregone Defense. Walmart claimed that Zest could have somehow stopped publication of its trade secrets in the '396 Bohling Application, all the while concealing that—no matter what had happened with the '396 Bohling Application—Walmart's pursuit of the Concealed Patents *separately* constituted misappropriation, and that it was inevitable that Zest's trade secrets, contained in the Concealed Patents, would eventually be published regardless of what happened with the '396 Bohling Application.

15. Walmart has never offered *any* justification for its admitted failure to produce the Concealed Patents. The reasonable conclusion is that Walmart intentionally concealed them,

4

disclosing only the '396 Bohling Application (which it would eventually abandon) while pursing the Concealed Patents in secret.

16. The intentional concealment of material evidence constitutes spoliation under the law, and this spoliation clearly prejudiced Zest. Walmart's spoliation left Zest unable to use the Concealed Patents in fact discovery, in expert reports, and at trial as evidence of Walmart's willful misappropriation of Zest's trade secrets, evidence that likely would have resulted in a much higher damages award.

17. Further, the spoliation kept Zest from offering what would have been an effective response to the Foregone Defense with which Walmart successfully obtained a new trial. Had Zest known about the Concealed Patents, it would have explained to this Court that, even if Zest could have stopped the PTO's publication of the trade secrets contained in the '396 Bohling Application (which Zest disputes was even possible), Zest could not have stopped the domestic or international publication of the Concealed Patents—because Walmart and Skadden hid those applications up until the time they published.

WHEREFORE, because of Walmart's and Skadden's litigation misconduct and intentional spoliation of the Concealed Patents, Zest requests that the Court grant this motion and remedy Walmart's and Skadden's concealment and spoliation of crucial evidence by: (1) granting the adverse inference jury instruction described in the accompanying brief; (2) permitting targeted discovery related to the Concealed Patents, also described in the brief; (3) prohibiting Walmart from raising its claim that Zest should have attempted to stop or could have stopped publication of its trade secrets contained in Walmart's patents; and (4) granting attorney's fees against Walmart and its former trial counsel for Zest's counsel's time expended responding to Walmart's post-trial motions, conducting post-trial discovery, and preparing for and trying the retrial.

Respectfully submitted,

Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
pryan@bartkolaw.com
smctigue@bartkolaw.com
krichard@bartkolaw.com
nfelsen@bartkolaw.com

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
scott@mcdanielwolff.com

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
kate@bluepeak.law

Dated: October 23, 2024                    *Admitted *pro hac vice*