# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS HOLDINGS
LLC; and RISKON INTERNATIONAL,
INC.,

Plaintiffs,

v.

No. 4:18-CV-500-JM

WALMART INC. f/k/a WAL-MART
STORES, INC.,

Defendant.

_____/


**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

BACKGROUND ...............................................................................................................6

    A.    Walmart Pursues Three Patent Applications Disclosing Zest's Trade Secrets but Conceals Two of Them in This Litigation. ..........................6

    B.    Walmart Fails to Produce the Concealed Patents and Related Applications. ........10

    C.    After the Jury Verdict Is Vacated by the New Trial Order, Zest Discovers the Concealed Patents and Other Walmart Patents Disclosing Zest's Trade Secrets. ...............................................................................12

    D.    Walmart Files for Summary Judgment Despite This Damning Evidence. ............15

RELEVANT STATUTORY PROVISIONS, RULES, AND INHERENT JUDICIAL AUTHORITY ...............................................................................................................16

    A.    Federal Rules of Civil Procedure 26 and 37. .......................................16

    B.    28 U.S.C. § 1927 ..................................................................................17

    C.    Inherent Judicial Authority. ...................................................................17

ARGUMENT ...................................................................................................................18

    A.    Walmart's Concealment of the '020 and '325 Applications Constitutes Spoliation. ..............................................................................................19

        1.    Walmart Committed Spoliation by Concealing Discoverable Evidence from Zest and the Court. ..........................................19

        2.    Walmart's Failure to Produce the Concealed Patents Prejudiced Zest. ..........................................................................23

    B.    Walmart's Spoliation Warrants Sanctions. ...........................................23

        1.    An Adverse Inference Jury Instruction Is Warranted Because Walmart Spoliated the Concealed Patents Intentionally and in Bad Faith. ....................................................................................24

        2.    Walmart Should Be Ordered to Participate in Targeted Discovery Related to the Concealed Patents. ...............................30

        3.    Walmart Should Be Barred from Benefiting from Its Spoliation via its Foregone Defense. ......................................................30

        4.    This Court Should Award Zest its Attorney's Fees. ..................31

CONCLUSION ................................................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. BNSF Ry. Co.*
 681 F. Supp. 3d 899 (S.D. Iowa 2023) ...................................................................................19

*Blazer v. Gall*
 No. 1:16-CV-01046-KES, 2019 WL 3494785 (D.S.D. Aug. 1, 2019)..............................19, 24

*Bull v. United Parcel Serv., Inc.*
 665. F.3d 68 (3d Cir. 2012)........................................................................................................20

*Cenevo Corp. v. So. Graphic Sys., Inc.*
 No. 08-5521, 2010 WL 3893680 (D. Minn. June 18, 2010)....................................................19

*Chambers v. NASCO, Inc.*
 501 U.S. 32 (1991)...................................................................................................17, 23, 31

*Chrysler Corp. v. Carey*
 186 F.3d 1016 (8th Cir. 1999) ...................................................................................................24

*Clark v. U.S. Postal Serv., In*c.
 460 F.3d 1004 (8th Cir. 2006) ...................................................................................................17

*Dillon v. Nissan Motor Co.*
 986 F.2d 263 (8th Cir. 1993) .....................................................................................................30

*Goodyear Tire & Rubber Co. v. Haeger*
 581 U.S. 101 (2017)....................................................................................................................17

*Greyhound Lines, Inc. v. Wade*
 485 F.3d 1032 (8th Cir. 2007) ...................................................................................................25

*Hallmark Cards, Inc. v. Murley*
 703 F.3d 456 (8th Cir. 2013) ........................................................................................23, 25, 29

*Hill v. State*
 487 S.W.2d 624 (Ark. 1972)......................................................................................................28

*J.S. Sweet Co. v. Sika Chemical Corp.*
 400 F.3d 1028 (7th Cir. 2005) ...................................................................................................21

*Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*
 103 F.3d 1422 (8th Cir. 1997) ...................................................................................................31

*Link v. Wabash R. Co.*
370 U.S. 626 (1962).........................................................................................17

*London Luxury, LLC v. Walmart, Inc.*
No. 5:22-cv-5059, 2024 WL 1253407 (W.D. Ark. Mar. 22, 2024)..........................29

*Moore v. R.T.L. Const., Inc.*
2011 WL 4729861 (D. Minn. Oct. 6, 2011) ..................................................19, 20

*Moore v. R.T.L. Const., Inc.*
Nos. 09-3178 PAM/SER & 09-3177 PAM/FLN, 2011 WL 4738154
(D. Minn. Aug. 23, 2011) ......................................................................19, 20

*Multi-Craft Contractors Inc. v. Perico Ltd.*
239 S.W.3d 33 (Ark. App. 2006)............................................................28

*Nat'l Hockey League v. Metro Hockey Club*
427 U.S. 639 (1976).........................................................................22

*Nick v. Morgan's Foods, Inc.*
270 F.3d 590 (8th Cir. 2001) .................................................................18

*The Olinde Rodrigues*
174 U.S. 510 (1899).........................................................................20

*The Pizzaro*
15 U.S. 227 (1817) (Story, J.)...............................................................20

*Pls.' Baycol Steering Comm. v. Bayer Corp.*
419 F.3d 794 (8th Cir. 2005) .................................................................31

*Ragan v. Stafford*
No. 4:16-cv-4097, 2017 WL 4764620 (W.D. Ark. Oct. 20, 2017)..........................29

*Ritchie Grocery Co. v. Aetna Cas. & Sur. Co.*
426 F.2d 499 (8th Cir. 1970) .................................................................28

*Roadway Express, Inc. v. Piper*
447 U.S. 752 (1980).......................................................................17, 32

*Schlafly v. Eagle Forum*
970 F.3d 924 (8th Cir. 2020) .................................................................31

*Sec. Nat'l Bank of Sioux City, IA v. Jones Day*
800 F.3d 936 (8th Cir. 2015) .................................................................22

*Stevenson v. Union Pac. R.R. Co.*
354 F.3d 739 (8th Cir. 2004) ........................................................... *passim*

*United States v. Rodriguez-Sanchez*
  741 F. App'x 214 (5th Cir. 2018) ........................................................21

*Vallejo v. Amgen, Inc.*
  903 F.3d 733 (8th Cir. 2018) ............................................................18

*Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*
  No. 5:14-cv-5262, 2018 WL 1597976 (W.D. Ark. Mar. 31, 2018)..................28, 29

*In re Zest Labs, Inc.*
  No. 22-2306 (8th Cir. July 18, 2022).....................................................10

## Statutes

28 United States Code § 1927................................................................17, 32

## Court Rules

Arkansas Rules of Professional Conduct
  Rule 3.3 .........................................................................................21
  Rule 3.4 .........................................................................................21

Federal Rules of Civil Procedure
  Rule 25(g)(3).....................................................................................32
  Rule 26(g).........................................................................................16
  Rule 26(g)(1)(B)(ii)-(iii), (3) .................................................................16
  Rule 30(b)(6).....................................................................................11
  Rule 37(c)..........................................................................................17
  Rule 37(c)(1)(A)-(C)........................................................................17, 32
  Rule 37(e)(1)......................................................................................24

## Other Authorities

27 C.J.S. *Discovery* § 135 ...................................................................21

Federal Trial Handbook: Civil § 72:16 (2024-2025 Edition) ................................21

https://www.uspto.gov/patents/maintain/responding-office-actions ........................9

https://www.uspto.gov/web/offices/pac/mpep/s2001.html#d0e195865.........................8

*Spoliation, Black's Law Dictionary* (11th ed. 2019) ..................................19

Plaintiffs ("Zest") state as follows for their *Brief in Support of Motion for Sanctions* against Defendant Walmart Inc. ("Walmart"):

## INTRODUCTION AND SUMMARY OF ARGUMENT

In December 2023, Walmart convinced this Court to set aside the jury verdict in Zest's favor based on Walmart's claim that Zest's former counsel wrongfully prevented Walmart from asserting a defense to its misappropriation of Zest's trade secrets. Walmart claims that it would have defended itself (in the "Foregone Defense") by asserting that Zest had the ability, but failed to attempt, to prevent the U.S. Patent and Trademark Office ("PTO") from publishing Zest's trade secrets contained in a Walmart patent application ("the '396 Bohling Application"). Walmart obtained a new trial and continues to seek sanctions on the notion that Zest's former counsel created prejudice by denying pre-publication knowledge of the '396 Bohling Application, even though Walmart immediately rectified that factual error in its next filing mere days later.

Walmart had the audacity to seek sanctions against Zest for these events even as *Walmart itself* concealed critical evidence Zest has recently discovered. Walmart intentionally concealed—from the Court and Zest—two other patent applications destined for publication. These patent applications ("the '020 and '325 applications," collectively with the patents published upon these applications the "Concealed Patents"), like the '396 Bohling Application, disclosed Zest's trade secrets and named Joshua Bohling as the lead inventor. Unlike the '396 Bohling Application, which Walmart abandoned, Walmart fully prosecuted the Concealed Patents, and the PTO published them before this case went to trial.

At its core, the Foregone Defense places Walmart in the position of a WWII U-Boat commander lying in wait and launching torpedoes at an unarmed civilian passenger ship. The first torpedo—the '396 Bohling Application—was a traditional torpedo detected only just before

impact, leaving the ship's commander with no time to take counter measures (even if he had the means to do so, which he did not). In contrast, the second two torpedoes—the Concealed Patents— were stealth torpedoes, making pre-impact detection impossible; thus, it was impossible for the ship's commander to prevent their impact, even if by some miracle he had been able to prevent the impact of the first torpedo. Walmart's launching of these three torpedoes (especially the Concealed Patents) set in course a chain of events rendering it inevitable that at least some of Zest's trade secrets, contained in the three patents, would not only be disclosed to the PTO (which is a misappropriation regardless of publication) but also made public to the world. To make matters worse, the Concealed Patents were granted, which—adding insult to injury—gives Walmart the right to exclude Zest from using *its own technology*.

Even though Walmart had agreed to produce all patents and patent applications relating to its Eden System incorporating Zest's trade secrets—and even though the Concealed Patents expressly reference this litigation *over 400 times* and *Walmart itself* flagged to the PTO that the Concealed Patents relate to this case—Walmart never produced the Concealed Patents in fact discovery. Instead, Walmart disclosed only the '396 Bohling Application, which it abandoned while simultaneously prosecuting the Concealed Patents. Viewed in hindsight, Walmart's conduct appears intentional: the only patent application that Walmart produced was the one that it intended to abandon, while it concealed the patent applications that it planned to prosecute to publication. This conduct obviously prejudiced Zest by limiting the evidence it could investigate in fact and expert discovery and undercutting its case for misappropriation at trial. Walmart intentionally circumscribed Zest's awareness of Walmart's misconduct, thereby forcing Zest to make its case on an incomplete evidentiary record, relying on the eventually abandoned '396 Bohling Application when the case would have been even stronger with the inclusion of two *granted*

Concealed Patents containing Zest's trade secrets. Walmart's inexplicable lack of candor, especially to the Court, is profoundly shocking. Its suppression of evidence warrants severe sanctions.

Further, Walmart's strategy completely undermines its Foregone Defense, because no matter what happened with the '396 Bohling Application, it would have been impossible for Zest to prevent the publication of its trade secrets in the Concealed Patents. Walmart's Foregone Defense claims that Zest should be faulted for (supposedly) allowing the PTO to publish Zest's trade secrets contained in the '396 Bohling Application. But the publication of the Concealed Patents, which was inevitable because Walmart concealed the related applications from the Court and Zest, disclosed Zest's trade secrets as well. Importantly, Zest had the absolute right to rely on Walmart's discovery duties under the Federal Rules to produce all patents and patent applications related to the Eden system. Even though Walmart obtained a new trial on this premise, Walmart has never cited authority for its argument that Zest had an affirmative obligation to assume that Walmart was lying about the extent of its misappropriations and should have continued to monitor PTO publications for evidence of further misconduct. Given Walmart's hypocrisy in publishing the Concealed Patents while all along blaming Zest for failing to prevent publication of the '396 Bohling Application, Walmart should be barred from asserting its Foregone Defense in the upcoming trial.

Walmart's failure to produce the Concealed Patents changed the course of this case. Walmart's spoliation deeply prejudiced Zest's prosecution of its claims through discovery and at trial. Walmart's intentional concealment during fact discovery caused Zest to garner understated expert opinions regarding the extent of Walmart's misappropriation. And Zest never had the opportunity to try this evidence before the jury, directly impacting Zest's damages award.

Moreover, Zest and this Court have spent nearly four years in post-trial litigation and ultimately face a new trial as a result of the Foregone Defense—years of work and expense without merit given the hollowness of Walmart's arguments viewed in light of their lack of candor and deceptive tactics against this Court, which relied on Walmart's representations and candor in issuing the new trial order.

Walmart and its former counsel—Skadden, Arps, Slate, Meagher & Flom LLP ("former counsel" or "Skadden")—cannot colorably claim that they lacked knowledge of the Concealed Patents or the deception against the Court and Zest. At minimum, Mr. Bohling—a Walmart employee—was certainly aware of the Concealed Patents, as a named inventor on those very patents. His knowledge is imputed to his employer as a matter of law under Arkansas law, proving that Walmart knew about the Concealed Patents it failed to produce. Likewise, Skadden must have learned about the Concealed Patents when it collected the '396 Bohling Application to produce and when it prepared to defend Mr. Bohling during his deposition and to present him as their star witness at trial. Indeed, Walmart and former counsel knew and said nothing to Zest or this Court about the Concealed Patents when:

- The Concealed Patents' lead inventor, Mr. Bohling, sat for deposition on the '396 Bohling Application;

- Walmart filed documents with the PTO highlighting the relationship between the Concealed Patents and this litigation;

- Walmart's witnesses, including Mr. Bohling, testified at trial;

- Walmart challenged the verdict, multiple times;

- Walmart moved for a new trial and sought sanctions against Zest pursuant to the Foregone Defense;

- This Court ordered a new trial without any awareness of the Concealed Patents;

- Walmart's lawyers represented to this Court that stopping the '396 Bohling Application would have saved Zest's trade secrets from being published by the PTO;

- Walmart claimed prejudice from a factual error made by Zest's former counsel that Walmart itself immediately rectified;

- Walmart twice represented to the Eighth Circuit that stopping the publication of the trade secrets contained in the '396 Bohling Application would have preserved the confidentiality of Zest's trade secrets;

- Walmart moved for summary judgment on its Foregone Defense.

Defying common sense, Walmart continues to seek millions of dollars in sanctions against Zest and its former counsel. Comparing Walmart's sanctionable conduct to its accusations against Zest's former counsel is like comparing first-degree murder to a speeding ticket. Yet Walmart has never explained why it failed to disclose the Concealed Patents.

This Court should impose severe evidentiary and issue sanctions on Walmart and monetary sanctions against Walmart and its former counsel[1] for failing to produce the Concealed Patents to Zest and for prosecuting the case after the Concealed Patents came into existence without

---

[1] At present, Zest seeks fees only from Walmart and Skadden, which represented Walmart throughout discovery in this case. The Skadden lawyers would have been aware of the Concealed Patents from their work during fact discovery yet failed to produce them. Walmart's current counsel appeared in June 2020, *see* Dkts. 301-305, and Skadden withdrew in July 2021, *see* Dkts. 435, 437. At the time of their appearance, Walmart's current lawyers were affiliated with Winston & Strawn LLP; the same lawyers joined Sheppard, Mullin, Richter & Hampton LLP in 2022 and continued to represent Walmart. *See* Dkts. 458, 459, 473. Zest does not have enough information to know when Walmart's current counsel became aware of the Concealed Patents and thus whether they should be subject to sanctions. Similarly, Zest assumes that Walmart's local counsel was merely signing filings at the direction of Skadden and did not have its own knowledge of the Concealed Patents. The discovery Zest requests in Part II(B), *infra*, would inform those questions, and Zest reserves its rights to seek further sanctions if warranted.

disclosing them to the Court or Zest, including participating in depositions and providing discovery responses without disclosing them, engaging in motion practice without disclosing them, engaging in the pre-trial and trial process without disclosing them, and seeking a new trial and sanctions without disclosing them. Specifically, Zest seeks (1) an adverse inference jury instruction as described below; (2) targeted discovery related to the Concealed Patents as described below; (3) a prohibition on Walmart raising its claim that Zest should have attempted to stop or could have stopped publication of its trade secrets contained in Walmart's patents; and (4) attorney's fees against Walmart and its former trial counsel for Zest's counsel's time expended responding to Walmart's post-trial motions, conducting post-trial discovery, and preparing for and trying the retrial.

## **BACKGROUND**

### A.    Walmart Pursues Three Patent Applications Disclosing Zest's Trade Secrets but Conceals Two of Them in This Litigation.

Zest commenced this action against Walmart on August 1, 2018. Dkt. 1. It served the complaint on Walmart the same day. Dkt. 14. On August 7, 2018, Zest filed a motion for a preliminary injunction, seeking "to prevent [Walmart] from disclosing Zest Labs' trade secrets" during litigation. Dkt. 18. In support, Zest attached a declaration from its CEO, Peter Mehring, which explained that ████████████████████████████████████████ ████████████████████████████. *See* Dkt. 22. Zest also filed a Motion for Leave to Conduct Expedited Discovery that same day. Dkt. 20, 21.

If Walmart was somehow not yet aware that the information that Walmart had acquired and was using to advance its Eden system constituted Zest's trade secrets, Zest's preliminary injunction motion and the Mehring Declaration made that fact clear. But rather than cease acquiring, disclosing, and using Zest's trade secrets, Walmart intensified its misappropriation of

them. In fact, less than three weeks after Zest filed for a preliminary injunction (and 14 days after Walmart counsel entered their appearance here), on August 27, 2018, Walmart fired torpedo one: it filed the '396 Bohling Application with the PTO. *See* Dkt. 508-1 at 344. The '396 Bohling Application sought patent protection for Walmart's Eden system that used and disclosed Zest's trade secrets. *See* Lanning Decl., ¶¶ 152-155.[2] This was also the same day Walmart filed its Response to Plaintiffs' Motion for Leave to Conduct Expedited Discovery. Dkt. 34.

On October 17, 2018 (roughly a month and a half after Walmart filed its motion to dismiss Zest's complaint (Dkt. 46, 47) and 22 days before the Agreed Protective Order was tendered to the Court (Dkt. 81)), Walmart filed torpedo two: a provisional application that ultimately led to the '020 patent (one of the Concealed Patents). *See* Dkt. 594, Zest Statement of Addt'l Material Facts ("Zest SAMF"), ¶ 1. Pursuant to the provisional application, on February 20, 2019, Walmart filed application No. 16,280,818 for the '020 patent. *Id.*, ¶ 2. The '020 patent, titled "*System and Method for Ripening Produce*," references Zest's technology extensively and uses the term "Zest" **more than 400 times**. *See* Dkt. 569-3 at 8-12; Dkt. 569-4 at 10-15. Indeed, in filings related to the patent application, Walmart itself highlighted the connection between this litigation and the '020 patent application:

---

**ADDITIONAL COMMENTS**

Pursuant to MPEP 2001.06(c), this application relates to the following litigation, ZEST LABS, INC. v WALMART, United States District Court for the Eastern District of Arkansas, Case No. 4:18-CV-00500-JM, and Applicant provides Cite Nos. 1-9 and 11-244 for the Examiner's consideration.

---

*See* Ex. D at 15.[3]

---

[2] All declarations and numbered exhibits cited herein were filed with the Court in Dkt. 594. A handful of additional exhibits are attached as lettered exhibits (*e.g.*, Ex. A, Ex. B, etc.).

[3] MPEP 2001.06(c) refers to a chapter in the Manual of Patent Examining Procedure published by the PTO. Chapter 2001 concerns the "Duty of Disclosure, Candor, and Good Faith" and requires that patent applicants disclose "all material information they are *aware* of," including

The '020 patent also includes detailed descriptions of Zest's methodologies and systems, directly disclosing Zest's proprietary processes.

On February 25, 2019, Walmart filed torpedo three: a provisional application that ultimately led to the '325 patent (the other Concealed Patent). Zest SAMF, ¶ 3. As with the '020 patent, Walmart followed its provisional application with application No. 16/526,667, filed on July 30, 2019. *Id.*, ¶ 4. The '325 patent application, titled "*Systems and Methods for Assessing Products*, also uses the word "Zest" **more than 400 times** while incorporating specific elements of Zest's confidential algorithms and data management techniques. *See* Dkt. 569-3 at 8-12; Dkt. 569-4 at 10-15. Walmart again highlighted that the '325 patent is related to this litigation:

| ADDITIONAL COMMENTS |
| --- |
| Pursuant to MPEP 2001.06(c), this application relates to the following litigation, ZEST LABS, INC. v WALMART, United States District Court for the Eastern District of Arkansas, Case No. 4:18-CV-00500-JM, and Applicant provides Cite Nos. 1-234 for the Examiner's consideration. |

*See* Ex. E at 15.

Both Concealed Patents have much in common with the '396 Bohling Application. As Zest's experts have attested, the Concealed Patents, like the '396 Bohling Application, name Joshua Bohling as the lead inventor; are related to the Eden system; were obtained by Walmart using Zest's confidential information; and disclosed Zest's trade secrets. *See, e.g.*, Lanning Decl.,



¶ 156 █████████████████████████████████████████████████

███████████████████████████, ¶ 230 ██████████████████ Mehring Decl.,

¶ 4 ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████ Stoll Decl., ¶ 11 █████████████

---

specifically "information from related litigation and/or trial proceedings." *See* MPEP § 2001.06(c), available at https://www.uspto.gov/web/offices/pac/mpep/s2001.html#d0e195865.

████████████████████████████████████████████

████████████████████████████████████████████

████████    Thus, like the '396 Bohling Application, the Concealed Patents are evidence of Walmart's wrongful acquisition, use, and disclosure of Zest's trade secrets, although by no means are they the only evidence. There is tremendous evidence of Walmart's acquisition, use, and disclosure of Zest trade secrets that predates the publication of any of the patents, all of which would independently support a jury verdict even if none of the patents had ever published. *See* Dkt. 594 at 17-19, 25-27.

The PTO published the '396 Bohling Application on May 16, 2019. Dkt. 192, Omnibus Ex. 29. Less than a year later, on April 23, 2020, the PTO published the '020 patent application. Zest SAMF, ¶ 2. On August 27, 2020, the PTO published the '325 patent application. *Id.*, ¶ 4.

Walmart abandoned the '396 Bohling Application by failing to respond to an order from the PTO on April 27, 2021. Stoll Decl., ¶ 98. It is common for patent applications to be initially rejected, but later issued following responses to questions and comments for the PTO. *See* Stoll Decl., ¶ 60; *see also* https://www.uspto.gov/patents/maintain/responding-office-actions. But if no response is made to the PTO, the patents are automatically rejected as abandoned, which is what happened here. Stoll Decl., ¶ 98.

Walmart did, however, continue to prosecute the Concealed Patents, and both were granted by the PTO after trial in this case. Walmart's two stealth torpedoes destroyed Zest's trade secret battlements—and that would have happened even if torpedo number one had missed its target. The PTO issued the '020 patent on August 3, 2021 and the '325 patent on July 12, 2022. Lanning Decl., ¶ 11. Even though Walmart has admitted that the Concealed Patents were responsive to Zest's RFP

9

No. 101, Walmart never disclosed the Concealed Patents in discovery, let alone mentioned their existence to Zest or the Court at any time in this case.

**B.    Walmart Fails to Produce the Concealed Patents and Related Applications.**

On January 22, 2019, during the fact discovery period in this case, Zest served on Walmart Plaintiffs' Third Request for Production, which included Zest's RFP No. 101. That request called on Walmart to produce "[a]ll patents or patent applications relating to any element, component, or aspect of any past, current, or future implementation of the Eden System." Dkt. 460-2 at 8. Walmart understood, as it told the Eighth Circuit, that Zest's RFP No. 101 "requested 'all patents or patent applications' related to Walmart's new fresh produce quality-control system" regardless of name. Respondent's Resp. in Opp. to Pet. for Writ of Mandamus at 4, *In re Zest Labs, Inc.*, No. 22-2306 (8th Cir. July 18, 2022) (citing RFP No. 101); Dkt. 582 (Walmart's Opp. to Pls.' Mot. to Permit Limited Discovery and to Modify Final Scheduling Order) at 9 (stating that the applications were "***other work on Eden that had been patented***") (emphasis added).

On February 21, 2019, Walmart responded to RFP No. 101, stating that "***Walmart will produce non-privileged patents and patent applications covering the elements, components, or aspects of Muse (f/k/a Eden), to the extent that such documents have not already been produced and are located after a reasonably diligent search***." Ex. 24 at 4 (emphasis added). One week later, on February 28, 2019, Walmart produced the '396 Bohling Application to Zest as part of a document production containing more than 8,000 documents. Dkt. 594, Pls.' Resp. to Walmart's Statement of Undisputed Material Facts, ¶ 5. Not one of these documents was connected to the Concealed Patents whatsoever. And as Walmart never supplemented its production to include the Concealed Patents despite its duty to do so, Zest never received discovery related to the Concealed Patents.

Walmart also intentionally avoided mention of the Concealed Patents during depositions. In summer 2019, Zest requested that Walmart designate a witness under Federal Rule of Civil Procedure 30(b)(6) to testify about Walmart's patent applications "that relate[] to the monitoring of fresh food, reduction of fresh food shrink or food waste, prediction of shelf life, routing or rerouting of fresh food in a supply chain" or "any other patent or application that relates to, or arose from the development of, the Eden System (or any part thereof)." *See* Ex. A at 37 (Zest's Notice of 30(b)(6) Depositions at Topic 69). Walmart refused to designate a witness on this critical topic, simply objecting and refusing to produce a witness. *Id.* Approximately a week before Mr. Bohling's deposition, Zest's counsel again followed up to ask whether Walmart would designate him to testify on any 30(b)(6) topics for which it had not designated a witness, including Topic 69. *See* Ex. B. Walmart again refused to designate Mr. Bohling (or anyone else) as a 30(b)(6) witness regarding Walmart's patent applications. At Mr. Bohling's deposition on August 15-16, 2019, ███████████████████████████████████████████. But because Walmart had left Zest unaware of the existence of the Concealed Patents, Zest's counsel had no reason to question Mr. Bohling about those applications nor press for a further witness on other applications, due to the simple fact that they were entirely and illegally hidden by Walmart.[4]

Defying Walmart's Foregone Defense, which blamed Zest for failing to attempt to stop publication of its trade secrets in the '396 Bohling Application, Walmart's concealment necessarily deprived Zest of the possibility of attempting to stop publication of the trade secrets disclosed in the Concealed Patents. Even following the close of fact discovery, Walmart never produced the applications or provisional applications related to the Concealed Patents despite its ongoing

---

[4] At the conclusion of the deposition, Zest's former counsel again objected to ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* Ex. C at 376:11-20.

obligations to supplement its discovery responses—an utter failure of its duty of candor to the Court. Zest was reasonable in relying on Walmart to comply with its duty under the Federal Rules and supplement its discovery. Zest had no obligation to conduct its own search in the PTO records after the close of fact discovery—Walmart made this claim without citing to any legal authority. Even if Walmart had found some source suggesting that victims of trade secret theft had an obligation to monitor PTO records for additional misappropriation—a claim for which it has never cited any legal authority—it would have been impossible for Zest to discover the Concealed Patents before they published. *See* Stoll Decl., ¶¶ 3, 83-85. Thus, it was impossible for Zest to prevent their publication.

**C.    After the Jury Verdict Is Vacated by the New Trial Order, Zest Discovers the Concealed Patents and Other Walmart Patents Disclosing Zest's Trade Secrets.**

The jury trial began on March 29, 2021. Dkt. 355. At trial, ███████████████ ████████████████████████████████████████████████████. But Zest's experts and its counsel were deprived of the opportunity to present evidence, arguments, and opinions related to the Concealed Patents. Even though Walmart's concealment had hamstrung Zest's case at trial, the jury returned a verdict finding that Walmart willfully and maliciously misappropriated Zest's trade secrets, awarding Zest $60 million in compensatory damages for Walmart's misappropriation of Zest's trade secrets and another $50 million in exemplary damages.[5] Dkt. 368. This Court entered judgment that same day. Dkt. 376.

In September 2023, Walmart filed Defendant's Motion to Dismiss, or Alternatively, for New Trial and Accompanying Sanctions, and for Attorney's Fees. *See* Dkt. 507. Walmart asked this Court to dismiss this case as a sanction for misconduct and to award monetary sanctions

---

[5] Walmart's suppression of the Concealed Patents likely significantly undercut this damages award.

pursuant to its Foregone Defense. *See* Dkt. 508 at 10. It argued that "Walmart should have been able to raise the defense at trial that, even though it was within Zest's power to stop purportedly confidential information from being published, Zest did nothing. Zest's misconduct thus prevented Walmart from raising a meritorious trial defense." *Id*. at 35. Walmart made similar arguments to the Eighth Circuit in the two mandamus proceedings that followed. Yet in **none** of these filings before this Court or the Eighth Circuit did Walmart reveal the existence of the Concealed Patents, which directly implicated Walmart's Foregone Defense. This lack of candor towards both tribunals is patently sanctionable.

Left in total darkness by Walmart's concealment, on December 22, 2023, this Court ordered a new trial. *See* Dkt. 530. At the April 30, 2024 hearing on Walmart's motion for sanctions, Walmart argued that a factual error in former Zest counsel Jonathan Hardt's attorney declaration, Dkt. 247, prevented Walmart from asserting its Foregone Defense, even though Walmart corrected that error immediately in its next filing. Dkt. 248. At the hearing Walmart continued to conceal the existence of the Concealed Patents, which inevitably disclosed the trade secrets contained within them and would have done so regardless of whether the '396 Bohling Application ever published.

But following this hearing, while preparing for the new trial, current Zest counsel discovered that Walmart had obtained the Concealed Patents. Unable to locate the applications for the Concealed Patents in Walmart's production, on June 24, 2024, counsel for Zest sent a letter to Walmart's counsel asking if Walmart produced the applications for the Concealed Patents during discovery. *See* Ex. 16 to Dkt. 594. Walmart admitted that it had not. *See* Ex. 21 to Dkt. 594. Three weeks later, on July 18, 2024, Walmart's counsel responded that "we have not located the applications for U.S. Patent Nos. 11,078,020 and 11,388,325 in the production." *Id.*; *see also* Dkt.

582 ("Walmart's current counsel … has not located the applications in the productions to date."). Walmart has offered no explanation for its failure to produce the Concealed Patents, let alone reveal their existence to this Court or Zest despite their clear materiality. At any rate, Walmart cannot justify its suppression of evidence, which is akin to spoliation of evidence and should be treated as such (as discussed below).

Shockingly (but not surprisingly), current Zest counsel also discovered that **Walmart has continued to prosecute patents disclosing Zest's trade secrets throughout the previous trial and ongoing post-trial litigation—even beyond the Concealed Patents that are the focus of this motion.** Like the '396 Bohling Application and the Concealed Patents, each of these patents and patent applications names Joshua Bohling as its inventor and discloses Zest's trade secrets communicated in confidence to Walmart prior to this litigation. These additional patents include:

- **_The '314 Provisional Patent Application:_** On March 16, 2022, while the parties were in post-trial litigation around Walmart's Foregone Defense, Walmart filed the US2022/0210314 patent application ("the '314 Patent Application.") Zest SAMF, ¶¶ 1, 5. Like the '325 Concealed Patent, this application is titled _"Systems and methods for assessing products."_ Lanning Decl., ¶ 11.

- **_The '091 Patent Application:_** The same day that it filed the '314 Provisional Patent Application, Walmart filed Application No. 17/375,091 ("the '091 Patent Application"), titled _"Systems and Methods for Ripening Produce."_ Lanning Decl., ¶ 144. This patent application claimed the benefit of provisional application No. 62/746,614, filed on October 17, 2018, **_just before the initiation of fact discovery in this case. Id._** Again, Walmart never disclosed the existence of the '091 Patent

Application, even though it related to the Concealed Patents and was by Walmart's own definition responsive to Zest's RFP No. 101.

- ***The '314 Patent Application:*** The PTO published the '314 Patent Application on June 30, 2022. Zest SAMF, ¶ 5.

- ***The '299 Patent:*** The '314 patent application was allowed and issued as the '299 patent on August 22, 2023—***just one month before Walmart filed its Motion to Dismiss and for Sanctions*** regarding former Zest counsel's pre-publication knowledge of the '396 Bohling Application. Lanning Decl., ¶ 143 (patent issue date); Dkt. 508 (Walmart's Motion to Dismiss). The '299 patent is a continuation of the '325 Concealed Patent, meaning that it shares the same specifications and figures but has somewhat different claims. Lanning Decl., ¶ 143.

- ***The '956 Patent Application:*** This patent application, US 2021/0339956, derived from the '091 Patent Application. The patent application is currently pending before the PTO, and by all indications, ***Walmart is actively prosecuting this patent.*** *See* Lanning Decl., ¶ 144. The application is a continuation of the '020 Concealed Patent, meaning that it shares the same specification and figures but has somewhat different claims. *Id.*, ¶ 145.

## D.    Walmart Files for Summary Judgment Despite This Damning Evidence.

Walmart has never explained in any filing why it failed to produce the Concealed Patents or any of the related patents and patent applications listed above, or even why it failed to inform the Court of their existence. Instead, showing an utter lack of respect for this Court and the truth, Walmart moved for summary judgment on August 23, 2024. Dkt. 584. Walmart's motion does not acknowledge the existence of the Concealed Patents, even though Zest had called them to

Walmart's attention prior to its filing of the motion. In support of that pending motion, Walmart argues that Zest failed to try to stop the PTO's publication of the '396 Bohling Application and hence failed to take reasonable measures to protect the secrecy of its trade secrets. Dkt. 585. Walmart's utter failure to acknowledge the existence of the Concealed Patents—failing to produce them in its document productions, refusing to designate a deposition witness about them, concealing them through the close of discovery and trial, and filing post-trial motions for sanctions in which it *still* concealed them—deeply prejudiced Zest and misled both the Court and Zest. That misconduct is sanctionable.

## <u>RELEVANT STATUTORY PROVISIONS, RULES,</u>
## <u>AND INHERENT JUDICIAL AUTHORITY</u>

The power of a federal court to impose sanctions on a party or its counsel for discovery abuse derives from several sources of authority.

**A.     Federal Rules of Civil Procedure 26 and 37.**

Various provisions of the Federal Rules of Civil Procedure sanction discovery abuse. Rule 26(g) provides in pertinent part:

> (1) Every … discovery request, response, or objection must be signed by at least one attorney of record …. By signing, an attorney … certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
> …
> (B) with respect to a discovery request, response, or objection, it is: …
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> (iii) neither unreasonable nor unduly burdensome or expensive ….
> …
> (3) If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(1)(B)(ii)-(iii), (3).

Rule 37(c), provides as follows:

(1) If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(B) may inform the jury of the party's failure; and
(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1)(A)-(C).

## B.    28 U.S.C. § 1927

A statute, 28 U.S.C. § 1927, provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 is concerned with "the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). Section 1927 "permits sanctions when an attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Clark v. U.S. Postal Serv., In*c., 460 F.3d 1004, 1011 (8th Cir. 2006) (cleaned up).

## C.    Inherent Judicial Authority.

In addition to the foregoing provisions, this Court has the inherent power to impose sanctions for discovery abuse. "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id*. (quoting *Chambers v.*

*NASCO, Inc.,* 501 U.S. 32, 44–45 (1991)); *see Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745-750 (8th Cir. 2004) (affirming adverse-inference instruction). "Part of the purpose of the sanctioning power … is to control litigation and to preserve the integrity of the judicial process." *Nick v. Morgan's Foods, Inc*., 270 F.3d 590, 594 (8th Cir. 2001). A "district court has the discretion to exercise its inherent power to achieve the orderly and expeditious resolution of cases." *Vallejo v. Amgen, Inc*., 903 F.3d 733, 750 (8th Cir. 2018).

## <u>ARGUMENT</u>

Walmart should be sanctioned for its intentional and bad-faith discovery and litigation abuse. Walmart's choice to suppress the Concealed Patents—all the way through discovery, fact witness depositions, expert discovery and depositions, and a jury trial, and then to later move for a new trial based on its Foregone Defense and the '396 Bohling Application while failing to disclose the Concealed Patents—was intentionally misleading and sanctionable. Walmart hid the Concealed Patents for years and took this case on a multi-year post-trial detour based on its misrepresentations, both to this Court and the Eighth Circuit (twice). Throughout, Walmart maintained that the '396 Bohling Application was the only Eden/Muse-related patent application. That is, Walmart litigated this case for over five years knowing that it had suppressed critical evidence directly related to Zest's case-in-chief, Walmart's defenses, its request for a new trial, and its recent Motion for Summary Judgment.

Accordingly, this Court should sanction Walmart through (1) an adverse inference jury instruction as described below; (2) targeted discovery related to the Concealed Patents as described below; (3) a prohibition on Walmart raising its Foregone Defense; and (4) attorney's fees against Walmart and its former counsel for Zest's counsel's time expended responding to Walmart's post-trial motions, conducting post-trial discovery, and preparing for and trying the retrial.

An Arkansas jury has already agreed that Walmart willfully misled Zest and misappropriated its trade secrets. New facts now demonstrate that Walmart intentionally concealed even further wrongdoing that would have likely resulted in a much higher verdict. Walmart misled this Court and Zest again by egregiously moving for a new trial based on its Foregone Defense as related to the '396 Bohling Application, despite knowing that it had withheld two similar applications from Zest in order to prosecute those patents containing Zest's trade secrets to publication. Walmart's repeated deceptions should be sanctioned.

**A.    Walmart's Concealment of the '020 and '325 Applications Constitutes Spoliation.**

"'Spoliation' is the 'intentional destruction, mutilation, alteration, *or concealment* of evidence.'" *Anderson v. BNSF Ry. Co.*, 681 F. Supp. 3d 899, 910 (S.D. Iowa 2023) (quoting *Spoliation, Black's Law Dictionary* (11th ed. 2019)) (emphasis added). "To set forth a claim of spoliation, the moving party must show that the adverse party destroyed, altered, or concealed evidence, that the evidence was discoverable, and that the loss of evidence prejudiced the moving party." *Moore v. R.T.L. Const., Inc*., Nos. 09-3178 PAM/SER & 09-3177 PAM/FLN, 2011 WL 4738154, at *6 (D. Minn. Aug. 23, 2011) (citing *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004)). These requirements are clearly met in this case.

**1.    Walmart Committed Spoliation by Concealing Discoverable Evidence from Zest and the Court.**

It is well established among district courts in the Eighth Circuit that concealment is spoliation. *See Anderson*, 681 F. Supp. 3d at 910 (S.D. Iowa 2023) (imposing sanctions); *Blazer v. Gall*, No. 1:16-CV-01046-KES, 2019 WL 3494785, at *2 (D.S.D. Aug. 1, 2019) (same); *Moore*, 2011 WL 4738154, at *6 (D. Minn. 2011) (recommending sanctions), report and recommendation adopted, 2011 WL 4729861 (D. Minn. Oct. 6, 2011); *Cenevo Corp. v. So. Graphic Sys., Inc*., No.

08-5521 (JRT/AJB), 2010 WL 3893680, *9 (D. Minn. June 18, 2010) (same), report and recommendation adopted, 2010 WL 3893709 (D. Minn. Sept. 30, 2010).

In *Moore*, for example, a Magistrate Judge recommended sanctions because defendant RTL "failed to timely produce and concealed key evidence." *Moore*, 2011 WL 4738154, at *5; *see also id.* at *7 ("Throughout this litigation, RTL withheld and concealed Personnel Updates and employee files responsive to Plaintiffs' document requests."). The judge observed that "[t]o set forth a claim of spoliation, the moving party must show that the adverse party destroyed, altered, *or concealed* evidence, that the evidence was discoverable, and that the loss of evidence prejudiced the moving party." *Id.* at *6 (emphasis added); *see also id.* ("Sanctions are appropriate for the concealment and alteration of evidence."). The District Court adopted the Magistrate Judge's recommendation, stating that "[a]s to the issue of whether RTL engaged in sanctionable conduct, the Court agrees with Magistrate Judge Rau that RTL improperly withheld key documents from production …." *Moore v. R.T.L. Const., Inc.*, 2011 WL 4729861, at *2 (D. Minn. Oct. 6, 2011) (awarding sanctions "tailored to [defendant's] misconduct," including directing the jury's factual finding on relevant issues and awarding attorney's fees).

Other courts agree that the nonproduction or concealment of evidence is sanctionable as spoliation. Indeed, the Supreme Court recognized long ago that concealment of documents is sanctionable. *See The Olinde Rodrigues*, 174 U.S. 510, 528 (1899) ("Doubtless the spoliation of papers, and, though to a lesser degree, their concealment, is theoretically a serious offense, and authorizes the presumption of an intention to suppress incriminating evidence, though this is not an irrebuttable presumption.") (citing *The Pizzaro*, 15 U.S. 227, 241 (1817) (Story, J.)). This view has been widely adopted by circuit courts and in legal treatises. *See, e.g.*, *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) ("under certain circumstances, nonproduction of

evidence is rightfully characterized as spoliation" since "a party's failure to produce a document can have the same practical effect as destroying it"); *United States v. Rodriguez-Sanchez*, 741 F. App'x 214, 222 (5th Cir. 2018) (concealment of evidence is spoliation); *J.S. Sweet Co. v. Sika Chemical Corp.*, 400 F.3d 1028, 1032 (7th Cir. 2005) (same, applying Indiana law); FEDERAL TRIAL HANDBOOK: CIVIL § 72:16 (2024-2025 Edition) ("Spoliation is the destruction, mutilation, alteration, concealment, or failure to preserve evidentiary materials for another's use in pending or reasonably foreseeable litigation."); 27 C.J.S. *Discovery* § 135 ("'Spoliation' typically refers to the destruction or concealment of evidence by one party to impede the ability of another party to litigate a case ….").

Additionally, Walmart's former counsel (and perhaps current) violated the Arkansas Rules of Professional Conduct's requirement of "candor toward the tribunal" from lawyers by endorsing Walmart's spoliation. *See* Ark. Rule of Prof. Conduct 3.3; *see also* Rule 3.4 (barring a lawyer from "unlawfully obstruct[ing] another party's access to evidence" or "conceal[ing] a document or other material having potential evidentiary value").

Here, there is no doubt that Walmart and its counsel concealed discoverable evidence. Zest had served a discovery request for patents and patent applications relating to the Eden System— and Walmart had *agreed to produce them. See* Dkt. 460-2 at 8; Ex. 24 to Dkt. 594. Walmart has admitted that the Concealed Patents related to the Eden System but that it did not produce them. *See* Dkt. 582 at 9 (stating that the applications were "other work on Eden that had been patented"), Ex. 21 to Dkt. 594; Dkt. 582 at 8 n.7 ("Walmart's current counsel … has not located the applications in the productions to date."). There is no dispute that the Concealed Patents were responsive to Zest's discovery requests, that Walmart agreed to produce them, and that Walmart failed to do so.

Walmart—not just its counsel—was directly involved in this misconduct. Walmart's own *fact witnesses* (such as Mr. Bohling) undisputedly knew about the Concealed Patents; Mr. Bohling was a named inventor. Moreover, Walmart's in-house legal department closely monitors and is highly involved in litigation against the retailer. There is every possibility that in-house counsel (reporting to Walmart executives) directed the concealment of these patents. *See Sec. Nat'l Bank of Sioux City, IA v. Jones Day*, 800 F.3d 936, 942 (8th Cir. 2015) (noting that "[t]he purpose of sanctions is to 'penalize those whose conduct may be deemed to warrant' them and 'deter those who might be tempted to such conduct in the absence of such a deterrent'") (quoting *Nat'l Hockey League v. Metro Hockey Club*, 427 U.S. 639, 643 (1976)).

Nor has Walmart or its counsel ever offered *any* justification for their failure to produce the Concealed Patents. Even after Zest brought the Concealed Patents to current counsel's attention, Walmart doubled down, filing a summary judgment motion that depends on the non-existence of the Concealed Patents. Walmart has offered no explanation at all for its concealment of key evidence from both this Court and Zest—not in correspondence between the parties, not in response to Zest's motion to allow additional discovery, and not in Walmart's own briefing on that motion. It has simply ignored the existence of the Concealed Patents, hoping this Court would too.

It is too late for Walmart to try to claim that its failure to produce the Concealed Patents was an innocent mistake (it clearly wasn't) or that the documents were not responsive to RFP No. 101 (they clearly were, by Walmart's own admission). Instead, Walmart has taken the position the "existence" of the Concealed Patents was "disclosed" in other "documents produced to Zest" and that "[t]he patent applications were even mentioned at trial." Dkt. 582 at 9. Hiding cryptic hints in the trial record fails the obligation of candor. Under the Federal Rules, it was Walmart's affirmative duty to produce the applications in response to Zest's RFP No. 101, as it agreed to do,

but Walmart has conceded that "the patent applications do not appear to have been produced." *Id*.

at 8.

### 2.     Walmart's Failure to Produce the Concealed Patents Prejudiced Zest.

"The requisite element of prejudice is satisfied by the nature of the evidence [concealed]

in this case." *Stevenson*, 354 F.3d at 748. Indeed, the Eighth Circuit has held that it "is a given"

that nonproduction of documents related to the defendant's use and disclosure of the plaintiff's

documents "would disadvantage" the plaintiff "in a case hinging on [the defendant's] retention

and disclosure of [the plaintiff's] confidential information." *Hallmark Cards, Inc. v. Murley*, 703

F.3d 456, 461 (8th Cir. 2013). A plaintiff "would undoubtedly have benefitted" from using such

documents "at a trial about the retention and disclosure of confidential materials." *Id.* at 462.

Zest undeniably suffered prejudice due to Walmart's suppression and spoliation of the

Concealed Patents. First, Zest obviously suffered prejudice in conducting fact discovery, preparing

expert reports, and presenting its case at trial, because it could not use the Concealed Patents (or

surrounding facts) to investigate and make its case of Walmart's willful misappropriation of Zest's

trade secrets, present expert opinions, and seek what would have likely been a much higher

damages award. Walmart's spoliation also prejudiced Zest in post-trial litigation, because Zest

could not use the Concealed Patents to counter Walmart's Foregone Defense justification for a

new trial. And, without Court intervention, Zest will be prejudiced yet again if it is not allowed to

engage in discovery before the new trial of evidence in Walmart's possession relating to its

spoliation of the Concealed Patents and if it does not impose severe other sanctions.

### B.     Walmart's Spoliation Warrants Sanctions.

"A court's inherent power includes the discretionary 'ability to fashion an appropriate

sanction for conduct which abuses the judicial process.'" *Stevenson*, 354 F.3d at 745 (quoting

*Chambers*, 501 U.S. at 44-45). This Court has "discretion to choose the most appropriate

sanction under the circumstances." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999). The Court "is not constrained to impose the least onerous sanction available." *Id.*; *see also Blazer v. Gall*, No. 1:16-CV-01046-KES, 2019 WL 3494785, at *5 (D.S.D. Aug. 1, 2019) ("When determining proper sanctions, the remedy should match the wrong.") (citing Fed. R. Civ. P. 37(e)(1)).

Zest seeks four categories of sanctions here: (1) an adverse inference jury instruction; (2) targeted discovery related to the Concealed Patents; (3) a prohibition on Walmart raising its Foregone Defense (that Zest could have stopped publication of Walmart's patents); and (4) attorney's fees. Each of these sanctions is appropriate and targeted to Walmart's misconduct.

### 1.    An Adverse Inference Jury Instruction Is Warranted Because Walmart Spoliated the Concealed Patents Intentionally and in Bad Faith.

First, the jury should be instructed that Walmart violated its discovery obligations by failing to produce the Concealed Patents and that the jury may presume (subject to reasonable rebuttal) that the Concealed Patents and the evidence surrounding them are adverse or detrimental to Walmart. *See Stevenson*, 354 F.3d at 743, 750 (affirming adverse-inference instruction that "[y]ou may, but are not required to, assume that the contents of the [missing evidence] would have been adverse, or detrimental, to the defendant"). Specifically, Zest requests that the Court instruct the jury that: "the Court has determined that during the discovery period in this case, Walmart failed to produce two patents, the '020 and '325 patents, and their related patent applications, all known as the 'Concealed Patents,' and that Walmart should have produced those documents as they are relevant to the issues in this case. You may, but are not required to, assume that the contents of these two patents and their related patent applications are adverse or detrimental to Walmart."

"[I]n a case involving the alleged spoliation of evidence, a district court is required to make two findings before an adverse inference instruction is warranted: (1) there must be a finding of intentional destruction [or concealment] indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Hallmark Cards*, 703 F.3d at 460 (cleaned up); *see id.* at 461 ("[A] district court must issue explicit findings of bad faith and prejudice prior to delivering an adverse inference instruction."). In the spoliation context, "[i]ntent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (cleaned up).

Both of the *Hallmark* requirements are met here. As discussed *supra*, Part A(2), Zest was prejudiced by Walmart's failure to produce. And at least five aspects of the circumstances and timing of events reveal that Walmart's failure to produce was intentional.

<u>First</u>, Walmart began its patent campaign less than a month after Zest filed this case and its motion for preliminary injunction, putting Walmart on notice that ███████████████████ ███████████████████. Rather than prompting Walmart to stop misappropriating, this realization triggered Walmart to *expand* its misappropriation by filing patent applications on the technology for itself and simultaneously destroy the trade secret value to Zest by putting into motion a chain of events that would inevitably lead to the publication of Zest's trade secrets. *See* Dkts. 1, 18, 22. Despite actual notice, and **despite a pending motion to stop Walmart from disclosing *that exact information*, Walmart disclosed Zest's trade secrets by filing the '396 Bohling Application *less than three weeks later*, on August 27, 2018. And within** a matter of months (when Walmart was fully engaged in this case, including negotiating the agreed

protective order), on October 17, 2018, Walmart fired its second torpedo, filing the provisional application that led to the '020 Concealed Patent. The agreed protective order governing the litigants in this case was tendered to the Court on November 6, 2018. Dkt. 81. That is, Walmart committed to this Court and Zest to keep Zest's confidential information protected while at the same time sending it out the side door to the PTO. This timing demonstrates Walmart's intentional disregard for the legal process and willful disclosure and misappropriation of information it *knew* constituted Zest's trade secrets.

Second, Walmart failed to produce the Concealed Patents even though Walmart was actively pursuing them during fact discovery. Walmart made its production responsive to Zest's RFP No. 101 on February 28, 2019—approximately one week after filing the application that led to the '020 Concealed Patent (on February 20, 2019) and the provisional application that led to the '325 Concealed Patent (on February 25, 2019). *See* Background Section, *supra.* By Walmart's own admission, the Concealed Patents were relevant, discoverable evidence responsive to Zest's RFP No. 101. But Walmart did not produce the Concealed Patents.

Of course, the actual filing of the applications for the Concealed Patents was only one step in a process Walmart had surely started long before. Walmart would have had to work with patent prosecution counsel to draft the applications, which would necessarily have included discussions between Mr. Bohling, the other named inventors, and patent prosecution counsel. Indeed, it seems likely that process also included Walmart's outside counsel in this litigation, because the '020 application included citations to many of the filings from this case. Because the Concealed Patents refer to this litigation hundreds of times, someone involved in this litigation must have coordinated with patent prosecution counsel to identify the relevant filings—but that person concealed the resulting patent applications from discovery in this case.  Indeed, **Walmart itself filed documents**

**with the PTO highlighting that the applications for the Concealed Patents "relate[] to" this case**. *See* Ex. D at 15; Ex. E at 15. But even as Walmart flagged the connection between the Concealed Patents and this case to the PTO, it never told this Court or Zest that the Concealed Patents even *existed*.

When Walmart was preparing to produce patent applications responsive to Zest's RFP No. 101, with the '396 Bohling Application in hand, any responsible process for completing the collection of relevant documents would have involved asking the named inventors (including Mr. Bohling) whether they were working on additional patent applications and checking with Walmart's patent prosecution counsel. Assuming Walmart and its counsel took those basic steps, which surely they must have, they were aware of the Concealed Patents. Indeed, Mr. Bohling testified that ████████████████████████████████████████████████████ ████████████████████████████████████. *See* Ex. C (Bohling Dep. Tr.) at 152:4-10. Thus, if Mr. Bohling was being truthful, Walmart's counsel must have become aware of Walmart's Concealed Patents at that time—if it was not already aware of them.

<u>Third</u>, Walmart's counsel was surely aware of the Concealed Patents in order to defend Mr. Bohling at his deposition in August 2019. Mr. Bohling's deposition was heavily focused on the '396 Patent Application. In preparing him for deposition, Walmart's counsel would doubtless have asked him what patent applications he had pursued. Even the most basic preparation on those topics would have revealed the existence of the Concealed Patents. Yet Walmart said nothing and continued to conceal them throughout depositions, expert discovery, and trial. Indeed, Walmart's refusal to designate a 30(b)(6) witness to provide testimony about its patent applications related to Eden or the monitoring of fresh food—testimony that would have revealed the existence of the

Concealed Patents—in hindsight reflects its knowledge and scheme to suppress production of the Concealed Patents.

Fourth, even if Walmart's *counsel* somehow had not learned about the Concealed Patents during discovery in this case, Walmart's *witnesses* undisputedly knew about them: Mr. Bohling was a named inventor on both of the Concealed Patents. Under governing Arkansas law, the knowledge of an "employee acquired in the ordinary discharge of his duties is ordinarily to be imputed to the corporation." *Hill v. State*, 487 S.W.2d 624, 631 (Ark. 1972); *see also Multi-Craft Contractors Inc. v. Perico Ltd.*, 239 S.W.3d 33, 44 (Ark. App. 2006) ("It is well established . . . that a corporation is affected by knowledge of its agent"); *Ritchie Grocery Co. v. Aetna Cas. & Sur. Co.*, 426 F.2d 499, 500 (8th Cir. 1970) (applying Arkansas law and noting that "the general rule is that knowledge of an agent acquired in the ordinary discharge of his duties for the corporation is ordinarily to be imputed to the principal"). Mr. Bohling's role as a named inventor proves Walmart's awareness of the Concealed Patents as a matter of law.

Fifth, vindication of the Court's authority and the integrity of the judicial process is at stake here. Walmart is a frequent litigant in Arkansas state and federal courts. Yet it has been caught cheating the process in significant ways over the last few years. In 2018, Judge Tim Brooks found that Walmart had "repeatedly met with this Court's disapproval, extreme frustration, and sometimes even sanctions"; that Walmart had "abused the discovery process"; and had "failed even remotely to comply" with discovery production orders Judge Brooks had entered. *Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, No. 5:14-cv-5262, 2018 WL 1597976, *23-24 (W.D. Ark. Mar. 31, 2018). Stopping short of finding Walmart's conduct intentional, Judge Brooks did say that "Walmart's litigation practices in the case have likely been the most vexatious, oppressive, and abusive to have occurred in any case before the undersigned in this Court." *Id.* Earlier this year

(on the eve of trial) in another case, Judge Brooks found that Walmart had inappropriately withheld documents it had promised to produce; Judge Brooks warned counsel for Walmart they "had best explain [any remaining lacking production] to the Court immediately (in plain words this time), or risk being personally sanctioned along with their client." *London Luxury, LLC v. Walmart, Inc.*, No. 5:22-cv-5059, 2024 WL 1253407, *2 (W.D. Ark. Mar. 22, 2024).[6] Now, again, Walmart has been caught engaging in vexatious litigation conduct in Arkansas federal courts. Indeed, the conduct at issue here is even more extreme, because Walmart *never* produced or disclosed the Concealed Patents at any point in this litigation—not in document productions, not in depositions, not at trial, and not in post-trial motions. Further, on these facts, there is clear evidence that both Walmart and its counsel were aware of the documents they concealed. Stern measures are called for when a frequent litigant disregards its obligations to the Court.

The timing of a spoliator's actions may suffice to demonstrate the requisite intent to suppress the truth. *See Hallmark Cards*, 703 F.3d at 461 ("Murley's desire to suppress the contents of the electronic evidence at issue is reasonably suggested by the fact that she retained Hallmark-related documents five years past her termination but deleted them in the forty-eight hours prior to an inspection of her private computer"); *Ragan v. Stafford*, No. 4:16-cv-4097, 2017 WL 4764620, at *3 (W.D. Ark. Oct. 20, 2017) ("Defendant's removal and disposal of the fence shortly after the commencement of litigation creates a sufficiently strong inference of intent. Thus, upon review of the record and the circumstances of this case, the Court finds that Plaintiff has demonstrated that Defendant intentionally destroyed relevant evidence in furtherance of a 'desire to suppress the

---

[6] The sanctions question for Walmart's discovery misconduct in *London Luxury* remains pending before Judge Brooks. Despite the cited order, Walmart continued to trickle documents out throughout the two-week trial. *Cuker*, *London Luxury*, and this case are high-profile, well-funded litigation efforts. If Walmart is being caught in these cases engaging in this misconduct, what is happening in its other cases?

truth.'"). Given the sequence of events, it is impossible to believe that Walmart's failure to produce the Concealed Patents to Zest was anything but intentional.

### 2. Walmart Should Be Ordered to Participate in Targeted Discovery Related to the Concealed Patents.

Second, in addition to an adverse inference instruction, Walmart should be ordered to respond to targeted discovery to remedy its failure to produce the Concealed Patents during the discovery period in this case. Walmart may be subject to this sanction regardless of its intent. The Eighth Circuit has "affirmed the imposition of sanctions" other than an adverse inference even when "there was no bad faith finding regarding the spoliation of evidence but only a finding that the spoliators (including plaintiff's counsel) 'knew or should have known' that the evidence would be relevant to imminent litigation." *Stevenson*, 354 F.3d at 747 n.2 (citing *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993)). This sanction would help remedy the inequities that Walmart's spoliation has created, as the Court has ordered Zest to produce privileged documents and work product ahead of the new trial. *See, e.g.*, Dkts. 462, 484, 489, 492.

Absent Court intervention, Walmart will continue to benefit from its misconduct through the ability to use Zest's privileged documents at trial. The Court should order Walmart to produce all documents and communications relating to the Concealed Patents, whether or not the documents are privileged or work product; reopen discovery relating to the '396 Bohling Application and the Concealed Patents; and allow Zest to depose Walmart in-house and external (present and former) counsel on their knowledge of the Concealed Patents.

### 3. Walmart Should Be Barred from Benefiting from Its Spoliation via its Foregone Defense.

Third, sanctions are also appropriate to stop Walmart from benefiting from its own misconduct through its Foregone Defense. Walmart's Foregone Defense is based on the notion that Zest could have somehow stopped the publication of the '396 Bohling Application after

Walmart produced it during discovery. But this is complete hypocrisy when, *because of Walmart's own misconduct*, Zest had no knowledge of the Concealed Patents and therefore could not possibly have stopped them from publishing. Walmart should not be able to sidestep its own failure to produce and attempt to benefit from its concealment of relevant evidence. As a sanction for Walmart's spoliation, the Court should deny Walmart's pending motion for summary judgment, which relies on the Foregone Defense, and bar Walmart from raising the Foregone Defense at trial.[7]

### 4.    This Court Should Award Zest its Attorney's Fees.

Finally, this Court should award Zest its attorney's fees expended responding to Walmart's motion for new trial, related discovery, and in preparing for the January 2025 trial. "Federal courts sitting in diversity can use their inherent power to assess attorney fees as a sanction for bad faith conduct even if the applicable state law does not recognize the bad faith exception to the general rule against fee shifting." *Schlafly v. Eagle Forum*, 970 F.3d 924, 937 (8th Cir. 2020) (quoting *Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1435 (8th Cir. 1997)). The inherent authority to issue this sanction does not depend on whether this Court enters a new judgment in favor of Zest now, or whether Zest ultimately prevails at a new trial in January 2025. *Id.* Instead, it depends on Walmart's conduct "during the litigation." *Id.* (quoting *Chambers*, 501 U.S. at 53). Such an award is "paid to the opposing party as compensation for the attorney's fees incurred as a direct result of the unethical behavior." *Id.* (quoting *Pls.' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 808 (8th Cir. 2005)).

---

[7] Although this Court has already ordered the parties retry the case, vacating the order granting a new trial would also have been an appropriate sanction for Walmart's failure to produce the Concealed Patents.

This Court also has statutory authority to award Zest its attorney fees from Walmart's prior counsel under 28 U.S.C. § 1927 for "abuse of court processes." *Roadway Express, Inc.*, 447 U.S. at 762. Walmart has been "multipl[ying] the proceedings" in this case "unreasonably and vexatiously" for more than three years since the jury verdict was entered. Zest may also be awarded fees from Walmart and its counsel under Rules 26(g)(3) and 37(c)(1)(A) of the Federal Rules of Civil Procedure. *See supra* at 15-16.

Zest has been litigating based on Walmart's new trial motion and is preparing for a new trial in January 2025. Zest should not bear those costs, and whether or not this Court grants any other sanction, Walmart should pay Zest's attorneys' fees incurred following from the new trial order. If Walmart had not deceptively withheld the two Concealed Patents, and concealed from the Court and Zest the fact that those patents misappropriated Zest's trade secrets, it would have been clear no new trial was warranted. Every dollar Zest has expended since Walmart's motion for new trial is a result of Walmart's choice to withhold discovery from Zest and mislead this Court.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Zest's motion for sanctions. Zest respectfully requests (1) an adverse inference jury instruction; (2) targeted discovery related to the Concealed Patents; (3) a prohibition on Walmart raising its claim that Zest should have attempted to stop or could have stopped publication of its trade secrets contained in Walmart's patents; and (4) attorney's fees expended responding to Walmart's post-trial motions, conducting post-trial discovery, and preparing for and trying the retrial.

Respectfully submitted,

/s/ *Patrick Ryan*
Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
pryan@bartkolaw.com
smctigue@bartkolaw.com
krichard@bartkolaw.com
nfelsen@bartkolaw.com

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
scott@mcdanielwolff.com

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
kate@bluepeak.law

Dated: October 23, 2024            *Admitted *pro hac vice*