IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS
HOLDINGS LLC; AND RISKON
INTERNATIONAL, INC.,

    Plaintiffs,

v.                                   No. 4:18-cv-500-JM

WALMART INC. f/k/a
WAL-MART STORES INC.,

    Defendant.

_____/

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE
TO ADMIT THE CONCEALED PATENTS AND RELATED EXPERT OPINIONS**

Plaintiffs ("Zest") submit this reply in support of *Plaintiffs' Motion in Limine for Admission of the Concealed Patents and Related Opinions of Experts Mark Lanning, Robert Stoll, and Stephen Becker* (Dkt. 653) ("Motion in Limine" or "MIL") and in reply to *Walmart's Response to Zest's Motion in Limine* (Dkt. 665) ("Response"). Walmart's *sole* argument for excluding the Concealed Patents is their supposed irrelevance. But the Concealed Patents easily clear the low bar of relevance and so should be admitted at the upcoming trial. Walmart has not come close to proving otherwise.

**ARGUMENT**

**I.**     **Zest's Motion in Limine Is Not a Request for Reconsideration, But Instead Deserves Full and Fair Consideration.**

Zest's Motion in Limine seeks to establish the admissibility of the Concealed Patents and the related opinions of Zest's experts. Walmart argues that Zest's MIL should be seen as a motion for reconsideration and decided under the standard for such motions. *See* Response at 2-3. That

argument fails. Before filing the MIL, Zest had never moved for admission of the Concealed Patents. Because this Court has not previously had such a motion before it, Zest's MIL should be adjudicated *de novo*. And even if the MIL were treated as a motion for reconsideration, it should still be granted. It would be a manifest error to exclude the Concealed Patents from the trial. To avoid such error, the Concealed Patents should be admitted.

As Zest acknowledged in its MIL (at 6), this Court commented at the hearing in November 2024 that "I'm denying Walmart's request on motion for summary judgment on the trade secret claim. We are essentially going to retry the same case with nothing more than the additional defense that Zest may, could have stopped the publication of the patent, and that's the only thing that's going to be different about the case." 11/14/24 Hrg. Tr. 14:8-13. The Court went on to comment "But we're not going to bring in the new patents." *Id*. at 14:24-25. The Court made these comments, however, in the context of denying Walmart's motion for summary judgment. And the Court did not have before it a pending motion to admit the Concealed Patents.

This Court also stated, in a December 2024 order issued in connection with its review of the expert reports of Mark Lanning, James Pooley, and Robert Stoll, that "[t]he only patent to be referenced at the trial is the Bohling patent. It is the only patent relevant to the case." Order ¶ 2 (Dkt. 641). Yet the Court did not have before it a motion in limine to admit the Concealed Patents or a *Daubert* motion to exclude Zest's expert opinions about the Concealed Patents. Rather, the Court's order came in response to the parties' procedural motions regarding the schedule for expert discovery. *See* Dkts. 630, 635. Zest has not previously moved for admission of the Concealed Patents, and the briefing on the instant Motion in Limine is the first time the parties have briefed the merits of the admissibility of the Concealed Patents and related expert opinions. Thus, Zest's MIL should be given *de novo* consideration. *Cf. Maale v. Francis*, 258 F.R.D. 533, 539 n.2 (S.D.

Fla. 2009) (motion to quash was not deemed a motion for reconsideration even though it raised issues decided in prior orders on previous motions); *United States v. Hylton*, No. 2:17-cr-00086-HDM-NJK, 2020 WL 451682, at *2 (D. Nev. Aug. 5, 2020) (motion to suppress was treated as a motion for reconsideration because "[t]he court has already entertained a motion to suppress"). And the MIL should be granted because, as shown next, the Concealed Patents are indeed relevant and admissible.

II.     **The Concealed Patents Are Relevant Evidence.**

The Concealed Patents are relevant to several key issues to be tried in this case. Walmart does not dispute that the "threshold for relevance" under Federal Rule of Evidence 402 "is quite minimal." *United States v. Croghan*, 973 F.3d 809, 824 (8th Cir. 2020). And Walmart cannot show that the Concealed Patents fail to clear the low hurdle of relevance.[1]

A.     **They Are Relevant to Walmart's Liability.**

The Concealed Patents are relevant evidence of Walmart's liability for misappropriating Zest's trade secrets. *See* MIL at 8-9. In response, Walmart argues that Zest "only ever had one trade secret—the entire Zest Fresh solution." Response at 3. Walmart argues that the Concealed Patents "involved ripening chambers or boxes with cameras, which bear no resemblance to the intelligent ripening system that Zest claimed was its trade secret." *Id*.

---

[1] Walmart has also unilaterally decided that the Concealed Patents do not clear the even lower hurdle of *discoverability*. *See Impact, LLC v. United Rentals, Inc.*, No. 4:08CV00430 JLH, 2009 WL 413713, at *2 (E.D. Ark. Feb. 18, 2009) ("Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"). Walmart has improperly refused to comply with Zest's discovery requests relating to the Concealed Patents. *See* Walmart's Responses to Zest's Tenth Set of RFP's, Responses to RFP Nos. 243-244 & 246-257) (attached hereto as Exhibit A). Rather than burden the Court with a motion to compel at this time, Zest will pursue the requested discovery if the instant MIL is granted.

The Concealed Patents cannot be excluded as irrelevant, however, based on Walmart's non-binding, self-serving view of what those patents disclose. It is for the jury to decide whether the Concealed Patents reveal Zest's trade secrets; the only question here is whether the Concealed Patents should be admitted as evidence relevant to that question. And they clearly are. Zest's expert Mark Lanning has opined that the Concealed Patents disclose Zest's trade secrets, and Walmart has not moved to exclude that opinion under *Daubert* (or even disclosed contrary expert opinion of its own). Walmart is free to disagree with Zest about what the Concealed Patents reveal, but that debate is for the jury to resolve and provides no basis for excluding the patents as irrelevant.

Furthermore, Walmart is wrong about what the Concealed Patents reveal. They do indeed disclose the Zest Fresh system—the same end-to-end freshness calculation and prediction system disclosed in the '396 Bohling Application.[2] Walmart would have this Court believe that the Concealed Patents describe nothing more than "ripening chambers" and "boxes with cameras." Response at 3. But they reveal much more than that. In support of its MIL, Zest submitted a new declaration from its expert Mark Lanning. *See Declaration of Mark Lanning in Support of Plaintiffs Motion in Limine for Admission of the Concealed Patents and Related Opinions* ¶ 51 (Ex. J to Zest's MIL) (Dkt. 653 at PDF pages 295-334). As Mr. Lanning explains in his declaration, "Zest's solution is an end-to-end solution that uses pre-harvest data, harvest data, post-harvest data, and pallet-level temperature tracking data to calculate freshness values and generate shelf life predictions. Zest's solution also describes various uses for these values and predictions

---

[2] To be clear, Zest does not concede that the Zest Fresh solution as disclosed in the '396 Bohling Application is Zest's one and only trade secret. Zest defined its trade secrets in its answer to Interrogatory No. 1, and Zest's answer was not so limited. Ex. B,

throughout the supply chain." *Id*. ¶ 51. Mr. Lanning explains that the Concealed Patents,[3] like the '396 Bohling Application, used Zest's confidential information and disclosed the Zest Fresh solution. "Similarly to the '396 Bohling Application, the entire '020 patent, discloses an end-to-end system that uses pre-harvest data, harvest data, post-harvest data, and temperature tracking data to calculate freshness indicator values and generate product profiles." *Id*. ¶ 54. "The end-to-end system of the '020 patent is disclosed throughout the specification and the claims, which describe gathering data on the produce during all phases of the system, and generating a profile and schedule using that data. This includes data gathered from the field (i.e. pre-harvest and harvest data), data gathered during transport, and data gathered at a distribution center (DC) or warehouse[.]" *Id*. ¶ 55. After further painstaking analysis of the '020 patent, *see id*. at ¶¶ 56-80, Mr. Lanning concludes as follows: "In sum, the '020 patent discloses an end-to-end system *that is extremely similar* to the end-to-end system disclosed in the '396 Bohling Application. It is further my opinion that Walmart and Mr. Bohling must have used essentially the same Zest Confidential Information to prepare and file the '020 patent as with the '396 Bohling Application." *Id*. ¶ 81 (emphasis added).[4] Mr. Lanning's analysis of the second Concealed Patent, the '325 patent, proceeds along the same lines. *See id*. ¶¶ 82-100.

Walmart's Response does not engage Mr. Lanning's analysis despite the prominence given to it in Zest's Motion in Limine. *See* MIL at 8. Because Mr. Lanning's analysis is undisputed—not to mention correct—it cannot be said that the Concealed Patents are irrelevant to Walmart's liability as a matter of law. Accordingly, the Concealed Patents should be admitted as relevant

---

[3] The two Concealed Patents are the '020 patent and the '325 patent.

[4] "Joshua Bohling is the lead inventor listed on the '396 Bohling Application," and he "is also the sole inventor on the '020 patent and the lead inventor listed on the '325 patent[.]" Lanning Decl. ¶ 42 (Ex. J to Zest's MIL).

evidence going to Walmart's liability for its misappropriation of the Zest Fresh solution. The Concealed Patents, like the '396 Bohling Application, disclose Zest's end-to-end freshness calculation and prediction system.

The Concealed Patents and Mr. Lanning's opinions are relevant and admissible evidence of Walmart's liability in this case.

### B. They Are Relevant to Walmart's PTO Defense.

The Concealed Patents are also extremely relevant to Walmart's new PTO defense. This Court's intention "to retry the same case with nothing more than the additional defense that Zest may, could have stopped the publication of the patent," 11/14/24 Hrg. Tr. 14,[5] makes it necessary to admit the Concealed Patents to avoid gross unfairness to Zest. Walmart's new defense contends that Zest allegedly failed to take reasonable measures to protect its secret information because Zest should have tried to prevent the U.S. Patent and Trademark Office ("PTO") from publishing the '396 Bohling Application. The Concealed Patents are highly relevant to that new defense because, even if Zest could have stopped the PTO from publishing the '396 Bohling Application, it would have made no difference—Zest's trade secrets would still have been disclosed by the PTO's publication of the Concealed Patents. And Zest could not have stopped the PTO from publishing the Concealed Patents because Walmart did not disclose their existence to Zest. *See [Proposed] Expert Report of Robert L. Stoll Regarding Zest's Reasonable Efforts to Protect the Secrecy of its Confidential Information* ¶¶ 101-121 (Ex. H to Zest's MIL) (Dkt. 653 at PDF pages 268-274).

---

[5] Walmart has no response to Zest's showing that, under binding precedent, a new trial "proceeds *de novo*." *Day v. Amax*, 701 F.2d 1258, 1263 (8th Cir. 1983). This means a litigant "is not limited at a new trial to the evidence presented at the first trial, but is free to strengthen its case in any way it can by the introduction of new evidence." *United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 243 (1957). *See* MIL at 14 (citing these and other authorities).

6

Confronted with the clear relevance of the Concealed Patents to its PTO defense, Walmart manages to muster only a one-paragraph response. *See* Response at 5. Walmart states: "For this argument to work, Zest would need to allege that these patents disclose *the same trade secret* as the Bohling Application (the Zest Fresh solution). Zest has not made that claim, nor could it given the subject matter of those patents." *Id*. (emphasis in original). Yet the Concealed Patents *do* disclose the same trade secret as the '396 Bohling Application, and Zest *has* made that claim, as Zest's MIL and Mr. Lanning's analysis show.

Walmart also argues that its PTO defense turns on "whether Zest took reasonable *measures* to protect the trade secret, not whether the efforts would have worked." *Id*. (emphasis in original). This is nonsensical. If stopping the PTO from publishing the '396 Bohling Application would not have protected Zest's secret information, it would be reasonable not to make the effort to do so. There would be no point in pursuing a measure that could not succeed in protecting the trade secrets. Thus, the Concealed Patents are clearly relevant to question whether Zest took reasonable measures in this case. At all events, because it cannot be said as a matter of law that the Concealed Patents are irrelevant to the reasonable-measures issues, that evidence must be admitted to avoid subjecting Zest to an unfair trial.

Because they are relevant and necessary to rebut Walmart's PTO defense, the Concealed Patents and Mr. Stoll's opinions should be admitted.

**C.    They Are Relevant to Zest's Damages.**

Finally, the Concealed Patents are relevant to the proper determination of Zest's damages, including the calculation of the reasonable royalty rate. *See* MIL at 10-13. Zest's damages expert, Dr. Stephen Becker, has submitted a report explaining why the Concealed Patents affect the royalty rate. *See [Proposed] Supplemental Expert Report of Stephen L. Becker, Ph.D*. (Ex. I to Zest's

7

MIL) (Dkt. 653 at PDF pages 282-294) ("Becker Supp. Report"). Dr. Becker explains that the Concealed Patents, if admitted into evidence, would cause him to double the amount of the rate he testified to in the first trial, from $7 per pallet to $14 per pallet. *See id*. ¶¶ 22-25.[6]

Walmart argues, once again, that "this fails because it ignores that the only trade secret is the entire Zest Fresh solution, which Zest does not allege was disclosed in these patents." Response at 6. But Walmart's thrice-made argument is defeated by Mr. Lanning's analysis, as discussed above.

Walmart also states that "Mr. Beckers [sic] 2x 'enhancement' was also previously stricken as arbitrary." Response at 6 (citing Dkt. 313 at 2). But that "enhancement" was not based on the Concealed Patents, which Walmart had not disclosed and which Zest did not know about at the time. Walmart might try to exclude Dr. Becker's opinion under *Daubert*, but Walmart has not done so, and the only question here is whether the Concealed Patents are relevant.

Walmart also claims Dr. Becker's "proposed opinion directly contradicts" prior testimony that he "determined a license for the 'full value' of the Zest Fresh solution, regardless of whether Walmart used it." Response at 6. Not so. There is no contradiction. The Concealed Patents are properly considered game changers because, once the PTO granted them, they gave Walmart an exclusive license to Zest's technology. As Dr. Becker explains, due to the Concealed Patents, Zest "no longer has exclusive domain over the technology claimed in the Concealed Patents"; Walmart is now "the only party that may use that technology." Becker Supp. Report ¶ 24. And "[t]his significantly alters the considerations in *Georgia-Pacific* Factor 3." *Id*.

---

[6] Walmart is wrong to say Dr. Becker believes the Concealed Patents warrant "an 8x increase" in damages. Response at 6. Dr. Becker clearly stated that "it is [his] opinion that a reasonable enhancement factor is 2x." Becker Supp. Report ¶ 25.

Put another way, in his prior opinion, Dr. Becker assessed the license for the "full value" of the Zest Fresh solution without regard to Walmart's use, but in the context that others could still use it. But the Concealed Patents now make that impossible. Therefore, in considering the hypothetical license that would have been agreed upon between Walmart and Zest that would have given Walmart the ability to close the market to all others—as the Concealed Patents do—Dr. Becker determined that "a reasonable enhancement factor [of] 2x" is warranted. Becker Supp. Report ¶ 25.[7]

Dr. Becker's opinion is that Concealed Patents causes him to conclude that the reasonable royalty rate in the hypothetical negotiation between Walmart and Zest is twice what he had previously calculated when he was unaware of the Concealed Patents' existence. Nothing in Walmart's response suggests that opinion is irrelevant or not proper expert testimony. Walmart's criticism of Dr. Becker's opinion may be admitted to address the weight it should be given, but it is not grounds to exclude the Concealed Patents or his testimony.

In sum, because the Concealed Patents are relevant to the proper calculation of Zest's damages, as Dr. Becker shows, that evidence and his opinion are admissible.

## CONCLUSION

For the foregoing reasons as well as those previously stated, Zest's motion *in limine* for admission of the Concealed Patents and the related opinions of Zest experts Lanning, Stoll, and Becker (Dkt. 653) should be granted.

---

[7] Walmart's citation (at 6-7) to Zest's former counsel's summary of Dr. Becker's opinions at the first trial is not to the contrary. Former counsel stated that Dr. Becker's reasonable royalty rate assumed Walmart would use the patent "in all ways" but Dr. Becker did not know about the Concealed Patents at the first trial.

Respectfully submitted,

Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
pryan@bartkolaw.com
smctigue@bartkolaw.com
krichard@bartkolaw.com
nfelsen@bartkolaw.com

Scott P. Richardson
Brittany D. Webb
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
scott@mcdanielwolff.com
bwebb@mcdanielwolff.com

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA  94306-3314
(281) 972-3036
kate@bluepeak.law

Dated:  February 12, 2025                     * Admitted *pro hac vice*