IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ZEST LABS, INC. F/K/A INTELLEFLEX
CORPORATION ET AL.                                                                                PLAINTIFFS

v.                                    CASE NO. 4:18-cv-00500-JM

WALMART INC. F/K/A WAL-MART STORES, INC.                                        DEFENDANT

**WALMART'S OPPOSITION TO PLAINTIFFS'
MOTION TO EXCLUDE THE EXPERT REPORT OF KATHI VIDAL (DKT. 683)**

**I.     Introduction**

Zest's attempts to entirely exclude Ms. Vidal on the same false "cumulativeness" premise a Mr. Bahr.  Putting aside that Zest's is requesting Walmart have *no* USPTO expert, Zest's motions should be denied because the experts offer different, non-overlapping opinions.

Zest's expert Robert Stoll provided sweeping opinions on patent practice and procedure, including whether the Director of the United States Patent & Trademark Office (USPTO) could stop publication of a patent (despite his having no experience as a director). The Director of the USPTO is the highest ranking government official in charge of intellectual property. The Director is responsible for all USPTO operations, including the publication of patent applications, but also the advisor to the President of the United States and the administration, through the Secretary of Commerce, on all things intellectual property, including patents and trade secrets. Vidal Report at ¶ 14. While both Ms. Vidal and Mr. Bahr offer testimony to rebut the various opinions of Mr. Stoll, Ms. Vidal and Mr. Bahr's opinions do not overlap. Ms. Vidal—the only expert retained with experience serving as a former director of the USPTO—has opined on an intentionally narrow issue: what a reasonable Director would have done when faced with a

1

request to pull a patent from the publication queue to prevent a disclosure of a trade secret. Mr. Bahr, on the other hand, opined on patent practice and procedure within the context of his experiences as Deputy Commissioner for Patent Examination Policy and his experience acting under the delegated authority of the USPTO director to carry out tasks as assigned. Although Mr. Bahr gained extensive experience in his nearly 40 years with the USPTO, including drafting some of the provisions Zest's expert "interprets," and with having tasks delegated to him from the Director, he did not offer an opinion from the perspective of a Director because he has never held such a position.

      Zest conflates the experts' reliance on the same facts, and their consistent opinions in responding to Zest counsel's questioning, as somehow being duplicative. The former is a red herring because Zest's experts also rely on similar underlying facts, as experts must. The latter is the result of Zest's own gamesmanship. Throughout her deposition, Zest's counsel repeatedly tried to bait Ms. Vidal into answering questions outside the scope of her opinion—apparently, in an attempt to have her opinions excluded. However, Ms. Vidal remained in her lane. That her and Mr. Bahr's answers were consistent is just a result of them being true. Walmart has no intention to offer cumulative testimony, nor can Zest manufacture such overlap through its own questioning to then argue for exclusion. This ground should be denied.

      Zest's fallback is to seek exclusion of portions of Ms. Vidal's opinions. In support, Zest mischaracterizes Ms. Vidal's testimony and its relevance. There is nothing improper about Ms. Vidal testifying about a Director's power—including, when challenged, her basis for such power—and the actions a reasonable director would take. These are expert opinions that Zest can challenge on cross examination. They should not be excluded.

II. **BACKGROUND**

In paragraph 8 of her report, Ms. Vidal explains that her "testimony is limited to actions that the Director of the USPTO—who both runs the agency and is the most senior official in the U.S. Government charged with both patent and trade secret policy—could and would have taken to prevent publication of a patent application alleged to violate trade secret laws." Vidal Report at ¶ 14 (Ex. 1). And when asked in her deposition how her opinion differed from Mr. Bahr's, she stated that she was opining on what a reasonable Director would have done, while Mr. Bahr was "looking at PTO procedures from the position of the patents organization"—although Zest dislikes this and argues that this is a "distinction without a difference," it clearly explains the line between their two opinions. Vidal Depo at 79:10-18; (Dkts. 684 & 686 at 3-4). Ms. Vidal opines on the actions a reasonable director could and would take, while Mr. Bahr focused on what other actions were available to Zest, had it chosen to take any actions at all.

It is true that Ms. Vidal's report, like Mr. Bahr's report, contains background information about the facts of the case to contextualize the opinions. Experts are, of course, allowed to rely upon factual assumptions or even the opinions of other experts (as Zest's own experts purport to do), without violating rules against duplicative or cumulative testimony. *See Fair Isaac Corp. v. Fed. Ins. Co.*, 447 F. Supp. 3d 857, 876 (D. Minn. 2020) (An "expert is permitted to rely on facts, opinions, and data not of the expert's own making—including analyses performed or findings made by another expert in the case") (quoting *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015)).

III. **ARGUMENT**

    A. **Ms. Vidal's Testimony Is Not Cumulative**

The testimony that Zest argues is "cumulative" is simply each respective expert's assumptions and/or understanding of the facts of the case. For example, Zest argues that both

experts opine on "Zest's alleged knowledge of the Bohling Application and PCT Application." Dkts. 684 & 686 at 4. Of course they do, as do Zest's experts. Those are underlying facts that form the bases of the experts' opinions. Similarly, Zest calls duplicative the expert's mention of the timeline between when the '974 Application and '069 PCT Application were filed, produced to Zest's counsel, and published *See* Dkts. 684 & 686 at 4. Listing the series of events that occurred (as agreed to by Zest's own expert) is not the type of "duplicative" testimony that Fed. R. Evid. 702 contemplated being excluded, and should not be excluded here when the experts offer non-cumulative opinions relying on those facts.

Zest also argues that "only one expert" may opine on the numerous options that Zest could have taken (but did not) to prevent the publication of the '974 Application and '069 PCT Application. Dkts. 684 at 3-7; 686 at 3-7. But Walmart's experts are discussing different issues. While Mr. Bahr opines on whether, based on patent practice and procedures, Zest had options to stop publication and/or enough time to take action to do so (*see, e.g.*, Bahr Report at ¶ 20; Bahr Depo at 35:8-18; 36:6-13), Ms. Vidal testified that her opinions are limited to what a reasonable Director would have done had one been presented with the opportunity to stop publication:

> Q Moving on to paragraph 47 of your report, Miss Vidal. As I understand paragraph 47, you're opining that Zest could have sought a court order enjoining the USPTO or the director from publishing the -- the Bohling application. Is that generally correct?
>
> A That's generally correct. ***And I'm opining more on what the director would have done should -- you know, had they sought such an order***.

Vidal Depo at 66:1-8 (emphasis added).

> Q: Are you offering an opinion that Zest had sufficient time to ask Walmart to abandon the Bohling application after the Bohling application had been produced in the litigation?
>
> A: I am assuming for purposes of my opinion that -- ***I'm assuming the dates set forth in my report for purposes of my opinion.*** In terms of the amount of notice the PTO would have needed to have in order to pull the Bohling application from

4

> publication, the PTO would not have needed that much time. ***A director would not have needed that much time in order to pull it.*** So I don't believe it would have been futile for Zest to attempt to have the Bohling application pulled from publication through a number of mechanisms.

Vidal Depo at 77:6-20 (emphasis added). Thus, contrary to Zest's mischaracterization, Mr. Bahr and Ms. Vidal's opinions do not overlap in this respect either.

Zest further argues that these expert's opinions are duplicative because they both cite to the same authorities (Dkts. 684 & 686 at 5) ("Ms. Vidal opines on a number of laws and regulations as authorities for her opinions. . . Mr. Bahr relies on the same authorities"). Again, reliance on the same authority is not a basis to exclude these experts or their opinions.

### B.  Ms. Vidal's Opinions Are Permissible and Tend to Help the Jury

Zest also asks this court to limit Ms. Vidal's testimony by mischaracterizing her opinions as "speculative," concerning "National Security," and an attempt to opine on *Centrifugal Acquisition Corp., Inc. v. Moon*, No. 09-C-327, 2012 WL 718999 (E.D. Wis. Mar. 5, 2012)—none of these are accurate.

### C.  Ms. Vidal's Opinions Are Based on What a Reasonable Director Would Have Done

Ms. Vidal's testimony is not speculative. She opines on what a reasonable USPTO Director could do and would do if given reason to prevent a patent application from publishing, from her experience serving as a Director. This is not speculation about what might have happened. It is an objective discussion of the authority of a Director and of reasonableness. If this opinion is considered speculative because it did not actually occur—the fault of which rests with Zest, so it should not benefit from it—then all of Zest's opinions on reasonable measures are likewise speculative. Ms. Vidal (and Mr. Bahr) are simply responding to the opinions proffered by Zest's experts. What Zest's wants is for its experts to discuss these issues with no rebuttal. That is not a proper basis for exclusion.

Zest's argument is premised on mischaracterizing Ms. Vidal's testimony. Zest claims that she "disclaims reliance" on certain provisions and is therefore somehow ambiguous on her opinion. While it is not entirely clear what argument Zest is making, Zest's argument misses the point. Ms. Vidal's opinion is about what a reasonable Director could and would do. The first part of that opinion depends on the Director's power, which Ms. Vidal explained is broad, as informed by several provisions. As she explained, she "relied first and foremost on [her] tenure at the USPTO where [she] was always ensuring that [she] had the authority to do the work that [she] was doing." Vidal Depo at 97:1-10. And in drafting her report in this case, she looked to the "various provisions to verify that there was nothing that [she] was missing in terms of any limitations on that authority." 98:8-14. Zest conflates this discussion with the separate issues that Mr. Bahr addresses regarding specific regulations. Dkt. 684 at 8. But as Ms. Vidal explained, she did not need to rely on the timeframes set out in the provisions to form her opinion because a Director's "ability to pull an application from publication is not tethered to any of the timelines outlined in . . . 37 CFR.. . . Those are just deadlines or dates given to applicants. It does not at all address the director's authority and ability." Vidal Depo at 38:24-39:5. That is, unlike Mr. Bahr, she was not opining on a specific mechanism like Mr. Bahr, but rather the power and actions of a Director. That is a helpful and proper opinion, so Zest's motion on this ground should be denied.

D.    **Ms. Vidal Is Not "Testifying About National Security"**

Zest's second argument misunderstands Ms. Vidal's opinions. She is not opining on "national security," nor whether the Bohling Application threatens it. Rather, that provision is cited to show there are procedures in place that would enable a Director to act quickly to pull a patent from publication up until the moment of publication. Ex. 1 at ¶ 42 ("Indeed, the Director needs the ability to quickly pull applications from publication in instances where there may be an imminent disclosure threatening national security."). That is, it directly informs what powers a

6

Director has, which is part of Ms. Vidal's opinion. Indeed, when asked at her deposition, "So is it accurate to say that there are certain situations in which a director is able to pull a patent application from publication quickly?" she confirmed that this ability existed. Vidal Depo at 43:17-23. National security is an example that shows such power, but Ms. Vidal also explained that a "director has broad authority to pull applications from publication [including] if the director believed that the publication would violate a state or federal law." Vidal Depo at 44:2-8; *see also* Vidal Report at ¶¶ 38-39. That understanding comes from 37 C.F.R. § 1.211(d), and is not related to national security. Vidal Report at ¶¶ 38-39. The point, however, is the same: a Director has the power to stop publication. Ms. Vidal's discussion of provisions that inform that understanding are squarely in the purview of expert testimony and "[t]here is nothing unusual or improper about an expert providing examples or analogies to help a factfinder consider complicated concepts." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 291 (E.D.N.Y. 2022) (alteration in the original).

      E.      **Ms. Vidal Is Not Opining About "Specific Legal Precedents"**

Third, Zest incorrectly argues that Ms. Vidal opines on *Centrifugal Acquisition Corp., Inc. v. Moon¸* No. 09-C-327, 2012 WL 718999 (E.D. Wis. Mar. 5, 2012). Not so. In fact, when asked during her deposition whether she was "offering an opinion on the impact of the CAC versus Moon," Ms. Vidal responded that she was not "***I'm not interpreting that case and I'm not offering an opinion on the interpretation or import of that case in this matter. Nor do I intend to do so.***" Vidal Depo at 89:6-22 (emphasis added). Zest misleadingly quotes from the later portions of this transcript page which contains her further explanation for why she cited the case in her report (as background on the parties' contentions), but glosses over where Ms. Vidal specifically stated that she was not offering an opinion.

## IV.    CONCLUSION

Zest's motion is an attempt to *limine* out certain testimony that is neither being offered nor intended to be offered. Walmart and its experts understand the court's earlier rulings and intend to abide by them. There is no basis to preemptively exclude Ms. Vidal or Mr. Bahr as both experts offer different opinions.

*/s/ John R. Keville*
John R. Keville (*pro hac vice*)
jkeville@sheppardmullin.com
Robert L. Green (*pro hac vice*)
rgreen@sheppardmullin.com
Chante B. Westmoreland (*pro hac vice*)
cwestmoreland@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
700 Louisiana Street, Suite 2750
Houston, Texas 77002-2791
(713) 431-7100 Telephone
(713) 431-7101 Facsimile

John E. Tull III (84150)
R. Ryan Younger (2008209)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
(501) 379-1700 Telephone
(501) 379-1701 Facsimile
jtull@qgtlaw.com
ryounger@qgtlaw.com

*Attorneys for Walmart Inc.*