IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS HOLDINGS
LLC; and RISKON INTERNATIONAL,
INC.,

        Plaintiffs,

v.

        No. 4:18-CV-500-JM

WALMART INC. f/k/a WAL-MART
STORES, INC.,

        Defendant.

        /

## MOTION *IN LIMINE* NO. 2 TO ALLOW EVIDENCE OF WALMART'S FINANCIAL METRICS TO INFORM PUNITIVE DAMAGES

Plaintiffs Zest Labs, Inc., Zest Labs Holdings LLC, and Riskon International, Inc. (collectively, "Zest") hereby respectfully move the Court to allow evidence about financial metrics (like revenue and profit) for defendant Walmart Inc. ("Walmart"), and to allow Zest to use those figures in its arguments to the jury about punitive damages.

According to well-established case law, a defendant's financial metrics are directly relevant to punitive damages. Because punitive damages are intended to deter a defendant from committing similar bad acts in the future, it matters how much money that defendant has. For a larger, wealthier defendant, a jury might reasonably conclude that a larger award of punitive damages is necessary to achieve the goal of deterrence. Indeed, at the previous trial, Zest introduced evidence of Walmart's finances (including its revenue, profit, and dividends paid to shareholders), and the Court instructed the jury that it could "consider the financial condition of Walmart" in assessing exemplary damages. *See* Dkt. 369 at 16 (jury instruction 8.7).

1

In an effort to be cautious in light of the Court's previous rulings on motions *in limine* before the first trial in this case, *see supra*, p. 2, Zest brings this motion to confirm that it may reference Walmart's financial metrics in its arguments to the jury about punitive damages.

## **FACTS AND PROCEDURAL HISTORY**

Before the first trial in this case, Walmart filed a motion *in limine* to exclude references to "billions of dollars" in damages or suggestions that Walmart could "afford to pay" because of its "'billions of dollars' in revenues." *See* Dkt. 332 at 2-3. At oral argument, counsel for Zest made clear that Zest's damages expert's "opinions on actual damages will not be in the billions." *See* Dkt. 340 at 49:12-13. But as Zest's counsel noted, "[t]here is the issue of punitive damages" as well. Although Zest is not claiming *billions of dollars in compensatory damages*, Walmart's *billions of dollars of revenue and profit* are relevant to the jury's selection of a punitive damages award.

Consistent with that distinction, the Court's ultimate ruling before the last trial was narrow: Zest cannot claim "billions of dollars in damages" unless it has further evidence to support such a claim. Dkt. 340 at 50:12-51:1. But the Court also made clear that it was "not saying [Zest] can't say billion" in other contexts. *Id.* at 51:15-18. The parties' argument and the Court's oral order did not specifically address the use of Walmart's financial metrics (like revenue and profit) in the billions or the use of those figures as comparison points to anchor a punitive damages award.

At trial, Zest introduced testimony and evidence to show Walmart's financial strength, including its revenue, profits, and dividends. *See* Ex. A (Foran Dep. Tr. excerpts played at trial) at 9:7-10, 56:20-57:5, 174:7-13, 183:8-14. The Court instructed the jury that "[i]n arriving at the amount of exemplary damages you may consider the financial condition of Walmart, as shown by the evidence." *See* Dkt. 369 at 16 (jury instruction 8.7).

## ARGUMENT

The U.S. Supreme Court has repeatedly confirmed that a defendant's financial position is relevant to punitive damages. For example, in one case, the Supreme Court noted that a party's "impressive net worth" was "typically considered in assessing punitive damages," "[u]nder well-settled law." *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462 n.28 (1993); *see also Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21, (1991) (affirming analysis of "the 'financial position' of the defendant" in "determining whether a punitive award is reasonably related to the goals of deterrence and retribution"). The Eighth Circuit has similarly analyzed a defendant's "net worth" in evaluating whether punitive damages were excessive. *See May v. Nationstar Mortg., LLC*, 852 F.3d 806, 817 (8th Cir. 2017) (affirming punitive damages award in part because it "accounts for thirty-three thousandths of one percent of Nationstar's approximate $1.2 billion net worth"); *Morse v. S. Union Co.*, 174 F.3d 917, 925 (8th Cir. 1999) (affirming punitive damages award that constituted "less than one one-thousandth of Southern Union's approximately $500,000,000 net worth").

In keeping with that principle, Judge Baker has regularly allowed evidence of a defendant's size and financial strength. *See, e.g.*, *Hooks v. Saltgrass Ark., Inc.*, No. 4:21-CV-00841-KGB, 2024 WL 2163182, at *6 (E.D. Ark. May 12, 2024) ("The Court finds evidence related to [defendant's] size, wealth, or financial resources is relevant to punitive damages and that its probative value outweighs any prejudicial effect."); *Hopman v. Union Pac. R.R.*, No. 4:18-CV-00074-KGB, 2021 WL 2694236, at *2 (E.D. Ark. June 30, 2021) ("The Court finds evidence related to [defendant's] financial size, net worth, and earnings is relevant . . . to punitive damages and that its probative value outweighs any prejudicial effect."). And this Court's jury instructions from the first trial apply that same principle. *See* Dkt. 369 at 16 (jury instruction 8.7, instructing that the jury "may consider the financial condition of Walmart" in assessing punitive damages).

Many other courts in the Eighth Circuit have likewise applied this well-settled rule to allow evidence of a defendant's financial strength. *See, e.g.*, *Fluor Corp. v. Zurich Am. Ins. Co.*, No. 4:16-CV-00429-ERW, 2021 WL 3021973, at *7 (E.D. Mo. July 16, 2021) ("Evidence of corporation's net worth is typically considered in assessing punitive damages."); *Hodges v. Pfizer, Inc.*, No. 14-CV-4855 (ADM/TNL), 2015 WL 13804602, at *10 (D. Minn. Dec. 17, 2015), *obj. overruled*, 2016 WL 1222229 (Mar. 28, 2016) (collecting cases holding that "[a] party's financial position is relevant to assessing punitive damages."); *Clark v. Rusk, Inc.*, No. CV 03-5595 (PJS/SRN), 2006 WL 8445814, at *2 (D. Minn. June 20, 2006) ("punitive damages awards should be based upon the wrongdoer's financial condition at the time of trial"); *CRST Expedited, Inc. v. TransAm Trucking, Inc.*, No. 16-CV-52-LTS, 2017 WL 7693378, at *1 (N.D. Iowa Nov. 2, 2017) (noting, in a discovery dispute, that a defendant's "overall wealth and financial condition" "usually is relevant for punitive damages").

Indeed, in other cases **against Walmart**, courts have allowed evidence of "Walmart's wealth or size," because "[i]t is indisputable that the defendants' wealth is a factor to consider in an award of punitive damages." *United States Equal Emp. Opportunity Comm'n v. Walmart, Inc.*, No. 4:22-CV-00037-SMR-SBJ, 2023 WL 11113885, at *6-7 (S.D. Iowa Dec. 8, 2023); *see also Happel v. Wal-Mart Stores, Inc.*, No. 02 C 7771, 2007 WL 495277, *7 (N.D. Ill. Feb. 9, 2007) (denying Walmart's motion *in limine* to bar evidence of its net worth, and finding that "[t]he net worth of defendant" was relevant to punitive damages), *reversed on other grounds*, 602 F.3d 820 (7th Cir. 2010); *Barham v. Wal-Mart Stores, Inc.*, No. 3:12-CV-01361 (VAB), 2017 WL 3736702, *5 (D. Conn. Aug. 30, 2017) (noting Walmart's substantial size in entering an award of punitive damages against it).

That rule makes sense, because as this Court has recognized, a central "purpose[]" of punitive damages is to "deter future unlawful conduct." *Williams v. Norris*, 721 F. Supp. 2d 824, 840 (E.D. Ark. 2010), *aff'd in part, rev'd in part on other grounds sub nom. Williams v. Hobbs*, 662 F.3d 994 (8th Cir. 2011); *see also Hart v. Beasley*, No. 3:10-CV-00015-BD, 2011 WL 39134, at *2 (E.D. Ark. Jan. 6, 2011). How much money is enough to deter a defendant necessarily depends on how much money that defendant has.

Of course, Zest is not trying to claim billions of dollars in compensatory damages in this case. But punitive damages can exceed compensatory damages by many multiples. *See, e.g.*, *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 482 (1993) (affirming punitive damages of 10 times the compensatory damages); *United States v. Rupp*, 68 F.4th 1075, 1083 (8th Cir. 2023) (affirming punitive damages as high as 20 times the compensatory damages for individual plaintiffs in Fair Housing Act case); *Masters v. City of Independence*, 998 F.3d 827, 842 (8th Cir. 2021) (allowing punitive damages of approximately 9 times the compensatory damages); *Adeli v. Silverstar Auto., Inc.*, 960 F.3d 452, 463-64 (8th Cir. 2020) (allowing punitive damages of 25 times the compensatory damages).

Indeed, it makes sense that the figures from Walmart's financial metrics would be significantly higher than the damages Zest seeks. Zest is not asking the jury to award "billions of dollars" of punitive damages. But Walmart's financial metrics in the billions of dollars are relevant to contextualize the amount of punitive damages that would be necessary to deter Walmart from similar acts in the future. Zest respectfully requests that the Court confirm Zest may use Walmart's financial figures for that well-established purpose.

Dated: April 1, 2025                             Respectfully submitted,

<u>Patrick Ryan</u>
Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
*pryan@bartkopavia.com*
**Admitted pro hac vice*

Adam D. Mitzner*
Andrew C. Ryan*
Gianna C. Signorille*
BARTKO PAVIA LLP
555 Madison Avenue, 11th Floor
New York, NY 10022
(212) 980-3500
**Admitted pro hac vice*

Scott P. Richardson
Brittany D. Webb
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
*scott@mcdanielwolff.com*

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
*cbartolomucci@schaerr-jaffe.com*
**Admitted pro hac vice*

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
*kate@bluepeak.law*
**Admitted pro hac vice*

6

*Attorneys for Plaintiffs ZEST LABS, INC., ZEST LABS HOLDINGS LLC, and RISKON INTERNATIONAL, INC.*