**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

ZEST LABS, INC. f/k/a INTELLEFLEX CORPORATION; ZEST LABS HOLDINGS LLC; and RISKON INTERNATIONAL, INC.,

Plaintiffs,

v.

No. 4:18-CV-500-JM

WALMART INC. f/k/a WAL-MART STORES, INC.,

Defendant.
________________________________________/

**MOTION *IN LIMINE* NO. 5 TO ADMIT FACTS REGARDING WALMART'S CONDUCT RELATED TO N2N**

On May 20, 2024, N2N Global, Inc. ("N2N") filed a complaint (the "N2N Complaint") against defendant Walmart Inc. ("Walmart"), in which N2N alleged that Walmart willfully and maliciously misappropriated N2N's "valuable trade secrets in the field of Fresh Food Shrink" after falsely representing that Walmart would then "awar[d]" N2N with "a lucrative contract." *See* Ex. A (the "N2N Complaint") at ¶¶ 1, 24. N2N alleges that Walmart misappropriated N2N's technology for use in a particular aspect of the Eden system, distinct from the technology that plaintiffs Zest Labs, Inc., Zest Labs Holdings LLC, and Riskon International, Inc. (collectively, "Zest") allege Walmart took and used in the Eden system and the Bohling patent application. N2N's technology was different from but complementary to Zest's technology. In fact, N2N's allegations involve one of the same Walmart employees—Chuck Tilmon—who was involved in misappropriating Zest's trade secrets.

Walmart's behavior towards N2N is directly relevant to this case and is admissible to show a common scheme, plan, and willful effort to steal Zest's trade secrets. As discussed below, Zest

could not have known about these facts at the first trial, because N2N had not yet filed its lawsuit. Zest files this motion to seek the Court's permission to introduce new facts—which could not have been introduced at the original trial in this case—regarding Mr. Tilmon and Walmart's pattern of behavior towards both Zest and N2N.

In the hearing held on November 14, 2024, this Court suggested that it would not allow Zest the ability to bring in facts alleged in the N2N Complaint against Walmart as evidence in Zest's own current action against Walmart. *See* Nov. 14 Hearing Tr. at 14. Based on the Court's statements at the hearing, Zest understands the Court is unlikely to permit evidence about the facts of the N2N case to be introduced at trial, but Zest files this motion to ensure the Court is presented with the full factual background on this issue and to obtain a formal ruling for the purposes of the appellate record. Precluding the use of evidence hidden by Walmart—which is directly relevant to its state of mind in this case—smacks of injustice to Zest.

## I. FACTUAL BACKGROUND

On May 20, 2024, N2N, a "software and business process consulting business," filed a lawsuit against Walmart in which it claimed that Walmart had stolen its valuable trade secrets." *See* Ex. A at ¶ 24. At or around the time of its lawsuit, N2N "invest[ed] heavily in proprietary innovative solutions," and had "proprietary systems include[ing] cloud-based software and mobile applications combined with business intelligence solutions." *Id.* at ¶¶ 15-16. Additionally, much like Zest, N2N had "extensive expertise in the food safety, quality assurance, quality control, and food freshness arenas." *Id.* at ¶ 17.

Per the N2N Complaint, Walmart invited N2N to develop a "proprietary system of supply chain management" for Walmart's use. *Id.* at ¶ 24. N2N responded by "work[ing] extensively to develop and refine" a Partner Management Solution ("PM") that would suit Walmart's needs. *Id.*

N2N's PM "systematically collect[ed] substantive, reliable data to build a profile of factors that maximize the efficiency of fresh food inspections." *Id*. at ¶ 27. Upon signature of Walmart-prepared documents by N2N, "and upon approval by Walmart IT Security team, Walmart granted [N2N] the opportunity to work confidentially with Walmart at a pilot program using Walmart's Bartlesville, Oklahoma distribution center location." *Id*. at ¶ 35. Walmart "offer[ed] extremely positive reviews of [N2N's] PM." *Id*. at ¶ 43. These facts are startingly similar to those at issue in this case; thus, they are directly relevant to whether Walmart acted in like manner towards Zest.

Throughout this process, Walmart represented to N2N that it intended to enter into a "very generous software services and consulting contract worth many millions of dollars" with N2N. *Id*. at ¶ 20. The contract would offer "many millions of dollars for the initial project alone and much more for the full breadth of the Quality Control requests." *Id*.

In reality, however, Walmart simply used the promise of a contract to induce N2N into disclosing trade secrets Walmart then misappropriated. Walmart demanded N2N's "highly confidential computer data…including specific field values for [N2N's] PM." *Id.* at ¶ 44. Walmart claimed that its Information Technologies department needed this sensitive information "to conduct a 'security review'" of N2N's PM. *Id.* at ¶ 44. In fact, just as with Zest, Walmart stole this confidential material and terminated its working relationship with N2N shortly thereafter. *Id.* at ¶ 80. Like Zest, N2N was "surprise[d]" by Walmart's announcement that it was terminating their working relationship, as N2N had "anticipated it would be awarded [a contract] with Walmart…given the extremely positive reviews [of the PM] and requests for implementation." *Id*. at ¶¶ 78-79.

N2N's complaint includes many details about the conduct of Chuck Tilmon in particular, who is also a very material witness in this case, and who Zest contends was directly involved with

the theft of Zest's trade secrets. *Id.* at ¶¶ 40, 97-98. A whistleblower within Walmart informed N2N that Mr. Tilmon was a "bad actor" who had taken a tablet computer containing N2N's PM system and given it to Walmart's "inhouse developer for use as a template for Walmart's inhouse software solution." *Id.* at ¶ 97-98.

On November 14, 2024, this Court conducted a motion hearing at which it set trial for January 21, 2025. At the same hearing, this Court remarked that it was "essentially going to retry the same case with nothing more than the additional defense that Zest may, could have stopped the publication of the patent, and that's the only thing that's going to be different about the case," noting that it would not "bring in" the facts about N2N's allegations in Judge "Brooks's litigation." *Id*. at 14-16.

Zest brings the instant motion (1) to better educate the Court more fully about the similarities between Walmart's conduct towards N2N and Zest and the legal basis for admissibility, which is compelling; (2) obtain a written ruling on the admissibility of the facts related to N2N[1]; and (3) to preserve the issue in the event of appellate review.

## II. ARGUMENT

### A. The Evidence of Walmart's Behavior Towards N2N Is Relevant Because It Establishes a Pattern of Similar Trade Secret Misappropriations.

Under Section 402 of the Federal Rules of Evidence, "[r]elevant evidence *is admissible* ***unless***…provide[d] otherwise" by the United States Constitution, a federal statute, elsewhere in the Federal Rules of Evidence themselves, or other rules prescribed by the Supreme Court. *See*

[1] If the Court permits Zest to admit evidence about these facts, Zest will seek to call Susan Akin or Chuck Tilmon as a witness at trial to testify to facts alleged in the N2N Complaint. Both Ms. Akin and Mr. Tilmon are included on the witness list in Zest's Pretrial Disclosures, submitted contemporaneously with this motion.

Fed. R. Ev. 402 (emphasis added). Section 401 of the Federal Rules of Evidence holds that evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Fed. R. Ev. 401.

Federal Rule 404(b) further provides that "[e]vidence of any other crime, wrong, or act" "may be admissible" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Ev. 404(b)(1)-(2). "Evidence is admissible under Rule 404(b) if it is relevant to a material issue, proved by a preponderance of the evidence, its probative value is not outweighed by its potential for prejudice, and it is similar in kind and close in time to the event at issue." *Jones v. Forest City Grocery, Inc.*, No. 4:06-CV-00944-BSM, 2008 WL 2120075, at *2 (E.D. Ark. May 20, 2008). "The trial court has broad discretion under this rule and will be reversed if it admits the evidence only if the evidence has no bearing on any issue involved and tends to prove *only* disposition." *King v. Ahrens*, 16 F.3d 265, 268 (8th Cir. 1994) (emphasis added) (describing Rule 404(b) as a "rule of inclusion").

Consistent with those principles, a defendant's history of trade secret misappropriation is admissible under Rule 404(b). *See, e.g.*, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 423 (5th Cir. 2006) (finding that evidence of pattern of trade secret theft would be admissible as "propensity" evidence under Fed. R. Evid. 404(b)); *ResMan, LLC v. Karya Prop. Mgmt., LLC*, No. 4:19-CV-00402, 2019 WL 4394564, at *3 (E.D. Tex. Oct. 26, 2020) (evidence that defendants copied other software was admissible under Rule 404(b) in action alleging misuse of proprietary software); *Universal Engraving Inc. v. Metal Magic Inc.*, No. CV 08-1944 PHX RJB, 2011 WL

13070114, at *2 (D. Ariz. July 12, 2011). That rule applies with equal force to other types of intellectual property theft. *See, e.g.*, *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) (jury could consider "any evidence that the defendants have a history of copyright infringement"); *Lincare Holdings Inc. v. Doxo, Inc.*, No. 8:22-cv-2349-VMC-ABP, 2024 WL 865881, at *4 (M.D. Fla. Feb. 29, 2024) (denying trademark infringement defendant's motion *in limine* to exclude evidence of other allegations of its trademark infringement); *CPI Sec. Sys., Inc. v. Vivint Smart Home, Inc.*, 710 F. Supp. 3d 438, 453-54 (W.D.N.C. 2024) (evidence of similar claims against defendant were properly admitted in Lanham Act action), *appeal filed* (4th Cir. Feb. 7, 2024); *Alarm Grid, Inc. v. Alarm Club.com, Inc.*, Case No. 17-80305-Civ-Marra, 2018 WL 8129822, at *2 (S.D. Fla. Apr. 27, 2018) (finding that "prior instances of copyright infringement are highly relevant" for purposes of Rule 404(b)); *Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d, 374, 392 n.31 (E.D.N.Y. 2008) (finding defendants' "history of trademark infringement actions . . . admissible as evidence of . . . intent and knowledge under Rule 404(b)").

  Here, Walmart's actions towards N2N are directly relevant to establishing Walmart's intent, plan, and lack of accident in this case. The set of facts in the N2N Complaint closely mirrors that in this case, where Walmart "committed to a pilot and deployment of Zest Fresh," but then "used its years of unfettered access to [Zest's] trade secrets, proprietary information, and know-how to steal the Zest Fresh technology and misappropriate it for Walmart's own benefit." *See* Dkt. 1, ¶¶ 7, 32. Walmart misled both N2N and Zest into disclosing details of their trade secret systems, only to secretly pass those details to teams of inhouse developers as a template to copy. And Mr. Tilmon was a key bad actor in both cases. Thus, the facts related to N2N are relevant in that they suggest a pattern of recurring, deceptive, and willful behavior on Walmart's part.

The relevance of the N2N facts fits squarely into the categories in Rule 404(b)(2). The fact that Walmart has repeatedly lured smaller companies into pilots—only to take and copy those companies' trade secret systems without paying for them—shows Walmart's "intent" and "plan." *See* Fed. R. Ev. 404(b)(2). That evidence is also relevant to rebut any claim by Walmart that it misused Zest's trade secret only by accident. *See id.* (allowing prior bad acts as evidence to show "absence of mistake" and "lack of accident"). For example, Zest expects that Walmart may argue it did not understand what Zest contended was a trade secret, and so it did not realize it could not use Zest documents to draft its patent application or its internal technology to manage the supply chain. The fact that Walmart has engaged in a pattern of similar behavior, however, undercuts that narrative: Walmart's actions were not an innocent mistake but an intentional plan.

Walmart's pattern of behavior towards N2N and Zest is also directly relevant to its willfulness. As the jury instructions in the first trial indicated, willfulness refers to conduct that "was malicious or in reckless disregard of Zest Labs' rights." Dkt. 369 at 16 (jury instruction 8.7). Walmart's pattern of similar behavior demonstrates its recklessness in repeatedly misusing the intellectual property of its business partners.

Finally, Walmart's pattern of behavior is relevant to the amount of punitive damages. *See, e.g.*, *Smith v. Allstate Ins. Co.*, 52 F. App'x 349, 351 (9th Cir. 2002) (noting that "the elements of punitive damages may be suggested by a pattern of unfair practices," and reversing the district court's refusal to admit such evidence). In evaluating punitive damages, the jury may consider what amount would sufficiently punish Walmart and deter it from similar conduct in the future. Walmart's pattern of theft from N2N and Zest informs both points. In terms of punishment, the fact that Walmart has repeatedly engaged in this course of conduct informs the degree of punishment that is warranted. And in terms of deterrence, knowing that Walmart has engaged in

similar behavior in the past of course informs the need for punitive damages to avoid yet another repetition of similar behavior in the future.

**B. The New N2N Evidence Should Be Allowed Because It Reflects New Factual Developments After the First Trial in This Case.**

It is a well-established rule that, at a new trial, the parties are allowed to offer evidence they did not offer at the first trial. *See United States v. Shotwell Mfg. Co*., 355 U.S. 233, 243 (1957) ("[T]he Government is not limited at a new trial to the evidence presented at the first trial, but is free to strengthen its case in any way it can by the introduction of new evidence."); *Apex Min. Co. v. Chi. Copper & Chem. Co*., 306 F.2d 725, 731 (8th Cir. 1962) ("[T]he plaintiff is entitled to a retrial of the issue of damages upon the trial record plus such additional relevant evidence as either party sees fit to introduce with respect to that issue"); *Ash v. Tyson Foods, Inc*., 664 F.3d 883, 891 (11th Cir. 2011) (when a "case has been remanded for new trial the parties are permitted to introduce new evidence"); *Fusco v. Gen. Motors Corp*., 11 F.3d 259, 265 (1st Cir. 1993) ("Nor is there any general rule prohibiting a party from offering new evidence at a second trial"). As the Eighth Circuit has explained, a new trial is supposed to be a *de novo* proceeding. *See Day v. Amax, Inc*., 701 F.2d 1258, 1263 (8th Cir. 1983) ("Following the grant of a new trial, the second trial, absent any stipulations by the parties to the contrary, proceeds *de novo*."); *Nelson v. All Am. Life & Fin. Corp*., 889 F.2d 141, 152 (8th Cir. 1989) (same); *see also* Nov. 14 Hearing Tr. at p. 75.

To be clear, the addition of the N2N evidence is not the result of a change in Zest's strategy but rather the development of new evidence that did not exist in 2021. Zest could not include the N2N facts as evidence at the original trial *because the N2N Complaint had not been filed yet*. N2N filed its Complaint against Walmart on May 5, 2024, roughly three years *after* the original trial concluded in 2021. *See* Ex. A (N2N Complaint). Because the N2N Complaint is highly relevant in establishing a pattern of misappropriation on Walmart's part as well as its state of mind for

purposes of liability and punitive damages, Zest would have certainly sought to include it as evidence at the original trial had it been available. Because Zest was unable to include the N2N facts as evidence at the original trial by no fault or strategic decision of its own, the Court should allow those facts to be admitted as evidence in the upcoming retrial.

Dated: April 1, 2025

Respectfully submitted,

*Patrick Ryan*
Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
Bartko Pavia LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
*pryan@bartkopavia.com*
**Admitted pro hac vice*

Adam D. Mitzner*
Andrew C. Ryan*
Gianna C. Signorille*
Bartko Pavia LLP
555 Madison Avenue, 11th Floor
New York, NY 10022
(212) 980-3500
**Admitted pro hac vice*

Scott P. Richardson
Brittany D. Webb
McDaniel Wolff, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
*scott@mcdanielwolff.com*

H. Christopher Bartolomucci*
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
*cbartolomucci@schaerr-jaffe.com*
**Admitted pro hac vice*

Kate M. Falkenstien*
Blue Peak Law Group, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
*kate@bluepeak.law*
**Admitted pro hac vice*

*Attorneys for Plaintiffs ZEST LABS, INC., ZEST LABS HOLDINGS LLC, and RISKON INTERNATIONAL, INC.*