**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | |
|---|---|
| ZEST LABS, INC. f/k/a INTELLEFLEX CORPORATION; ZEST LABS HOLDINGS, LLC and RISKON INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WALMART INC. F/K/A WAL-MART STORES, INC., <br><br> Defendant. | CIVIL ACTION NO. 4:18-CV-500-JM <br><br> JURY TRIAL DEMANDED |

## <u>WALMART INC.'S PRETRIAL DISCLOSURE SHEET</u>

Pursuant to Local Rule 26.2 and Federal Rule of Civil Procedure 26(a)(3), Defendant

Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart") submits the following pretrial disclosures:

**1.      Identify of party submitting information.**

Walmart.

**2.      The names, addresses, and telephone numbers of all counsel for the party.**

John R. Keville (pro hac vice)
jkeville@sheppardmullin.com
Robert L. Green (pro hac vice)
rgreen@sheppardmullin.com
Chante B. Westmoreland (pro hac vice)
cwestmoreland@sheppardmullin.com
SHEPPARD MULLIN RICHTER & HAMPTON LLP
700 Louisiana Street, Suite 2750
Houston, TX 77002
Telephone: (713) 431-7100

John E. Tull III (84150)
E. B. Chiles IV (96179)
R. Ryan Younger (2008209)
Glenn Larkin (2020149)
QUATTLEBAUM, GROOMS & TULL PLLC

111 Center Street, Suite 1900
Little Rock, AR  72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com
cchiles@qgtlaw.com
ryounger@qgtlaw.com
glarkin@qgtlaw.com

**3.      A brief summary of claims and relief sought.**

Plaintiffs Zest Labs, Inc., Zest Labs Holdings, LLC, and Riskon International, Inc. ("Zest")

allege that Walmart misappropriated Zest's alleged trade secret, the Zest Fresh Solution.

Walmart denies that the Zest Fresh Solution is a trade secret, that Zest took reasonable

measures to protect it, that Walmart misappropriated the Zest Fresh Solution, and that Zest suffered

any damage from the publication of the '974 patent application.

**4.      Prospects for settlement.**

The parties explored settlement and have attempted to mediate the case, including a

mediation attempt on March 6, 2025. Based on the positions at mediation, settlement does not

appear likely.

**5.      The basis for jurisdiction and objections to jurisdiction.**

The Court has jurisdiction under 28 U.S.C. § 1331.

**6.      A list of pending motions.**

Walmart's Motion for Sanctions (*See* Dkts. 507, 552, 563, 649)

Zest's Motion to Exclude Proposed Expert Testimony of Louis Riley, Esq. (Dkt. 680)

Zest's Motion to Exclude Proposed Expert Testimony of Kathi Vidal (Dkt. 683)

Zest's Motion to Exclude Proposed Expert Testimony of Robert Bahr (Dkt. 685)

**7.      A concise summary of the facts.**

    **A.  The Parties' Early Course of Dealing**

In 2014, Zest pitched Zest Fresh to Walmart. On March 5, 2014, Zest and Walmart executed an NDA (the "2014 NDA"), in which the parties acknowledged that Zest and Walmart were "willing to allow each other access to Confidential Information [defined as 'valuable confidential and proprietary, technical and/or commercial information and documentation' possessed by Walmart and Zest, respectively]." However, only Zest promised to maintain the confidentiality of Walmart's information, and to use that information for only limited purposes. Walmart was under no obligation or duty to keep any Zest information confidential or restrict its use. During 2014 and 2015, representatives from Zest met numerous times with Walmart personnel to discuss the Zest Fresh technology and sent PowerPoint presentations and emails describing that technology to Walmart.

Separately, in 2015, Walmart decided to digitize its Quality Control ("QC") process for fresh produce. Walmart sought to improve its legacy system in which, using paper copies of the USDA standards and guidelines for fresh produce and Walmart-specific guidelines, Walmart's QC associates would inspect selected samples of incoming produce, write their observations down on paper, determine whether the produce was of sufficient quality to be accepted, and then manually enter the results of that inspection into an excel spreadsheet. Walmart issued a Request for Information ("RFI") to its vendors seeking information about available technology for its QC digitization effort. Eight companies, including Zest, responded and presented to Walmart in June 2015.

Walmart chose two of the companies, N2N and HarvestMark, as finalists and invited them to participate in a "bake-off." Zest was not chosen to participate because its presentation failed to include a proposed solution for digitization.

**B. The Hackathon and Early Development of the Eden Technology**

Meanwhile, Walmart held a "hackathon" which consisted of internal Walmart project teams competing to develop a digitized QC system. One of the project teams created "Eden." Eden was envisioned as a suite of mobile and desktop software applications, which would be written in computer code by Walmart's programmers. Work on the design and coding for Eden continued throughout 2016. The Eden team was also invited to participate in the bake-off held in May 2016. Eden went on to win the bake-off.

### C. Walmart and Zest's Agreements

**2015 NDA**

While the bake-off continued without it, Zest continued to market its Zest Fresh solution to Walmart. In connection with this on-going work, Walmart and Zest executed a second NDA ("2015 NDA"), which contained mutual confidentiality provisions and specifically stated that "[n]either Party is precluded from independently pursuing any activities similar to or in competition with the Transaction."

**The 2016 Master Services Agreement**

In December 2015, Walmart informed Zest that its proposal to pilot test Zest Fresh was approved. In advance of the pilot, Zest (through its parent company, Ecoark) and Walmart and Zest signed an MSA. The MSA specified that "[a]ll prior agreements, negotiations, dealings and understandings, whether written (including electronic record) or oral, regarding the subject matter hereof, are superseded by this Agreement." (§ 16(K)).

**The 2016 Statement of Work**

In September 2016, the parties entered into a Statement of Work, outlining the terms of the Zest Fresh pilot program for Walmart ("2016 SOW"). The 2016 SOW provided for proof of concept testing to evaluate the efficacy of Intelleflex's Zest Fresh Software, which Walmart would

evaluate, and Zest would fund. As outlined in the 2016 SOW, Walmart hired a third party, Deloitte Consulting, to consult on the pilot.

### The Launch of Eden, Walmart's New QC Digitization Solution

During this same timeframe, Eden was rolled out to all of Walmart's distribution centers. For all of 2017 and 2018, Eden consisted entirely of two mobile applications, one which automated the QC paper process and another that digitized the USDA and Walmart standards.

### The 2017 Bake-Off

In December 2016, Zest was among several companies invited to submit a response to a Walmart Request for Information ("Cold Chain RFI") in connection with its search for a single vendor to provide temperature monitoring sensors for its fresh food supply chain. The Cold Chain RFI specified that any responses provided thereto were "the proprietary property of Walmart." Zest submitted a response to Walmart's RFI and participated in this second bake-off, and it ultimately placed third out of four total competitors in 2017.

### The 2018 Statement of Work and Walmart's Simultaneous QC Efforts

On November 9, 2017, Walmart allowed its business relationship with Zest to terminate. Zest requested the opportunity to stay engaged with Walmart, which culminated in a 2018 SOW. Under the 2018 SOW, Zest agreed to work with Walmart's Fresh Flow team to support the team's development of retention sampling tools (i.e., preserving control samples of fresh produce to monitor shelf-life). Zest did not provide any of the code for the retention sampling application such that Walmart could actually use the tool.

### D. Filing Suit

Zest and Ecoark Holdings filed suit against Walmart for misappropriation of trade secrets under the Defend Trade Secrets Act and the Arkansas Trade Secrets Act and for various other claims that have since been dismissed by the Court.

5

**E.  The Walmart Patent Applications**

In August 2018, Walmart applied for U.S. Patent 16/112,974 ('974 Patent Application) and an international counterpart of the '974 application, PCT/US18/48069 (the '069 PCT Application). The '974 Application and the '069 PCT Application were both produced to Zest's attorneys on February 28, 2019, seventy-seven (77) days before publication. In May 2021, Zest and its attorneys claimed that Claim 1 of the '974 Application and the '069 PCT Application comprised and disclosed Zest's entire trade secret.

**8.    All proposed stipulations.**

The parties have exchanged multiple proposed stipulations relating to Zest's knowledge of the Bohling Application.  Walmart understands that the Court would like the parties to reach a stipulation about this issue to avoid the need to call at trial Zest's former counsel through either deposition or live testimony.  Walmart recently proposed the following stipulations:

1.  Zest's attorneys became aware of the existence of the '974 Patent Application, also referred to as the Bohling Patent Application, by **March 3, 2019**.

2.  Zest's attorneys became aware of the content of the '974 Patent Application by **April 3, 2019**.

3.  The following documents are stipulated to be authentic and admissible:

    a.  OPEN_TEXT005998

    b.  VE-WSL00019198

    c.  VE-WSL00019220

    d.  Dkt. 508 Exhibit 2

Stipulations 1 and 2 contain facts also included in prior stipulations proposed by Zest. Stipulation 3 relates to admission of an email from Zest's eDiscovery vendor to Zest's counsel, two charts containing analysis of the Bohling Application, and time records showing activities

relating to the Bohling Application.   These documents help to provide context for Zest's knowledge and whether it took reasonable measures to protect its alleged trade secret.

Walmart provided this version of its proposed stipulation to Zest on March 31, 2025. Walmart will continue working to achieve a stipulation.  In the event the parties are unable to agree, Walmart reserves the rights to designate testimony of Zest's prior counsel, call Zest's prior counsel at trial, and seek other appropriate relief.

**9.      The issues of fact expected to be contested.**

- Whether the Zest Fresh Solution that Zest allegedly disclosed to Walmart was a trade secret that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

- Whether the publication of Walmart's '974 Patent Application or the '069 PCT Application (the International counterpart to the '974 Patent Application) t disclosed or used the Zest Fresh Solution, without Zest's express or implied consent.

- The amount of damages, if any, that Zest is entitled to for the alleged misappropriation of the Zest Fresh Solution by Walmart.

**10.      The issues of law expected to be contested.**

- Whether the evidence sufficiently supports the allegations that the Zest Fresh Solution constitutes a trade secret.

- Whether the evidence sufficiently supports the allegations that Zest disclosed its alleged trade secret to Walmart.

- Whether the evidence sufficiently supports the allegations Walmart disclosed or misused Zest's alleged trade secret.

- Whether there is a causal nexus between Walmart's alleged misappropriation of Zest's trade secret , and the lost profits and reasonable royalties sought by Zest.

- Whether Zest is precluded by contract from any right to exemplary or punitive damages.

**11.    A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar objects which may be used in opening statement, closing argument, or any other part of the trial, other than solely for impeachment purposes, whether or not they will be offered in evidence. Separately designate those documents and exhibits which the party expects to offer and those which the party may offer.**

See Exhibit A attached hereto.

**12.    The names, addresses and telephone numbers of witnesses for the party. Separately identify witnesses whom the party expects to present and those whom the party may call. Designate witnesses whose testimony is expected to be presented via deposition and, if not taken stenographically, a transcript of the pertinent portion of the deposition testimony.**

See Exhibit B attached hereto.

**13.    The current status of discovery, a precise statement of the remaining discovery and an estimate of the time required to complete discovery.**

The Court has granted Zest a limited deposition of Joshua Bohling. The parties are in the

process of scheduling this deposition. Besides this deposition, discovery is complete.

**14.    An estimate of the length of trial and suggestions for expediting disposition of the action.**

Two weeks, with each party limited to 24 hours of trial time.

**15.    Right to Supplement.**

Walmart reserves the right to supplement this Disclosure Sheet and the attachments hereto

as trial preparation continues.

8

DATED: April 1, 2025                     Respectfully submitted,


_/s/ John R. Keville_
     John R. Keville (pro hac vice)
     jkeville@sheppardmullin.com
     Robert L. Green (pro hac vice)
     rgreen@sheppardmullin.com
     Chante B. Westmoreland (pro hac vice)
     cwestmoreland@sheppardmullin.com
     SHEPPARD MULLIN RICHTER &
     HAMPTON LLP
     700 Louisiana Street, Suite 2750
     Houston, TX 77002
     Telephone: (713) 431-7100

     John E. Tull III (84150)
     E. B. Chiles IV (96179)
     R. Ryan Younger (2008209)
     Glenn Larkin (2020149)
     QUATTLEBAUM, GROOMS & TULL PLLC
     111 Center Street, Suite 1900
     Little Rock, AR  72201
     Telephone: (501) 379-1700
     Facsimile: (501) 379-1701
     jtull@qgtlaw.com
     cchiles@qgtlaw.com
     ryounger@qgtlaw.com
     glarkin@qgtlaw.com


     **_Attorneys for Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc._**

## CERTIFICATE OF SERVICE

I certify that on this 1st day of April 2025, I served a true and correct copy of the foregoing document, via electronic mail, upon the following counsel of record.

Scott P. Richardson
Bart Calhoun
McDaniel Wolff, PLLC
1307 West 4th St.
Little Rock, Arkansas 72201
scott@mcdanielwolff.com
bart@mcdanielwolff.com

Ross David Carmel
Carmel, Milazzo & DiChiara LLP
55 West 39th Street, 18th Floor
New York, New York 10018
rcarmel@cmdllp.com

Sean McTigue
Patrick M. Ryan
Kenneth L. Richard
Natalie A. Felsen
Bartko Pavia LLP
1100 Sansome Street
San Francisco, California 94111
smctigue@bartkolaw.com
pryan@bartkolaw.com
krichard@bartkolaw.com
nfelson@bartkolaw.com

H. Christopher Bartolomucci
Schaerr | Jaffe LLP
1717 K Street NW, Suite 900
Washington, DC 20006
cbartolomucci@schaerr-jaffe.com

Fred I. Williams
Michael Simons
Todd E. Landis
Williams, Simons & Landis PLLC
The Littlefield Building
601 Congress Ave., Suite 600
Austin, Texas 78701
fwilliams@wsltrial.com
msimons@wsltrial.com
tlandis@wsltrial.com
ZestWSLService@wsltrial.com

Kate M. Falkenstein
Blue Peak Law Group, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306
kate@bluepeak.law

*/s/ John R. Keville*
John R. Keville