# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS HOLDINGS
LLC; and RISKON INTERNATIONAL,
INC.,

        Plaintiffs,

v.

WALMART INC. f/k/a WAL-MART
STORES, INC.,

        Defendant.

        No. 4:18-CV-500-JM

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 3 TO EXCLUDE INTERNAL COMMUNICATIONS AND TESTIMONY INVOLVING PLAINTIFFS' PRIOR COUNSEL**

Walmart sought discovery regarding privileged communications and work-product documents to prove that Zest's former counsel knew about the Bohling Application before it published. In obtaining this discovery, Walmart insisted it would use it for a narrow, "discrete" purpose: "to make clear what Zest knew regarding to (sic) the Bohling Application, when it became aware of it, what actions (if any) it took to protect what it believed was a trade secret, and whether any of this conflicts with Zest's statement to the Court during summary judgment briefing." Dkt. 430 at 11. As Walmart's counsel reiterated at a hearing on its motion to allow the discovery, the discovery was "very targeted" and designed to find out "what [Zest] knew and when they knew it." *See* Ex. M (July 28, 2021 Hearing Tr.) at 37:4-11. The Court ordered discovery on that basis. *See* Dkt. 443 (ordering discovery via "a targeted and narrowed [] production" "[f]or the reasons stated during the hearing today[.]").

But Walmart now admits that it intends to use that discovery for reasons completely different from those that it provided to the Court. Walmart has repeatedly rejected Zest's offers to stipulate to the facts necessary to show "what [Zest's former counsel knew] and when they knew it," as Mr. Keville requested and the Court allowed. But Walmart's new use of former counsel's documents is deeply prejudicial and misleading. To prevent that confusion and unfair prejudice, Zest respectfully requests that the Court grant this motion *in limine*.

### I.   Walmart Intends to Use Former Counsel's Documents to Argue the Merits of Zest's Claims, Not to Establish Pre-Publication Knowledge of the Bohling Application as Walmart Promised the Court.

As Walmart has argued in open court, Walmart needs to establish former counsel's knowledge to raise its new defense—that Zest could have tried to stop publication, and that Zest's alleged failure to do so meant that it had not taken reasonable efforts to protect its trade secret. Consistent with the Court's suggestion at the November 2024 hearing, Zest has agreed to stipulate to all the facts Walmart needs to raise its new defense: that Zest's former counsel knew about the

1

patent application by March 3, 2019, and knew of its contents by April 3, 2019, before the patent published in May 2019.

But Walmart has now revealed that it intends to use this discovery for reasons other than those it provided to the Court. After obtaining access to former counsel's confidential communications for this narrow purpose, Walmart now admits it is trying to do something entirely different with the evidence it received. It wants to use Zest's former counsel's work product, assessing the strengths and weaknesses of Zest's case, to suggest that former counsel *conceded* the merits of Zest's claim. That is a maximally prejudicial use of what was already an unusually intrusive line of discovery into former counsel's internal documents and emails. Walmart wants to take the normal work of lawyers—considering both strengths and weaknesses of their clients' cases to determine how to best represent them—and present those candid, confidential assessments as concessions on the merits. And Walmart further wants to present that evidence without even calling former counsel—the people who wrote these underlying documents—to testify, denying the jury any explanation that would contextualize what the lawyers were doing or why.

If Walmart has decided that it does not actually want to argue its affirmative defense, Walmart can choose to decline Zest's offer to stipulate. But Walmart cannot refuse to stipulate and then use *its own refusal* to justify introducing a bevy of prejudicial and completely unnecessary documents into evidence. The Court allowed Walmart to peer into the internal communications of Zest's former counsel. Walmart's new defense opened a crack, but Walmart cannot be allowed to transform that crack into a chasm through which it can introduce any and all evidence from Zest's counsel's internal communications and work product for any purpose at all—even when Zest has offered to stipulate to every fact that Walmart needs to raise its defense.

## II. Former Counsel's Work Product Offers Almost No Relevance Compared to Its Risk of Confusing the Jury And Wasting Time.

The primary dispute between the parties concerns a chart prepared by Wendy Wang, an associate at Zest's former counsel's firm. The chart compares Zest's trade secret process with information that Zest disclosed to its investors. Walmart wants to use this chart to show that the Zest Fresh process was not trade secret: if the information was disclosed to investors, it must not have been confidential, and it thus cannot be a trade secret. *See* Dkt. 716 at 7 (claiming that the chart relates to "whether the Bohling Application could not have destroyed the alleged trade secret system, as Zest claims, because it was already disclosed"). That argument defies both the facts and common sense. The factual record reflects that Zest's investors were all subject to non-disclosure agreements and therefore never publicly disclosed Zest's trade secret process—a fact which was not part of Ms. Wang's analysis in the chart but was later proven through testimony from Zest's CEO, Peter Mehring. *See* Trial Tr. at 445:11-20. Moreover, it is common sense that a lawyer's "devil's advocate" analysis of any potential weaknesses of her client's case is not a concession.

Forcing Zest to try to explain that context to the jury is unnecessarily confusing and unfairly prejudicial when Walmart has a Court-endorsed alternative. Zest is willing to stipulate, as suggested at the November 14, 2024 hearing, that it knew about the Bohling Application *before* Ms. Wang began working on her chart in May 2019. By contrast, introducing Ms. Wang's chart to establish knowledge would risk confusion and unfair prejudice far outstripping its relevance. The chart raises confusing questions about who Ms. Wang is, what her role was, why she created the chart, whether she believed the chart indicated that Zest's trade secret had been publicly disclosed, whether other lawyers on the team agreed with any such assessment, and whether Ms. Wang knew that Zest's investors were subject to non-disclosure agreements. Answering those questions would require testimony from Zest's former counsel, raising many more confusing , time-consuming, and

prejudicial questions about why Zest's counsel has changed, why this case has taken so many years to be tried, and why the jury is seeing internal documents from Zest's counsel but not Walmart's.[1] Indeed, Walmart in opposition spends several pages attempting to rebut prior counsel's testimony about the claim chart: why it was created, how senior Ms. Wang was, how involved she was in the case, whom she consulted about the chart, and so on. *See* Dkt. 716 at 7-8. That lengthy discussion previews the mini-trial that will have to be presented to the jury if this document is admitted. The jury, confused by this complicated sideshow, could be tricked into thinking that Ms. Wang's chart conceded the merits of Zest's claim. Walmart apparently wants the jury to do exactly that, *see* Dkt. 716 at 7—despite its prior representations to the Court that it would use the documents to show "what [Zest] knew and when they knew it." Hearing Tr. at 37:4, 9-11. Walmart's true intended use for these documents would be a deeply prejudicial use of attorney work product.

Aside from Ms. Wang's chart, the remaining documents Walmart seeks to introduce add no new information beyond the stipulated facts. For example, Walmart seeks to use an email from a discovery vendor on April 3, 2019 which says that the vendor "flagged WM Eden patent records with a 'Yes' for Eden Technical Details." Dkt. 716 at 6 (discussing the "Vendor Email"); Dkt. 706, Ex. G (the email itself). Walmart claims "[t]his document is necessary, unless Zest withdraws any contention that the attorneys may not have recognized the content of the patent application until much later." Dkt. 716 at 6. But that is <u>exactly</u> the stipulation that Zest has offered: that "Zest's attorneys became aware of *the content of* the Bohling Application by April 3, 2019." Dkt. 706, Ex. D, ¶ 12 (emphasis added). Walmart offers no explanation of why it still needs to introduce the

---

[1] Walmart claims that some of the stipulations Zest originally proposed were too complicated and confusing. *See* Dkt. 716 at 9-10. Zest is willing to stipulate only to the two proposed stipulations that Walmart apparently likes, regarding Zest's knowledge of the patent application as of March 3 and April 3, 2019. *See* Dkt. 706, Ex. D, ¶¶ 11-12.

4

underlying document given that stipulation, and Zest has explained why introducing the underlying document would be time-consuming, confusing, and prejudicial. *See* Dkt. 706 at 7-8.

### III. Former Counsel's Time Records Risk Confusion and Unfair Prejudice Outweighing Their Limited Relevance.

Similarly, Walmart seeks to introduce prior counsel's time records "if Zest tries to obfuscate its awareness of the Bohling Application *or its failure to take reasonable measures to protect its alleged trade secret.*" Dkt. 716 at 8 (emphasis added). Zest will not deny that its former counsel was aware of the Bohling Application, and its contents, by April 3, 2019. Again, Zest has repeatedly offered to stipulate to that fact. But what that fact means for the question of reasonable measures is a question the jury must decide, and Zest will of course argue that it took reasonable measures despite not attempting to stop publication of the Bohling Application. That legal dispute does not require the admission of any additional underlying facts in prior counsel's time sheets.

The real reason Walmart wants to introduce the underlying evidence is precisely because it is so inflammatory and confusing, allowing Walmart to step in and misleadingly characterize complicated legal analyses as simple concessions on the merits. Walmart wants to use this evidence to inflame the passions of the jury—even going so far as to cite case law about *child pornography*, as though that were a fact pattern comparable to this corporate trade secrets case. *See* Dkt. 716 at 6. Walmart cannot justify introducing inflammatory, confusing, and time-consuming evidence from former counsel's confidential files and communications when the facts regarding Zest's knowledge can be cleanly established through stipulation.

Simply put: Walmart attested that it wanted narrow discovery into former counsel's privileged information to support its reasonable efforts defense, and the Court ordered discovery based on those representations. Walmart has now admitted its true reasons for wanting that discovery. To ensure a fair and efficient trial, the Court should grant this motion *in limine*.

5

Dated: April 14 2025                                                  Respectfully submitted,


                                      Patrick Ryan*
                                      Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
*pryan@bartkopavia.com*
*\*Admitted pro hac vice*

Adam D. Mitzner*
Andrew C. Ryan*
Gianna C. Signorille*
BARTKO PAVIA LLP
555 Madison Avenue, 11th Floor
New York, NY 10022
(212) 980-3500
*\*Admitted pro hac vice*

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
*scott@mcdanielwolff.com*

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
*cbartolomucci@schaerr-jaffe.com*
*\*Admitted pro hac vice*

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
*kate@bluepeak.law*
*\*Admitted pro hac vice*

6

*Attorneys for Plaintiffs ZEST LABS, INC., ZEST LABS HOLDINGS LLC, and RISKON INTERNATIONAL, INC.*

7

3146.001/5757992.2