IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS HOLDINGS
LLC; and RISKON INTERNATIONAL,
INC.,

                Plaintiffs,

v.                                                                No. 4:18-CV-500-JM

WALMART INC. f/k/a WAL-MART
STORES, INC.,

                Defendant.
_____/

**PLAINTIFFS' OPPOSITION TO WALMART'S OBJECTION TO WITNESS DISCLOSURES AND MOTION TO QUASH**

Plaintiffs Zest Labs, Inc. f/k/a Intelleflex Corporation, Zest Labs Holdings, LLC, and RiskOn International, Inc. ("Zest") state as follows for their Opposition to Walmart's Objection to Witness Disclosures and Motion to Quash:

Walmart has moved to quash Zest's subpoenas of Walmart witnesses who, by Walmart's own admission, worked on the exact topics covered in the Bohling Application—the "factors impacting quality" of produce and a "shelf-life algorithm" to predict remaining shelf life of produce. Dkt. 723 at 2. Zest subpoenaed these witnesses because Walmart has refused to confirm which Walmart witnesses will be available during Zest's case in chief. If some of the witnesses from the prior trial will not be available and are outside the subpoena power of the Court, Zest may need to call other witnesses to cover similar subjects. This is especially true because Walmart has refused to stipulate to the admissibility of the evidence used at the last trial, so Zest must ensure it can call witnesses with personal knowledge to admit each document.

1

This motion could be resolved if Walmart would simply agree to make seven witnesses available live during Zest's case in chief: Mr. Bohling, Ms. Boyle, Ms. Sharpe, Mr. Velez, Ms. Rankin, Ms. Wen, and Mr. Tilmon (the "Requested Witnesses"). Walmart did not confer with Zest before filing this motion, but as soon as Zest reviewed the motion, Zest reached out to Walmart to try to resolve this issue without the Court's intervention. Zest would agree not to call five of the six witnesses at issue in this motion (Mr. Banik, Mr. Campisi, Mr. Steel, Mr. Greenfield, and Ms. Akin), if Walmart would agree to make the Requested Witnesses—many of whom are "will call" witnesses for Walmart's case—available during Zest's case as well. But Walmart continues to play games, refusing to bring Mr. Bohling for Zest's case and refusing even to take a position on the other witnesses' availability.

Zest cannot withdraw subpoenas of witnesses whose knowledge is allegedly "cumulative" of the Requested Witnesses if Walmart will not make the simple promise that the Requested Witnesses will be available. Zest needs to call witnesses to introduce the key Walmart documents that support its case. If witnesses from the first trial are unavailable, Zest must be allowed to call new witnesses on the same topics. Walmart cannot hide damning evidence from the jury by engaging in gamesmanship around witness availability.

Zest respectfully requests that Walmart's motion be denied and that Walmart be ordered to produce witnesses within its control whom Zest has identified as needed for its case in chief. Hopefully, the parties can reach agreement about this matter. But Walmart's actions so far make it appear that Zest will need the Court's assistance to secure witnesses for its case in chief.

**I.      The Subpoenaed Witnesses Are Not Unnecessarily Cumulative.**

Walmart claims that "other witnesses employed by Walmart" can be used to cover these issues, rendering the subpoenaed witnesses unnecessarily cumulative. Dkt. 723 at 2. In other

words, Walmart would like to pick Zest's witnesses. Despite Zest's efforts to discuss witness availability with Walmart, Walmart has refused to commit that any of its witnesses will be available during Zest's case in chief. As early as October 2024, Zest realized that Mr. Bohling had left Walmart and moved out of Arkansas, and Zest began asking Walmart whether it expected Mr. Bohling would testify at trial. Walmart refused to tell Zest what witnesses it would bring to trial, insisting that it did not have to disclose that information before pretrial disclosures were due. Not knowing what witnesses Walmart intended to bring and wanting to ensure the witnesses had adequate notice in advance of the trial, Zest served subpoenas. After Zest served those subpoenas and the parties filed their pretrial disclosures, Walmart did not even contact Zest to discuss its witnesses' testimony. It jumped straight to filing this motion.

Having reviewed Walmart's motion on April 8, Zest reached out to Walmart the next day to try to find a compromise. Zest has offered to designate one to two days for each witness to testify. *See* Ex. A. The witnesses do not need to "take two weeks of their lives to testify at trial." *Cf.* Dkt. 723 at 3. Zest is also willing to agree not to call specific witnesses who have personal conflicts, as long as Walmart agrees to make available other witnesses who can testify about similar matters. For example, if Ms. Rankin will be available, Zest will agree not to call Mr. Campisi (who apparently has travel planned during the trial), because Ms. Rankin and Mr. Campisi worked on similar subject matter at Walmart. Similarly, Mr. Tilmon and Ms. Akin both have knowledge related to Walmart's relationship with N2N. If Mr. Tilmon will be available, Zest will agree not to call Ms. Akin.

But Walmart has so far refused to commit that *any* of its witnesses will be available to be called live during Zest's case. Zest has requested that Walmart make available Mr. Bohling, Ms. Boyle, Ms. Sharpe, Mr. Velez, Ms. Rankin, Ms. Wen, and Mr. Tilmon during Zest's case in chief,

3

and Mr. Pradhan during Zest's rebuttal case if necessary. *See* Ex. A. Zest offered to withdraw the subpoenas on Mr. Campisi, Mr. Greenfield, and Ms. Akin and agree not to call Mr. Steel or Mr. Banik if Walmart would agree to make the Requested Witnesses available during Zest's case in chief. *Id.* Walmart responded that it "do[es] not control all of these witnesses and cannot agree to make them available." *Id.* Zest continued to try to pin down which witnesses *would* be available and under Walmart's control, both in correspondence with counsel and through Mr. Bohling's recent deposition. *Id.* At that deposition, when counsel for Zest attempted to ask questions about whether Mr. Bohling planned to testify at trial, Walmart's counsel instructed the witness not to answer. *See* Ex. E at 16:2-13. A few days later, Walmart finally disclosed that it would not make Mr. Bohling available during Zest's case, claiming he will arrive to testify only during Walmart's case in chief.[1] Ex. A.

Walmart has *still* not taken a position on the other six Requested Witnesses. *Id.* Zest would prefer to work with Walmart to try to negotiate a compromise to resolve this motion before the pretrial conference. But unless and until Walmart agrees to make available the witnesses Zest has requested, it would be premature and deeply prejudicial to quash any of Zest's subpoenas. The subpoenaed witnesses cannot be deemed "cumulative" of other witnesses who Walmart will not even promise to make available.

Indeed, some of the witnesses Walmart cites as alternatives to the subpoenaed Walmart employees no longer work for Walmart and live outside of Arkansas, so they are not available at

---

[1] Zest does not agree that Walmart may bring Mr. Bohling to testify live in its case while refusing to make him available during Zest's case in chief. Zest continues to try to work out a solution with Walmart (for example, allowing Zest to ask questions of Mr. Bohling through an adverse direct during Walmart's case, which would not be limited to the scope of Walmart's direct examination). If the parties are unable to resolve this problem, Zest will address it by separate motion before the pretrial conference.

all. For example, Walmart suggests that Nikhil Cherian and Mingming Li know about "efforts to make an internal algorithm," the same subject that Ms. Wen would testify about. Dkt. 723 at 3. But, as far as Zest is aware, Mr. Cherian and Mr. Li will not be available to testify live at trial. They are not included on Walmart's list of will-call witnesses, and publicly available information suggests that Mr. Cherian and Mr. Li left their jobs at Walmart. *See* Exs. B & C (LinkedIn pages). It appears neither Mr. Cherian nor Mr. Li currently lives in Arkansas, so they cannot be subpoenaed. It is reasonable for Zest to call Ms. Wen to give live testimony when the witnesses who were deposed on these issues are no longer available to testify live. Further, some of the exhibits involving Ms. Wen do not include Mr. Cherian or Mr. Li. *See, e.g.*, PTX-1094, PTX-2222. Ms. Wen thus has personal knowledge of evidence that otherwise could not be admitted through Mr. Cherian or Mr. Li.[2] That is, Walmart would prefer to pick witnesses for Zest whom Zest cannot compel to trial.

## II. These Witnesses Will Provide Testimony Relevant to Zest's Theory of Misappropriation.

Walmart next argues that the subpoenaed witnesses do not have relevant information, claiming this case is "not about Walmart's sharing information internally" because "[t]hat claim has already been dismissed." Dkt. 723 at 2. In other words, Walmart wants to curate not only Zest's witness list but also Zest's proof of its case. This argument misrepresents both Zest's claims and the Court's previous rulings. Zest agrees that it will assert only the Zest Fresh Process as the trade secret at this retrial. Zest described that process to Walmart in confidential documents shared

---

[2] Zest also tried to avoid the need to call witnesses to authenticate documents through Requests for Admission to the admissibility of certain exhibits, but Walmart denied the Requests for Admission. *See* Dkt. 676; Dkt. 689 (denying motion to compel). Then Zest proposed the parties at least stipulate to the admissibility of documents admitted at the previous trial; Walmart never even responded. *See* Ex. D. Those strategic decisions by Walmart make it necessary to call witnesses to authenticate evidence.

between the parties under a non-disclosure agreement. Zest's trade secret process was disclosed when the Bohling Application published—that was one act of misappropriation. But the Bohling Application did not appear out of thin air the moment it was sent to the Patent Office. Walmart had to come up with the ideas in the Bohling Application somehow and work to draft the application. Walmart claims that Mr. Bohling conceived of the inventions in the patent application during a hackathon. The evidence of the disclosure of Zest's trade secret to a wide array of Walmart employees undercuts that excuse and supports Zest's theory of the case: that Walmart got the ideas in the Bohling Application from Zest and stole them for its own patent. Zest must be allowed to show the internal disclosures that led to the Bohling Application itself.

Further, the internal disclosures and uses of Zest documents describing its trade secrets constitute separate acts of misappropriation. The *same trade secret process* disclosed in the Bohling Application was misappropriated when Walmart shared Zest's documents describing the Zest Fresh Process with dozens of Walmart employees who were not involved in the Zest-Walmart pilot and whom Zest had not consented to seeing its trade secret. Sharing those documents internally without Zest's consent was an acquisition and disclosure of the Zest trade secret. Using them to try to develop internal copycat technology at Walmart was a use of the Zest trade secret. All of those actions constitute misappropriation.

This theory of misappropriation is not new. As Zest describes in its responses to Walmart's objections to deposition designations, filed contemporaneously with this brief, Zest presented this same theory at the first trial. Zest argued that Walmart misappropriated the Zest Fresh trade secret both when it applied for the patent and when it used Zest's trade secret to create internal Walmart technology. As described in more detail in Zest's response to the deposition designations,

Walmart's attempt to retroactively narrow Zest's theories of misappropriation reflect a strategic gambit divorced from the actual evidence presented at the first trial in this case.

The Court has not "dismissed" this theory of misappropriation. It granted summary judgment only on Zest's claim for breach of the nondisclosure agreement between the parties—and only because the Court concluded that Zest had not adequately alleged damages tied to that specific claim. *See* Nov. 14, 2024 Hearing Tr. at 14:1-8. The Court did not rule that evidence of Walmart's internal usage of Zest's trade secret would be categorically excluded. The trade secret claim remains, and Zest must be allowed to prove Walmart's acts of misappropriation—including through its internal disclosures and uses of Zest's trade secret.

Walmart insists that "[a]nything these people could testify about is either irrelevant or redundant." Dkt. 723 at 2. But Walmart's own description of the witnesses' knowledge demonstrates their close ties to the issues in dispute in this case. For example, Ms. Wen is described as having "[w]orked on a Walmart shelf-life algorithm." *Id.* As described in more detail in Zest's response to Walmart's deposition objections, filed contemporaneously with this brief, the shelf life algorithm is directly related to the invention disclosed in the Bohling Application and to the Zest Fresh trade secret. The Bohling Application expressly refers to "generat[ing] a shelf life prediction." Ms. Wen's work "on a Walmart shelf-life algorithm" is thus directly on point. As another example, Walmart describes Mr. Campisi's experience as "[p]roviding input regarding quality of produce and factors impacting quality." Dkt. 723 at 2. Again, the "factors impacting quality" of produce are elements of the claims of the Bohling Application: the application refers to the use of pre-harvest and post-harvest factors to calculate remaining shelf life, and Zest claims Walmart misappropriated its trade secret to come up with those factors. Mr. Campisi's work on the "factors impacting quality" relates directly to the trade secret at issue in this case.

7

WHEREFORE, Zest respectfully requests that the Court deny Walmart's Motion to Quash, order Walmart to produce the witnesses within its control and identified by Zest at reasonable times during Zest's case in chief, and grant Zest all other relief to which it is entitled.

Dated: April 16, 2025                                             Respectfully submitted,

*Patrick Ryan*
Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
pryan@bartkopavia.com
*Admitted pro hac vice

Adam D. Mitzner*
Andrew C. Ryan*
Gianna C. Signorille*
BARTKO PAVIA LLP
555 Madison Avenue, 11th Floor
New York, NY 10022
(212) 980-3500
*Admitted pro hac vice

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
scott@mcdanielwolff.com

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
*Admitted pro hac vice

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
kate@bluepeak.law
*Admitted pro hac vice

*Attorneys for Plaintiffs ZEST LABS, INC., ZEST LABS HOLDINGS LLC, and RISKON INTERNATIONAL, INC.*