# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS HOLDINGS
LLC; and RISKON INTERNATIONAL,
INC.,

              Plaintiffs,

v.                                                                                  No. 4:18-CV-500-JM

WALMART INC. f/k/a WAL-MART
STORES, INC.,

              Defendant.
_____/

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 2 TO ALLOW
EVIDENCE OF WALMART'S FINANCIAL METRICS
TO INFORM PUNITIVE DAMAGES**

In its response, Walmart contends without citing any authority whatsoever that Zest has "waived any right to punitive damages" by reason of the limitation of the liability provision ("LOL") in the Master Services Agreement ("MSA"). As explained below, this is flatly wrong for both procedural and substantive reasons. Walmart knows its argument is meritless because it recently made and lost the almost identical argument in a case before Judge Timothy Brooks, which was upheld by the Eighth Circuit. Walmart should not be allowed to dismiss Zest's claims for punitive damages at the eleventh hour through a meritless argument buried in a single paragraph in an opposition to a motion in limine.

### I. Walmart Functionally Attempts to Hide an Untimely Motion for Summary Judgment in its Opposition to a Motion in Limine.

Walmart's argument is procedurally flawed: it is trying to get rid of Zest's claim for punitive damages through its opposition to a motion in limine. Walmart's argument boils down to a simple premise: even if Walmart's financial metrics (the topic of the motion in limine) are relevant to punitive damages, Zest has no valid claim for punitive damages because it waived its claim under the MSA. But if Walmart thought it had a defense to Zest's claim for punitive damages that warranted summary judgment, it could have sought summary judgment, consistent with the Court's scheduling order. It did not. A motion in limine on the eve of trial is not a valid procedural vehicle to try to sneak in an untimely motion for summary judgment. Indeed, Walmart has forfeited this argument at least four times over.

First, Walmart failed to assert the LOL as an affirmative defense in its Answer and is thus barred from raising it now. Federal Rule of Civil Procedure 8(c) requires a party to "affirmatively state any . . . affirmative defense." An exculpatory clause is an affirmative defense. *Zucker, Tr. of Anita G. Zucker Tr. Dated Apr. 4, 2007 v. Bowl Am., Inc.*, 2022 WL 7050991, at *3 (D. Md. Oct. 11, 2022) ("the exculpation provision is an affirmative defense); *Carroll Shelby Licensing, Inc. v.*

1

*Wilhelm*, 2007 WL 9817861, at *4 (C.D. Cal. May 4, 2007) ("damages limitations provision of the agreement was an affirmative defense"). A failure to include an affirmative defense in an answer "results in its forfeiture and exclusion from the case." *Crutcher v. MultiPlan, Inc.*, 22 F.4th 756, 765 (8th Cir. 2022), *citing Wood v. Milyard*, 566 U.S. 463, 470 (2012); *see also First Union Nat. Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007) (same). To dismiss Zest's claim for punitive damages now, a few days before trial and too late for any discovery into the LOL, would be the epitome of an unfair surprise.

<u>Second</u>, even if Walmart's failure to plead the LOL as an affirmative defense were somehow excused, Walmart waived the defense by failing to raise it before the first trial. "[D]efenses not included in the pretrial order are waived." *BLB Aviation S.C., LLC v. Jet Linx Aviation, LLC*, 748 F.3d 829, 839 n 5 (8th Cir. 2014); *accord Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 831 (8th Cir. 2019) ("abandonment of the [statute of limitations] issue at the final pretrial conference and in the final pretrial order waived it"); *Maritrans Operating Partners v. Diana T*, 1999 WL 144458, at *8 (E.D. La. Mar. 15, 1999) ("defense of limitation of liability" not included in pretrial order "was waived by defendants"). This Court has made clear that it expects the retrial to be "the same case with nothing more than" Walmart's new defense about reasonable measures, "and that's the only thing that's going to be different about the case." Nov. 14, 2024 Hearing Tr. at 14:9-13. Walmart's attempt to introduce a new affirmative defense and remove one of Zest's claims from the retrial is not consistent with that guidance.

<u>Third</u>, Walmart again failed to preserve this argument in its Rule 50(a) motion at the first trial. Instead, Walmart waited until the day before the jury was instructed to claim that that the LOL barred Zest's claim for punitive damages. *See* Trial Tr. at 1662-664. Walmart's failure to raise this defense in its Rule 50(a) motion was a waiver. *Canny v. Dr. Pepper/Seven-Up Bottling*

*Grp., Inc.*, 439 F.3d 894, 901 (8th Cir. 2006); *see also Klingenberg*, 936 F.3d at 835 (a party "cannot use a Rule 50(b) motion as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict.").

And <u>fourth</u>, Walmart again failed to raise this argument in either of its motions for summary judgment—including its motion for summary judgment filed after the first trial in this case. If Walmart truly believed Zest's claim for punitive damages was barred, the proper vehicle and time for seeking such a ruling would have been in one of its several motions for summary judgment. *See* Dkts. 183, 583. A motion in limine is not a "substitute for a motion for summary judgment or other peremptory ruling in civil cases." *See* Fed. Prac. & Proc. Evid. (Wright & Miller) § 5037.18. That is, a party cannot use a motion in limine to attempt an end run around the Court's dispositive motions deadline. *Harrington v. City of Council Bluffs*, 902 F. Supp. 2d 1195, 1198 (S.D. Iowa 2012); *Mahaska Bottling Co., Inc. v. PepsiCo, Inc.*, 2019 WL 12529179, at *2 (S.D. Iowa May 29, 2019) (collecting cases).

## II.     The LOL Does Not Bar Zest's Claim for Punitive Damages.

Even if the Court were inclined to relieve Walmart from its fatal procedural missteps, Walmart's argument fails on the merits.

<u>First</u>, the LOL does ***not*** bar Zest's recovery of punitive damages under DTSA should the jury find that Walmart's misappropriation was "willful and malicious." 18 U.S.C. § 1836 (b)(3)(C). This is because such a limitation would be against Arkansas public policy and unenforceable to the extent it purports to bar recovering damages for claims involving "intentional wrongdoing" or "willful misconduct." *Robinson Ins & Real Estate Inc. v. S. W. Bell Tel. Co.*, 366 F. Supp. 307, 311 (W.D. Ark. 1973) ("the contract limitation provision relied on by defendant cannot stand in the face of willful and wanton misconduct or gross negligence"). Thus, this issue

3

cannot be ripe until the jury makes its willfulness finding; if the jury finds willfulness, the provision is unenforceable.

Judge Brooks addressed the enforceability of a broad limitation of liability provision to claims for trade secret misappropriation and unjust enrichment in *Walmart Stores, Inc. v Cuker Interactive, LLC*, 2017 WL 11681850 (W.D. Ark. Apr. 5, 2017). There, Walmart filed a motion in limine seeking to limit evidence of Cuker's damages based on a limitation of liability provision in the party's consulting agreement. Like the LOL here, the provision purported to relieve Walmart of liability for any non-compensatory damages, including punitive damages.[1] Judge Brooks denied Walmart's motion, holding that the limitation of liability provision would not bar recovering damages on a claim for trade secret misappropriation or unjust enrichment if the jury found "that Walmart acted willfully." *Id.* at *4-5. After losing at trial, Walmart renewed its argument in a Rule 50(b) motion. Judge Brooks denied Walmart's motion in relevant part, finding there "is sufficient evidence to support the jury's findings of intentional wrongdoing by Walmart with respect to both unjust enrichment and misappropriation of Cuker's [] trade secrets" and, therefore, the "limitation-of-liability clause will not be applied to cap Cuker's damages." *Walmart Stores, Inc. v Cuker Interactive, LLC*, 2018 WL 159796, at *11 (W.D. Ark Mar. 31, 2018). The Eight Circuit upheld Judge Brooks' ruling, concluding "the clause is exculpatory and that there is sufficient evidence of intentional wrongdoing to avoid the liability cap." *Walmart, Inc. v Cuker Interactive, Inc.*, 949 F.3d 1101, 1111 (8th Cir. 2020).

Numerous decisions in other jurisdiction have likewise found that limitation of liability provisions may not be enforced to limit recoverable damages in trade secret cases. *See, e.g.,*

---

[1] The limitation of liability provision in *Cuker* also limited any potential damage recovery to the total contract price.

4

*EchoSpan v Medallia, Inc.*, 2023 WL 9019053, at *4-5 (N.D. Cal. Oct. 30, 2023) ("If the jury finds Medallia's conduct in misappropriating one or more trade secrets was grossly negligent or willful or wanton conduct, then the Limitations of Liability Clause will not apply."); *Connectus LLC v. Ampush Media, Inc.*, 2017 WL 1155448, at *6 (M.D. Fl. Mar. 28, 2017) ("Defendants' Motion is denied to the extent it seeks to have the CUTSA claim dismissed or damages awarded thereunder capped per the limitation-of-liability clause."); *LexMac Energy, L.P. v. Macquarie Ltd.*, 2014 WL 12669718, at *38 (D.N.D. Feb. 9, 2014) ("Allowing Macquarie Bank to enforce an exculpatory provision to avoid liability for intentional torts committed in the future is against the public policy … The Court concludes that the Plaintiffs may recover damages available under the UTSA in North Dakota."); *see also Bessemer Sys. Fed. Credit Union v. Fiserv Sol., LLC*, 472 F. Supp. 3d 142, 181-82 (W.D. Pa July 14, 2020) (defendants' motion to strike plaintiff's "request for punitive damages and allegations in support of punitive damages" based on limitation of liability provision denied); *All Business Solutions, Inc. NationsLine, Inc.*, 629 F. Supp. 2d 553, 559-60 (W.D. Va. 2009) (in depth analysis of treatises and caselaw, concluding that a limitation of liability clause was unenforceable under Virginia law on public policy grounds to the extent it would "exempt a party from liability resulting from that party's future intentional misconduct.").

<u>Second</u>, the LOL does not apply by own terms to any "rights and remedies" regarding the parties' "Confidential Information."[2] Section 14(B) of the LOL exempts from its application the "specific rights and remedies provided in this Agreement [*i.e.*, the MSA], including Sections 8 and 10." Section 10 broadly protects the parties' "Confidential Information" and specifically prohibits the use or copying of such information other than as authorized. And Section 10(B) provides that

---

[2] "Confidential Information" is defined in the MSA as "any information, in any form or medium, that is provided by a Party to the Other Party" and unquestionably includes Zest's trade secrets that Walmart misappropriated.

*"[w]ithout limiting any other remedies available at law or equity*, a Party shall be entitled to seek injunctive relief…" The "rights and remedies" carve-out in Section 14(B) coupled with the specific language in Section 10(B) make clear that the LOL does not apply to limit Zest's recovery of punitive damages for Walmart's trade secret misappropriation claim.

Third, even if the LOL does apply to claims involving a party's "Confidential Information" (it does not), it is not enforceable here because the MSA was not "fairly" entered into. As a general matter, contractual provisions that purport to limit a party's liability in advance are disfavored under Arkansas law. *Ingersoll-Rand Co. v. El Dorado Chem.*, 373 Ark. 226, 231-32 (2008). This is true even when the scope of such provision is limited to simple negligence. *See id.*; *Jordan v. Diamond Equip. & Supply Co.,* 362 Ark. 142, 148 (2005). And an exculpatory clause will not be enforced unless three requirements are satisfied, including that "the contract that contains the clause was fairly entered into." *Ingersoll-Rand*, 373 Ark.at 232.

Here, the MSA was ***not*** "fairly entered into." To begin with, it is a one-sided, form document prepared by Walmart that any service provider who does business with Walmart is forced to sign. And there is compelling evidence that Zest was deceived by Walmart's intention to misappropriate Zest's trade secrets and engage in predatory business practices as soon as "the ink on the signature page was dry." *Walmart Stores, Inc. v Cuker Interactive, LLC*, 2017 WL 11681850, at *5 (W.D. Ark. Apr. 5, 2017). Further, the LOL upon which Walmart relies does not by its express terms apply to any "improper use of Wal-Mart's Confidential Information. (*See* Sections 13 and 14(B)(ii).) Thus, if the shoe were on the other foot, Walmart would undoubtedly claim it was entitled to seek all forms of potentially recoverable damages, including punitive damages. The MSA, and in particular the LOL, is the antithesis of a fairly entered into agreement.

Fourth, the MSA is not an agreement at all, but rather an agreement to agree. And

6

"Arkansas courts have long held agreements to agree are 'too vague to enforce.'" *DWDubbell Ark., LLC v. Bushey*, 2021 WL 4392493, at *4 (W.D. Ark. Sept. 24, 2021) (quoting *Troutman Oil Co. v. Lone*, 75 Ark. App. 346, 352 (2001)). As such, the LOL within the MSA is of no force even if could be applied to preclude Zest from recovering punitive damages for Walmart's willful misappropriation of Zest's trade secrets.

Judge Brooks recently had occasion to carefully analyze Walmart's master supplier agreements, which are functionally similar to the MSA. *London Luxury, LLC v. Walmart, Inc.*, 2024 WL 1025125, at *15 (W.D. Ark. Mar. 8, 2024). As Judge Brooks explained, "[a]t most, these documents are normative agreements about future business procedures, since the only benefit a supplier receives upon signing a supplier agreement with Walmart is the hope of someday doing business with the retailing giant." *Id.* Thus, although such agreement "may define the rules for how the game will be played, but until the game actually begins, the rules are of no moment because no one has yet to step to the plate, much less throw the first pitch." *Id.* So too here.

Dated: April 22, 2025                  Respectfully submitted,

Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
*pryan@bartkopavia.com*
*Admitted pro hac vice*

Adam D. Mitzner*
Andrew C. Ryan*
Gianna C. Signorille*
BARTKO PAVIA LLP
555 Madison Avenue, 11th Floor
New York, NY 10022
(212) 980-3500
*Admitted pro hac vice*

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
*scott@mcdanielwolff.com*

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
*cbartolomucci@schaerr-jaffe.com*
*Admitted pro hac vice*

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
*kate@bluepeak.law*
*Admitted pro hac vice*

8

*Attorneys for Plaintiffs ZEST LABS, INC., ZEST LABS HOLDINGS LLC, and RISKON INTERNATIONAL, INC.*

9