IN THE UNITED STATES DISTRICT COURT=
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS HOLDINGS
LLC; and RISKON INTERNATIONAL,
INC.,

                Plaintiffs,

v.                                No. 4:18-CV-500-JM

WALMART INC. f/k/a WAL-MART
STORES, INC.,

                Defendant.

                                                /

**PLAINTIFF'S OPPOSITION TO WALMART'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY OF TROY RICHARDS**

      Walmart's eleventh-hour motion *in limine* to preclude certain testimony of Troy Richards is completely unjustified and would be extremely prejudicial to Zest on the eve of trial. Walmart's motion is brought nearly a month after the Court's deadline of April 1, 2025, in the middle of the night on the last business day before trial, and after the pretrial conference. Troy Richards will be Zest's first witness when trial testimony begins tomorrow. Zest has spent significant time and effort working with Mr. Richards and preparing him to testify and his testimonial is foundational to parts of Zest's overall presentation of its case. It would be unduly prejudicial to Zest to have to take time away from other massive pretrial preparation efforts to readjust Mr. Richard's testimony at this late date due to Walmart's last-minute motion.

      Moreover, Walmart did not confer with Zest before filing its surprise motion, and it offers no justification whatsoever for the timing of its motion. Walmart's gamesmanship should not be rewarded or even entertained.  For the Court's deadlines to have weight, this eleventh-hour motion

1

must be denied, especially viewed in the context of Walmart previously ignoring the Court's deadlines while Zest has complied with them. Further, Walmart's motion *in limine* fails on the merits. Much of the testimony it seeks to exclude was offered by Mr. Richards in the last trial *without objection*. In addition to this waiver, Walmart's motion should be denied for the reasons discussed below.

I. **Walmart's Motion in Limine is Untimely and Unduly Prejudicial.**

Knowing that Mr. Richards is Zest's first witness, Walmart waited to move to exclude testimony from Mr. Richards at 11 pm on April 25, 2025—the Friday night before he is expected to testify on Monday. Motions *in limine* were due on April 1, 2025. *See* Ex. 1 (March 20, 2025 email from the Court). As noted above, Mr. Richards will be Zest's first witness tomorrow. It would be extremely prejudicial to force Zest to adjust Mr. Richards' testimony, and its case based on that testimony, on the eve of trial due to Walmart's inexplicably late motion.

Moreover, Mr. Richards testified at the last trial, and he offered exactly the same testimony regarding his conversation with Walmart's Jeff Kerbs that Walmart now seeks to exclude. *See* Ex. 2 (Trial. Tr. at 838:7-18). Walmart did not object to the testimony at the last trial. *Id*. Mr. Richards was also listed as a "will call" witness on Zest's initial disclosures, filed on April 1. Dkt. 712. Accordingly, Walmart had ample notice of Mr. Richards' attendance at the second trial, and its last-minute motion *in limine* is improper for that reason as well. The Court has said that Zest should not be allowed to improve its position because of the new trial, which was the basis for its refusal to allow Zest to use the two granted patents that Walmart concealed and failed to produce prior to the last trial. Walmart, via its repeated efforts to narrow Zest's case from the last trial, is seeking to obtain just that—a better position than the last trial, while being able to add its new defense. Equity demands that Walmart not be allowed to exclude evidence that came in at the last trial.

2

If Walmart wanted to try to drum up a new objection for retrial, it had weeks to try to do so. Timely motions ensure the parties can adequately prepare witnesses for trial and make strategic decisions on an even playing field, where both parties know the scope of what will be permitted. But Walmart waited until the middle of the night on the last business day before trial—*after the pretrial conference*—to surprise Zest with this motion. Walmart did not confer with Zest before doing so, and it inexplicably offers no justification whatsoever for the timing of its motion.

At least one court in this circuit has recognized that such eleventh-hour motions *in limine* should be summarily dispatched. *See U.S. v. Johnson*, 403 F. Supp. 2d 721, 805-06 (D. Iowa 2005) (denying an "eleventh hour motion in limine" with "no hesitancy", where the movant "offered no explanation for the untimeliness.") The *Johnson* court also found that, because "much of the evidence that [the movant] appeared to be challenging was essentially the same as evidence admitted [in a prior related trial], and was also plainly disclosed in the discovery files and witness and exhibit lists in this case, [the movant] cannot claim that any 'surprise' excused her belated request to exclude this evidence." *Id*. All of the same factors are present here. Walmart's motion is brazenly untimely, which Walmart does not even attempt to justify. In addition, Walmart cannot claim any surprise, as Mr. Richard offered much of the same testimony in the first trial four years ago. For these reasons, and for the reasons discussed below, Walmart's eleventh-hour motion must be denied.

II.     **Mr. Richards' Testimony About Mr. Kerbs' Statements Is Admissible.**

Mr. Richards intends to testify that Jeff Kerbs told him that Kelly Boyle said she wanted to use Zest for pilots with Walmart and then get rid of Zest. This testimony was admitted at the last trial, but Walmart now seeks to exclude it on hearsay and relevance grounds. Neither of Walmart's objections has merit.

3

### A. <u>Mr. Richards' Proposed Testimony Is Not Hearsay Under Rule 801(d)(2).</u>

Both Mr. Kerbs and Ms. Boyle were Walmart employees at the time of these alleged statements; Mr. Kerbs has since passed away. A statement by a Walmart employee about a topic related to that employment is "not hearsay" under the Federal Rules of Evidence. *See* Fed. R. Evid. 801(d)(2) (defining a statement as "not hearsay" when it "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed").

The question under Rule 801(d)(2) is whether Mr. Kerbs was speaking about "a matter within the scope" of his employment relationship.[1] Managing the Zest lettuce pilot was within the scope of Mr. Kerbs' employment with Walmart. Mr. Kerbs testified that he was involved in the first pilot with Zest on lettuce (although he did not work on the berry pilot in 2017). *See* Ex. 3 (Kerbs Dep. Tr.) at 19:16-20:3. After the lettuce pilot, the project transitioned from Mr. Kerbs to Denise Sharpe. *Id.* at 31:3-5; *see also* Ex. 4 (Sharpe Dep. Tr.) at 48:6-15 (explaining that Mr. Kerbs had been "running the project" with Zest until there was "a turnover" to Ms. Sharpe). Thus, Mr. Kerbs' statements about Walmart's intentions with Zest were directly related to a matter within the scope of his job.

The fact that Mr. Richards and Mr. Kerbs had both a professional and personal relationship does not negate the application of Rule 801(d)(2), as Walmart apparently claims. There is no rule that business associates cannot have personal relationships, rendering the statement-by-a-party-opponent exclusion inapplicable. Mr. Richards and Mr. Kerbs did become friends. But they also

---

[1] Walmart does not contest that Rule 801(d)(2) applies to *Ms. Boyle's* underlying statements. Overseeing the Zest pilots was within Ms. Boyle's job duties at Walmart, and her statements about those pilots were thus made by Walmart's "employee on a matter within the scope of" the employment "relationship and while it existed," as required by Rule 801(d)(2).

had a professional relationship. Mr. Richards accompanied Mr. Kerbs on a visit to a Walmart distribution center where the Zest system was being piloted. Ex. 2 (Trial Tr. at 841:3 – 842:8). He attended dinners with Mr. Kerbs that also involved the Deloitte consultants who were working with Walmart on the produce supply chain projects, and in one case also involved Greg Foran, Walmart's CEO. *Id.* at 850:22 – 851:14, 857:20 – 858:22. The relationship between Mr. Richards and Mr. Kerbs was both a friendship and a professional connection. In any event, the question under Rule 801(d)(2) is just whether Mr. Kerbs was speaking about "a matter within the scope of" his employment, not where or even to whom he said it.  The Zest pilots on lettuce were within the scope of Mr. Kerbs' employment. *Id.* at 774:15-18.  What he said about those pilots is admissible non-hearsay, whether he said it while sitting at his desk or at dinner with Mr. Richards.

Nor does it matter whether Mr. Kerbs' conversations with Mr. Richards were within the scope of *Mr. Richards'* employment. Walmart cites testimony indicating that Mr. Richards had no "official job duties with respect to Zest." Dkt. 756 at 2 (citing Trial Tr. at 837). Walmart fails to cite Mr. Richards' testimony that he had numerous business related interactions with Zest employees while he was employed with Ecoark. *See* Ex. 2 (Trial Tr. at 834:20 – 835:2). But in any event, Mr. Richards' job duties do not matter to the analysis under Rule 801(d)(2), where the question is whether the out-of-court statement was made by the *opposing* party's employee on a matter within the scope of *his* employment. That is, the question is whether Mr. Kerbs was speaking about something related to his job. The scope of Mr. Richards' employment has no bearing on this analysis.

### B. Mr. Richards' Testimony Would Also Be Admissible Under Rule 804.

To the extent Mr. Richards' testimony about Mr. Kerbs' statements is not fully admissible under Rule 801(d)(2), Rule 804 also applies to Mr. Kerbs' statements. Federal Rule of Evidence

804 allows testimony from unavailable witnesses if the statement is against the speaker's interest. Specifically, Rule 804(b)(3) covers a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declaration's proprietary or pecuniary interest." In the statements at issue here, Mr. Kerbs told a Walmart vendor that Walmart intended to steal that vendor's trade secret, and he directly implicated a more senior Walmart executive in that plan. That sort of accusation against his employer qualifies as a statement against Mr. Kerbs' interests. *See Consolidated Int'l Corp. v. Pakistan Nat'l Shipping Corp.*, Civ. 87 C 7327, 1989 WL 152644, *1 (N.D. Ill. Nov. 27, 1989) (finding employee's statement against employer's interest admissible against employer under Fed. R. Evid. 804(b)(3) because "[a] reasonable person in his position would not have made these statements unless he believed them to be true."). Mr. Kerbs had no reason to tell Mr. Richards these plans unless he believed what he was saying was true.

### C. **Mr. Richards' Testimony About Ms. Boyle's Plans to Get Rid of Zest Is Relevant.**

The fact that Ms. Boyle said she wanted to use Zest during the pilot and then get rid of Zest is deeply relevant to Zest's claim. Zest must show that its Zest Fresh trade secret has "independent economic value." The pilots between Zest and Walmart were tests of the Zest Fresh process. Those pilots did not proceed to a full partnership between Zest and Walmart. The reason why is an important contested factual question in this case. Walmart claims that the Zest Fresh process simply did not work well enough. Zest, in contrast, claims that its system performed well in the pilots, but Walmart decided not to work with Zest because it had acquired enough information about Zest's trade secret to copy it and patent it, without having to pay Zest for a license.

This dispute about the reason Walmart ultimately rejected Zest goes directly to the economic value of Zest's trade secret. And Ms. Boyle's alleged statements prove Zest's theory.

6

Walmart's rejection of Zest had nothing to do with the performance of its trade secret system in pilots. Instead, Ms. Boyle and her team had planned all along—well before they saw any results from the berry pilot used to justify the termination of the Zest-Walmart relationship—to use Zest and then get rid of it. That fact could not be more relevant, and Mr. Richards' testimony (among other evidence) is admissible to prove it.

### III. Mr. Richards' Testimony About Zest's Investors Is Admissible.

Finally, Walmart wants to preclude Mr. Richards from testifying about Zest's investors. Zest does not intend to introduce testimony about the creation of Zest Labs Holdings, LLC or the "spin-off" of Zest's stock. Nor does Zest intend to identify specific investors by name, other than investors identified during the first trial, such as Randy May to help explain the background on how Zest came to be. But Zest does intend to introduce testimony, and to make the point in its opening argument, that Zest had hundreds of investors ranging in size from small, medium, to large, and that this lawsuit was brought to defend the interests of those investors in general.

The fact that Zest has investors is basic background and a relevant fact. *Cf. Digital Empire Limited v. Compal Electronics Inc. Group*, Civ. 14-1688, 2015 WL 11570937, at *2 (S.D.Cal. Aug. 14, 2015) ("Defendants' Requests for Production of Documents … seek documents regarding the history, formation, principals, employees, and financial backers of the plaintiff company. … These requests are reasonably calculated to lead to the discovery of admissible evidence about the identity of the plaintiff's investors, employees, and corporate structure."). As background information, this is simply the explanation of what Zest *is*. As a business, Zest does not belong to any one person. The entity *is* its investors.

Unlike Walmart, jurors will not immediately know what Zest is, and the fact that it represents its investors is simply basic background. Moreover, it is Zest's burden to show that the

7

Zest Fresh process had independent economic value. The fact that hundreds of investors saw value in Zest is probative of that element of the definition of a trade secret. Zest also must show that its trade secret was not readily ascertainable, and its extensive research and development efforts are relevant to that element. Zest raised money *from investors* to allow it to conduct the extensive research necessary to develop its technology. The story of Zest and its trade secret is intertwined with the involvement of the Zest investors generally.

Further, Zest's motivation in bringing this lawsuit is relevant. Walmart has argued that Zest brought this lawsuit in bad faith. Zest must be allowed to explain that it brought this lawsuit to defend the interests of its investors, not out of a bad-faith vendetta against Walmart. In an effort at compromise, Zest will agree not to offer evidence regarding any testifying witnesses' financial interest in the outcome of the litigation, provided that Walmart is precluded from cross-examining the witnesses regarding any potential financial gain. Walmart ought not be permitted to use the prospect of financial gain to try to undercut the credibility of Zest's witnesses while barring Zest from explaining the truth about the witnesses financial relationship to Zest on direct.

Finally, Walmart suggests that it would be prejudicial to suggest that "Walmart's conduct put Zest out of business" because "[t]here is no evidence of that." Dkt. 756 at 3-4. There is in fact evidence that Walmart's conduct put Zest out of business: Zest witnesses testified to that fact at the last trial and will do so again here. *See* Ex. 2 (Trial Tran. 662:22 – 664:9; 830:20 – 831:1). And the evidence contained in previously admitted exhibits at trial shows that Walmart did not want Zest to reap the rewards of its own technology and that Walmart wanted it but did not want to pay for it.

Again, the explanation for why Zest went out of business is relevant because it bears on whether Zest's trade secret had independent economic value. Zest no longer has any customers. It

must be allowed to explain why, because the jury could otherwise be led to believe that Zest's business failed because its Zest Fresh technology did not have value. As discussed above, Zest must prove that the Zest Fresh process did have independent economic value, and Zest must be allowed to explain why its business failed despite the value of its technology.

## IV.     CONCLUSION

For all of the above-stated reasons, Walmart's motion *in limine* to preclude certain testimony of Troy Richards should be denied.

Dated: April 27, 2025                               Respectfully submitted,

                                    Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
*pryan@bartkopavia.com*
*Admitted pro hac vice*

Adam D. Mitzner*
Andrew C. Ryan*
Gianna C. Signorille*
BARTKO PAVIA LLP
555 Madison Avenue, 11th Floor
New York, NY 10022
(212) 980-3500
*Admitted pro hac vice*

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
*scott@mcdanielwolff.com*

H. Christopher Bartolomucci*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
*cbartolomucci@schaerr-jaffe.com*
*Admitted pro hac vice*

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
*kate@bluepeak.law*
*Admitted pro hac vice*

*Attorneys for Plaintiffs ZEST LABS, INC., ZEST LABS HOLDINGS LLC, and RISKON INTERNATIONAL, INC.*