IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| ZEST LABS, INC. f/k/a INTELLEFLEX CORPORATION; ZEST LABS HOLDINGS LLC, and RISKON INTERNATIONAL, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC. f/k/a WAL-MART STORES, INC.,<br><br>Defendant. | No. 4:18-CV-500-JM |

**BENCH BRIEF REQUESTING CURATIVE INSTRUCTION TO AVOID HAVING THE JURY BEING CONFUSED AND CONFLATING PATENT AND TRADE SECRET LAW**

### I.      QUESTIONS PRESENTED

Walmart's counsel, Mr. Keville, has made statements to the jury suggesting that information rejected for patent protection due to a lack of novelty cannot qualify as a trade secret. Under established Supreme Court and Eighth Circuit precedent, does a patent examiner's novelty determination have any bearing on whether information qualifies for trade secret protection, and if not, is a curative jury instruction warranted?

### II.      BRIEF ANSWER

Trade secret protection does not require novelty or nonobviousness. *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972-73 (8th Cir. 2011) ("Unlike patent law, which predicates protection on novelty and nonobviousness, trade secret laws are meant to govern

commercial ethics."); *Cataphote Corp. v. Hudson*, 422 F.2d 1290, 1293 (5th Cir. 1970) ("[T]he standards giving rise to protectibility are different for patents than for trade secrets."); *id*. at 1294 ("If the District Court considered uniqueness and novelty as conditions precedent to existence of … trade secrets, we think it erred."). The trial transcript reveals that Mr. Keville made several statements, including during opening statements, that explicitly conflate patent standards with trade secret standards, incorrectly suggesting that patent rejection means the information cannot qualify as a trade secret. These mischaracterizations warrant a curative instruction to ensure the jury applies the correct legal standards. Only instructing the jury on trade secret law is inadequate because a patent is at the center of this case and Mr. Keville has discussed patent law so much that there is a substantial risk that the jury will be confused unless the differences between the law are clearly explained to them.

### III. STATEMENT OF FACTS

Numerous times during the trial, Mr. Keville has made statements in front of the jury that may cause them to conflate patent and trade secret law. During his opening statement, Mr. Keville made several statements suggesting that patent rejection and lack of novelty in the patent sense mean the information cannot qualify as a trade secret:

1. Suggesting patent examiner determinations are determinative of trade secret status: "The patent office has no interest in this case. It has no interest in either party. They just examine patents. That's what they're experts at. That's what they do, and they said Claim 1 is rejected." (107:10-13)

2. Characterizing patent examiners as "neutral third parties" whose determinations about novelty apply to trade secret status: "So what the patent office is saying -- now, you'll hear it from our witnesses and our expert. Here's a neutral, government party, the patent office,

saying, no, there is nothing new in the Bohling patent application, that was public and known in 2008 and 2009. So already public and that means readily ascertainable." (107:25-108:7)

3. Implying lack of novelty in the patent sense precludes trade secret protection: "This is what the international preliminary report on patentability said. It said, 'Claim 1 lacks novelty as being anticipated by this US patent to IBM.'... So when Zest tells you it was our secret, we had this great secret, that's not what these neutral bodies have said, and you'll be able to look at these patents when we put them into evidence." (109:6-13)

4. Suggesting that patent rejection is evidence of the lack of trade secret status: Mr. Keville repeatedly emphasized the patent office's rejection of the application as evidence that there was nothing unique or protectable about Zest's technology, conflating patentability standards with trade secret standards. (see generally 107-109) He said, for example: "But that's what the patent office looked at and said, sorry, Bohling and Walmart. There is nothing new here." (121:7-9)

Mr. Keville repeated these themes in his questioning of Zest's former CEO, Peter Mehring.

1. Mr. Keville asked Mr. Mehring: "Q. Okay. And they [WIPO] said, this neutral body, that Claim 1 'lacks novelty as being anticipated by the 2017 IBM patent application.' Correct?" (1472:11-13)

2. Mr. Keville asked him: "Q. Okay. When the patent office rejected the Bohling patent as not new over Gupta, Ben-Tzur, and IBM that's a good judgment, correct?" (1476:2-4)

3. Mr. Keville asked: "Q. So two different neutral bodies looked at Claim 1 and both said there is nothing new here, correct?" (1477:3-4)

4. And he asked: "Q. And the patent office has determined there is nothing new in Claim 1 because of Ben-Tzur, correct?" (1482:8-9)

## IV.    DISCUSSION

### A.    Legal Standard for Trade Secret Protection

Under both the Arkansas Uniform Trade Secrets Act and the federal Defend Trade Secrets Act, a trade secret is information that: (1) derives independent economic value from not being generally known or readily ascertainable by proper means, and (2) is subject to reasonable efforts to maintain its secrecy. *Wyeth v. Natural Biologics, Inc.*, 395 F.3d 897 (8th Cir. 2005) (noting under UTSA, a trade secret is information that: "(1) is not generally known or readily ascertainable, (2) has value as a result of its secrecy, and (3) is the subject of reasonable efforts under the circumstances to protect its secrecy."). Unlike patent protection, trade secret law does not require novelty or non-obviousness. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974) ("Novelty, in the patent law sense, is not required for a trade secret."); *Cataphote*, 422 F.2d at 1293 ("As distinguished from a patent, a trade secret need not be essentially new, novel or unique.") (quoting 2 Callman, Unfair Competition, Trademarks and Monopolies § 52.1, at 3730 (3d ed. 1968)); *id*. at 1293-94 ("Novelty and invention are not requisite for a trade secret as they are for patentability.") (quoting Restatement of Torts § 757 cmt. b).

### B.    Supreme Court Precedent Distinguishing Trade Secret and Patent Standards

The Supreme Court has repeatedly recognized that trade secret and patent law operate as complementary but distinct legal regimes with different standards and purposes.

In *Kewanee*, the Court held that state trade secret law is not preempted by federal patent law, explaining that the two systems are complementary. The Court explicitly acknowledged that trade secret protection does not require novelty or non-obviousness, as its primary rationale is to

police commercial ethics and protect value derived from secrecy. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481–85 (1974) (holding that federal patent law does not pre-empt state trade-secret rules because the two regimes "are not and never would be in conflict," and explaining that trade-secret protection polices commercial ethics and rewards information kept secret without requiring patent-level novelty or non-obviousness).

The court reinforced this distinction in *Bonito Boats, Inc.*, where it reaffirmed *Kewanee* and stressed that trade secrets survive patent pre-emption because secrecy, not novelty, is the touchstone. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 155–56 (1989) (reaffirming *Kewanee* and holding that trade-secret protection is not pre-empted because it depends on secrecy rather than novelty, affords "far weaker protection" than patents, and leaves the public free to uncover the secret by reverse engineering or independent creation).

In *Aronson*, the court upheld a contract requiring continued royalty payments for a design that failed to receive patent protection, recognizing that value flowing from secrecy or contract can coexist with, and outlive, patent rejection. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 265–66 (1979) (reaffirming *Kewanee* and explaining that federal patent law does not pre-empt state trade-secret or royalty contracts because "the two systems … are not and never would be in conflict," so enforcing a perpetual, reduced royalty negotiated in case no patent issued still "encourage[s] invention in areas where patent law does not reach" and leaves the public free to copy once disclosed).

C.    **Eighth Circuit Authority on Trade Secret Protection**

The Eighth Circuit has explicitly rejected the notion that trade secrets must meet patent-like standards of novelty.

In *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972-73 (8th Cir.

2011), the Eighth Circuit unequivocally stated: "Unlike patent law, which predicates protection on novelty and nonobviousness, trade secret laws are meant to govern commercial ethics." The court held that compiling partly public data could qualify as a trade secret as long as it conferred a competitive edge and was reasonably protected.

Similarly, in *Wyeth*, the court emphasized that difficulty, cost, and secrecy—rather than inventive step—determine trade secret status. *Wyeth v. Nat. Biologics, Inc.,* 395 F.3d 897, 899–902 (8th Cir. 2005) (affirming that Wyeth's chemical-extraction "Brandon Process" was a trade secret because it was not generally known, owed its value to secrecy, and was protected by reasonable—though not absolute—security measures, showing that difficulty, cost, and confidentiality, rather than inventive step, control trade-secret status).

### D.     Patent Rejection Has Limited Relevance to Trade Secret Analysis

A patent examiner's determination that information lacks sufficient novelty for patent protection has minimal bearing on trade secret eligibility. *Newell v. O.A. Newton & Son Co.*, 104 F.Supp. 162 (D. Del. 1952) ("The protection given to a trade secret is independent of patent laws and covers not the invention itself, but the secrecy of the information under the given set of circumstances, and therefore although a trade secret may involve such novelty as is required for patentability and a trade secret, to be protected, must contain some element of value or usefulness, a trade secret need not contain such novelty as would make it patentable.").

Courts have acknowledged explicitly that patent rejection does not preclude trade secret protection. *SkinMedica, Inc. v. Histogen Inc.*, 869 F.Supp.2d 1176 (S.D. Cal. 2012) ("[T]he determination of secrecy under the UTSA is not the same as the PTO's decision whether an invention is obvious in view of the prior art, and it does not follow as a matter of law that something rejected by the PTO as obvious can never be part of a protectable trade secret.").

Furthermore, a combination or compilation of individually known elements may still qualify as a trade secret. *Decision Insights, Inc. v. Sentia Group, Inc*., 416 Fed.Appx. 324 (4th Cir. 2011) (recognizing that trade secrets may include compilations of publicly-available information if the compilation method is not generally known); *BIEC Intern., Inc. v. Global Steel Services, Ltd.*, 791 F.Supp. 489 (E.D. Pa. 1992) ("It is well settled that technical processes, methods of manufacturing, operating parameters, procedures, or compilations of the foregoing represent trade secrets.").

### E. Need for Curative Instruction Based on Mr. Keville's Statements

A curative instruction is necessary because Mr. Keville's opening statement contains multiple statements incorrectly conflate patent and trade secret standards. By characterizing the patent examiners as "neutral" parties whose determinations about novelty apply directly to trade secret status, Mr. Keville has misrepresented the law to the jury.

His statement that because the patent office found "nothing new" in the application and that the information "was public and known in 2008 and 2009," it is "already public and that means readily ascertainable" (p. 107-108) directly conflates the patent standard of novelty with the trade secret requirement that information not be "generally known or readily ascertainable." This mischaracterization is legally incorrect and prejudicial.

Similarly, when Mr. Keville stated, "So when Zest tells you it was our secret, we had this great secret, that's not what these neutral bodies have said" (109:6-13), he suggested that the patent office's determination is relevant to whether Zest possessed a legally protectable trade secret. This statement directly contradicts established legal precedent.

Without a curative instruction, the jury will likely apply an incorrect legal standard when evaluating whether Zest's information qualifies for trade secret protection.

## V. PROPOSED CURATIVE INSTRUCTION

Based on the identified statements, we propose the following curative instruction:

The standards for determining whether something qualifies for patent protection differ from those for determining whether information qualifies as a trade secret.

Patent law requires that an invention be novel and non-obvious compared to prior art. In contrast, trade secret law protects information that (1) derives economic value from not being generally known to others who could obtain economic value from its disclosure or use, and (2) is subject to reasonable efforts to maintain its secrecy.

A patent examiner's rejection of a patent application as lacking novelty or being anticipated by prior art does not determine whether the information qualifies as a trade secret. Information can fail to meet patent standards of novelty while still qualifying for trade secret protection.

Furthermore, a combination or compilation of elements individually known to the public may still qualify as a trade secret if the combination itself is not generally known and creates value from its secrecy.

You should evaluate whether Zest's alleged trade secret meets the legal requirements for protection independent of any determinations made by patent examiners about novelty or patentability."

[Possible alternative instruction derived from CA5 case:

The standards giving rise to protectibility are different for patents than for trade secrets. You should use the Court's instructions to determine what is a trade secret, but, as distinguished from a patent, a trade secret need not be essentially new, novel or unique. Novelty and invention are not requisite for a trade secret as they are for patentability.

Source: *Cataphote Corp. v. Hudson*, 422 F.2d 1290, 1293-94 (5th Cir. 1970)]

## VI.     CONCLUSION

Based on well-established Supreme Court and Eighth Circuit precedent, an examiner's rejection of patent applications for lack of novelty has no bearing on whether the same information qualifies for trade secret protection.

Mr. Keville's statements during the opening argument mischaracterize the legal relationship between patent rejection and trade secret status, necessitating a curative instruction. The proposed instruction would clarify the distinct legal standards of patents versus trade secrets and ensure the jury applies the correct legal standards when evaluating Plaintiffs' trade secret claims.

Dated: May 7, 2025

Respectfully submitted,

Patrick Ryan*
Sean R. McTigue*
Kenneth L. Richard*
Natalie A. Felsen*
Katie Allgood*
BARTKO PAVIA LLP
1100 Sansome Street
San Francisco, CA 94111
(415) 956-1900
*pryan@bartkopavia.com*
*smctigue@bartkopavia.com*
*krichard@bartkopavia.com*
*nfelsen@bartkopavia.com*
*kallgood@bartkopavia.com*
*Admitted *pro hac vice*

Scott P. Richardson
MCDANIEL WOLFF, PLLC
1307 West Fourth Street
Little Rock, AR 72201
(501) 954-8000
*scott@mcdanielwolff.com*

H. Christopher Bartolomucci*

SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
*cbartolomucci@schaerr-jaffe.com*
*Admitted *pro hac vice*

Kate M. Falkenstien*
BLUE PEAK LAW GROUP, LLP
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
(281) 972-3036
*kate@bluepeak.law*
*Admitted *pro hac vice*

Attorneys for Plaintiffs ZEST LABS, INC.,
ZEST LABS HOLDINGS LLC, and RISKON
INTERNATIONAL, INC.
