IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| ZEST LABS, INC. f/k/a INTELLEFLEX CORPORATION; ZEST LABS HOLDINGS, LLC; and RISKON INTERNATIONAL, INC. | CIVIL ACTION NO. 4:18-CV-500-JM |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| WALMART INC. F/K/A WAL-MART STORES, INC., | |
| Defendant. | |

**WALMART INC.'S OBJECTIONS TO
PROPOSED FINAL JURY INSTRUCTIONS AND VERDICT FORM
AND ADDITIONAL PROFFERS**

This Court should grant Walmart Inc.'s motion for judgment as a matter of law. Understanding that the Court is taking that motion under advisement, Walmart submits these objections to the Court's proposed final jury instructions provided to the parties on May 9, 2025, and submits additional proffers.

**JURY INSTRUCTION NOS. 10 AND 11**

Jury Instruction No. 10 provided by the Court on May 9, 2025, states:

1

> **JURY INSTRUCTION NO. 10**
>
> ZEST LABS CLAIMS DAMAGES FROM WALMART AND HAS THE BURDEN OF PROVING EACH OF FOUR ESSENTIAL PROPOSITIONS:
>
> FIRST, THAT THE ZEST FRESH SOLUTION IS A TRADE SECRET;
>
> SECOND, THAT WALMART MISAPPROPRIATED ZEST LABS' TRADE SECRET;
>
> THIRD, THAT ZEST LABS SUSTAINED DAMAGES; AND
>
> FOURTH, THAT THE MISAPPROPRIATION OF THE TRADE SECRET WAS A PROXIMATE CAUSE OF ZEST LABS' DAMAGES.

Ex. 1 at 12.  Jury Instruction No. 11 provided by the Court on May 9, 2025, states:

> **JURY INSTRUCTION NO. 11**
>
> WHEN I USE THE WORD "MISAPPROPRIATION" IN THESE INSTRUCTIONS, I MEAN DISCLOSURE OR USE OF A TRADE SECRET BELONGING TO ANOTHER PERSON, WITHOUT EXPRESS OR IMPLIED CONSENT, BY A PERSON WHO AT THE TIME OF DISCLOSURE OR USE, KNEW OR HAD REASON TO KNOW THAT ITS KNOWLEDGE OF THE TRADE SECRET WAS DERIVED FROM OR THROUGH A PERSON WHO OWED A DUTY TO MAINTAIN ITS SECRECY OR LIMIT ITS USE.

*Id.* at 13.  Walmart objects to these instructions because they do not instruct the jury that the alleged misappropriation is the publication of the Zest Fresh "solution" in the Bohling patent application.  The history of this case, the testimony of Zest's witnesses, and the rulings of this

Court demonstrate that publication of the Zest Fresh "solution" in the Bohling Application is the only alleged misappropriation properly at issue. The instructions provided on May 9, 2025, appear to permit Zest to argue other alleged misappropriations. If that is the case, they will severely and unfairly prejudice Walmart, as explained below.

On October 22, 2018, this Court entered an agreed scheduling order setting October 15, 2019, as the cutoff date for fact discovery. Dkt. 75. A year later, Zest served on Walmart "Plaintiffs' October 15, 2019 Omnibus Amended Responses And Objections To Walmart's First, Second, Third, And Fourth Sets Of Interrogatories." Ex. C to Walmart's Mot. to Compel, Dkt. 161. Walmart's first interrogatory asked Zest, in part:

> **INTERROGATORY NO. 1:**
>
> Identify with particularity all trade secrets Plaintiffs allege were disclosed to Walmart (*see*, *e.g.*, Complaint ¶ 5), including all trade secrets referred to in the Complaint and including without limitation every such alleged trade secret consisting in whole or in part of:

*Id.* at 8. Zest has now stipulated that its attorneys knew about the Bohling Application in March 2019 and knew its contents by April 3, 2019. *See* 2025 Tr. 174:8-16. In its Omnibus Response over four months later, Zest alleged—for the first time—that "[c]ertain of Zest Labs' process know-how trade secrets, after having been misappropriated by Walmart, were incorporated into Walmart's patent application, 'Predicting Shelf Life Based on Item Specific Metrics,' filed by Joshua Bohling et al. on November 10, 2017." Ex. C to Walmart's Mot. to Compel, Dkt. 161 at 50, 60. Zest's last-minute injection of the Bohling Application at the close of fact discovery precluded Walmart from any meaningful discovery about that theory of misappropriation.

At a pretrial hearing before the previous trial, during argument about Zest's damages model, Zest told the Court that "Walmart made commercial use of the technology *when it*

3

*disclosed that ... in its patent application."* Mar. 26, 2021, Tr. at 45:6-7 (emphasis added). In closing argument at the previous trial, Zest focused on the publication in the Bohling Application as the source of its damages.

```
6              This is Zest Fresh.  It is or was Zest's trade
7    secret until Walmart gave it to the world.  But there was
8    more.
```

Vol. 9A at 1885.

```
4              Walmart took it, Walmart used it, Walmart disclosed
5    it to everyone.  And when that happens you're entitled to
6    compensation, and that's why we're here.
```

*Id.* at 1892.

At the pretrial hearing last month, in addressing motions *in limine*, this Court announced: "Consistent with Zest's definition of what the violation of the trade secret was and … how [Walmart] violated it, I'm going to limit [Zest] to arguing that it was the publication of the patent and it was the solution or process as defined in the patent." Apr. 25, 2025, Tr. at 41:4-8. Zest's counsel asked, "[W]hen we were saying what is the misappropriation, we have to argue it's the publication of the patent[?]  We can't say there's a separate act of misappropriation in internal disclosures[?]" *Id.* at 42:1-4. The Court answered, "Exactly." *Id.* at 42:11.

This clear ruling of this Court has carried through the ongoing trial. During trial, Zest's counsel acknowledged this ruling, stating that "the misappropriation was the patent publication." 2025 Tr. at 692:9-10. This Court reinforced its ruling that the alleged misappropriation is only the publication of the Bohling Application. *E.g., id.* at 804:12-18 (repeating ruling that Zest can

4

argue that publication of the Bohling Application is the misappropriation at issue). Mr. Mehring testified that Zest's misappropriation claim is that "Walmart, through the publication of the Bohling patent application in May 16, 2019, disclosed the alleged trade secret …." *Id.* at 1275:24–1. Mr. Mehring later testified again that Zest's claim is that Zest's alleged trade secret, "the Zest Fresh Solution, was published on May 16, 2019, when the Bohling Application published." *Id.* at 1467:16-19.

On May 7, 2025, this Court provided to the parties its first set of proposed final jury instructions. Ex. 2. In that set, the Court proposed the following as Instruction No. 8:

> **JURY INSTRUCTION NO. 8**
>
> ZEST LABS CLAIMS DAMAGES FROM WALMART FOR MISAPPROPRIATION OF A PARTICULAR TRADE SECRET, THE ZEST FRESH SOLUTION. ZEST LABS HAS THE BURDEN OF PROVING EACH OF FOUR ESSENTIAL ELEMENTS:
>
> FIRST, THAT THE ZEST FRESH SOLUTION IS A TRADE SECRET;
>
> SECOND, THAT WALMART MISAPPROPRIATED THE TRADE SECRET BY DISCLOSING IT TO THE PUBLIC IN THE BOHLING PATENT APPLICATION;
>
> THIRD, THAT ZEST LABS SUSTAINED DAMAGES; AND
>
> FOURTH, THAT THE MISAPPROPRIATION OF THE TRADE SECRET WAS A PROXIMATE CAUSE OF ZEST LABS' DAMAGES.

*Id.* at 10. Consistent with the history related above, this proposed instruction correctly limited the misappropriation at issue to the publication of the Zest Fresh "solution" in the Bohling Application.

The next day, during argument on jury instructions, Zest objected to the second element of this proposed instruction, asserting that it limited misappropriation to the final use while ignoring other potential misappropriations, beginning with Mr. Bohling's alleged use of Zest's information to draft the Bohling application. 2025 Tr. at 2136:2; *id.* at 2137:6-23. Zest asserted that the evidence supports "various intermediate acquisitions and disclosures" that constituted separate misappropriations. *Id.* at 2138:9-18. Zest argued that the "publication is the last misappropriation" and the "first is when we can show that Zest's confidential information being used to prepare that application to draft it internally." *Id.* at 2145:23-2146:1. Zest described the "whole thing" as a "continuum of misappropriation." *Id.* at 2146:1-2.

This Court disagreed: "The only act of misappropriation that anybody has said caused them any damage was the publishing of the patent. And the notion that this got pushed around internally at Walmart, it was intended to be pushed around internally at Walmart by Zest to some degree. But there was no external use. There was no profitability. There was no anything that caused Zest any damage but for the publication to the world. And that's your client's commentary, and that's your damages experts, not that they used it for some purpose other than publishing. And I agree with you, that you can argue to the jury that he took this to make the patent. He took that to make the patent. He used all this. But those are not individual instances of misappropriation that caused your client any damage.... The damage you proved was that the misappropriation that caused you damage was the publication of the patent." 2025 Tr. at 2150:16-2151:9; *see id*. at 2152:9-13 ("You would have had a claim, but you would have to prove damages, that there was some damage as a result of the misappropriation. And the fact that I never did anything with it that you can show caused you damage is the fatal defect in your multiple misappropriation theory."); *id.* at 2152:25-2153:1 ("And there's no evidence that

anything Walmart did but for publishing the patent caused Zest damage."); *id.* at 2153:7-8 ("But nothing that Walmart did but for the publication that proximately caused those damages.").

Contrary to the Court's previous rulings, the revised proposed final jury instructions do not limit Zest's misappropriation theory to the publication of the Zest Fresh "solution" in the Bohling Application. *Compare* Ex. 2 at 10, *with* Ex. 1 at 12. Zest imposed this limitation on itself by its argument to the jury in the previous trial and the testimony of its witnesses, including its expert on damages. Failing to instruct the jury that the misappropriation at issue is the publication of the Zest Fresh "solution" in the Bohling Application invites Zest to do what its counsel forecast—that is, argue to the jury that there were multiple misappropriations preceding the publication of the Bohling Application and to backdoor alleged violations of the Walmart/Zest nondisclosure agreement into closing argument. This Court ruled *in limine* that these arguments will not be permitted and has had to enforce that ruling throughout the trial, including by being required to instruct the jury that violations of the Walmart/Zest nondisclosure agreement are not at issue. Walmart has planned its defense around the Court's rulings. The Court's jury instructions should not allow Zest to circumvent the Court's rulings during closing argument.

Instead, the Court should use its original Instruction No. 8 from the May 7 set, Ex. 2 at 10, when instructing the jury. That instruction is consistent with the history of this case and, when "viewed in light of the evidence and applicable law, fairly and adequately" submits the misappropriation issue to the jury. *Wilson v. City of Des Moines*, 442 F.3d 637, 644 (8th Cir. 2006). Moreover, Walmart requests that the Court modify its original Instruction No. 8 to add the word *alleged* between the words *particular* and *trade secret* and replace the words *the trade secret* in the second and fourth elements with *the Zest Fresh Solution*.

Further, in lieu of the May 9 Instruction No. 11, Walmart proffers Exhibit 3, which deletes the words *or use* from the definition of *misappropriation.*

If the Court declines to instruct the jury as Walmart requests, the Court should order Zest not to argue in its closing that Walmart misappropriated Zest's alleged trade secret, the Zest Fresh "solution," in any way other than by publishing it in the Bohling Application, and the Court should enforce that order should Zest disobey it.

### JURY INSTRUCTION NO. 9

Walmart objects to Jury Instruction No. 9 provided to the parties on May 9. Walmart requests that the Court delete the words *such as a process or solution*. The law requires that "information"—regardless of its form—meet the three requirements identified to be a trade secret. By calling out that Zest's alleged "process" or "solution" is the type of information that can be a trade secret, the instruction comments on the evidence. Walmart proffers Exhibit 4.

### JURY INSTRUCTION NO. 14

In the May 9 set, the Court proposes the following as Instruction No. 14:

> **JURY INSTRUCTION NO. 14**
>
> IN ADDITION TO COMPENSATORY DAMAGES FOR ANY ACTUAL LOSS THAT ZEST LABS MAY HAVE SUSTAINED, ZEST LABS ASKS FOR EXEMPLARY DAMAGES FROM WALMART. EXEMPLARY DAMAGES MAY BE IMPOSED IF ZEST LABS PROVES BY CLEAR AND CONVINCING EVIDENCE THAT WALMART WILLFULLY AND MALICIOUSLY MISAPPROPRIATED ZEST LABS' TRADE SECRET. WALMART ACTED WILFULLY AND MALICIOUSLY IF IT CONTEMPLATED THE EXISTENCE OF THE TRADE SECRET AND TOOK ACTIONS IN RECKLESS DISREGARD AS TO WHETHER THOSE ACTIONS WOULD CONSTITUTE MISAPPROPRIATION OF THAT TRADE SECRET.
>
> "CLEAR AND CONVINCING EVIDENCE" IS PROOF THAT ENABLES YOU WITHOUT HESITATION TO REACH A FIRM CONVICTION THAT THE ALLEGATION IS TRUE.
>
> YOU ARE NOT REQUIRED TO ASSESS EXEMPLARY DAMAGES AGAINST WALMART BUT YOU MAY DO SO IF JUSTIFIED BY THE EVIDENCE. YOU MAY CONSIDER AN AWARD OF EXEMPLARY DAMAGES ONLY IF YOU FOUND THAT ZEST LABS IS ENTITLED TO RECOVER COMPENSATORY DAMAGES.

Ex. 1 at 16.

Walmart maintains that the jury should not be instructed on exemplary damages, as such damages are left to the discretion of the Court under the federal Defend Trade Secrets Act and the Arkansas Trade Secrets Act does not permit exemplary damages (or, for that matter, a reasonable royalty, the only compensatory damages sought). But if the Court does instruct on exemplary damages, the Court should separately define *willfully* and *maliciously* because the words cannot mean the same thing; if they did, Congress would have used one or the other but not both.

Walmart proffers Exhibit 5, which replaces the last sentence of the first paragraph in Instruction No. 14 to read as follows:

> WALMART ACTED WILLFULLY IF IT ACTED WITH ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF ITS PROBABLE CONSEQUENCES. WALMART ACTED MALICIOUSLY IF IT INTENDED TO CAUSE ZEST LABS INJURY.

*See KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 729 F. Supp. 3d 84, 105 (D. Mass. Apr. 10, 2024) (quoting 1 Milgrim on Trade Secrets § 1.01[2][c][iv][C]).

**VERDICT FORM**

Walmart objects to the Verdict Form provided to the parties on May 9 and proffers the interrogatories attached as Exhibit 6.

The Court's Interrogatory No. 1-A presupposes that Zest has trade secret. It is critical that the jury find that (1) the Zest Fresh "solution" in its entirety is a trade secret, (2) Walmart misappropriated the entire Zest Fresh "solution" by publishing it in the Bohling Application, (3) Zest sustained damages, and (4) Zest's damages were proximately caused by misappropriation of the Zest Fresh "solution." The proposed Verdict Form, considered in the light of the instructions proposed by the Court, does not ensure that the jury make these findings to decide the case for Zest and award damages. Walmart's proffered interrogatories do, and they are straightforward and correctly present the issues in the case.

Further, Interrogatory No. 1-D suggests that exemplary damages must be awarded if the jury answers "yes" to Interrogatory No. 1-C. If the Court rejects Walmart's proffered interrogatories, the Court should revise Interrogatory No. 1-D as follows: "What amount, *if any*, do you award to Zest Labs for exemplary damages."

        John R. Keville (*pro hac vice*)
        jkeville@sheppardmullin.com
        Robert L. Green (*pro hac vice*)
        rgreen@sheppardmullin.com
        Chante B. Westmoreland (*pro hac vice*)
        cwestmoreland@sheppardmullin.com
        SHEPPARD, MULLIN, RICHTER &
        HAMPTON, LLP
        700 Louisiana Street, Suite 2750
        Houston, Texas 77002-2791
        (713) 431-7100 Telephone
        (713) 431-7101 Facsimile

        John E. Tull III (84150)
        E. B. Chiles IV (96179)
        R. Ryan Younger (2008209)
        Glenn Larkin (2020149)
        QUATTLEBAUM, GROOMS & TULL PLLC
        111 Center Street, Suite 1900
        Little Rock, Arkansas  72201
        (501) 379-1700 Telephone
        (501) 379-1701 Facsimile
        jtull@qgtlaw.com
        cchiles@qgtlaw.com
        ryounger@qgtlaw.com
        glarkin@qgtlaw.com

        *Attorneys for Defendant Walmart Inc.*
        *f/k/a Wal-Mart Stores, Inc.*